Squire Patton Boggs (US) LLP
Petrina A. McDaniel (GA Bar # 141301)
(*admitted *pro hac vice*)
petrina.mcdaniel@squirepb.com
Eric J Knapp (State Bar # 214352)
eric.knapp@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:  +1 415 954 0200
Facsimile:   +1 415 393 9887

Hannah J. Makinde (State Bar # 307907)
hannah.makinde@squirepb.com
555 South Flower Street, Suite 3100
Los Angeles, California 90071
Telephone:  +1 213 624 2500
Facsimile:   +1 213 623 4581

*Attorneys for Defendants*
*Manheim Riverside, Manheim Nevada,*
*NextGear Capital, Danny Brawn, Steve*
*Harmon, and Cesar Espinosa*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO LLC, A MONTANA LLC DBA SAN DIEGO MOTORWERKS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MANHEIM RIVERSIDE AKA COX AUTO INC. AKA MANHEIM INVESTMENTS INC. AKA COX AUTO AUCTIONS, LLC, et al.,<br><br>Defendants. | Case No. 21-cv-1205-H-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Marilyn Huff<br><br>Date:        October 8, 2021<br>Time:       10:30 a.m.<br>Dept:       TBD<br><br>Trial Date:Not Set<br>Date Action Filed:       July 1, 2021 |

## I.    INTRODUCTION

Plaintiffs SD Motorwerks ("SD Motorwerks"), Richard John Hagen dba EuroMotorwerks ("EuroMotorwerks"), Richard John Hagen ("Hagen"), Carrie Elin Sorrento ("Sorrento") and Chidiebere Amadi ("Amadi") (collectively, "Plaintiffs") assert seven causes of action against Defendants Manheim Investments Inc. d/b/a Manheim Riverside ("Manheim Riverside"), Greater Nevada Auto Auctions, LLC

d/b/a Manheim Nevada ("Manheim Nevada," and together with Manheim Riverside, "Manheim"), Danny Brawn ("Brawn"), Cesar Espinosa ("Espinosa") and Steve Harmon ("Harmon") (together, the "Employee Defendants"), and NextGear Capital, Inc. ("NextGear") (collectively, "Defendants"). Each of Plaintiffs' claims fails as a matter of law for a host of reasons and must be dismissed with prejudice.

First, the claims of Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento against Defendants Manheim Riverside, Manheim Nevada, and the Employee Defendants must be dismissed because they are subject to a valid and enforceable arbitration agreement. As explained below, Plaintiffs Hagen and Sorento as representatives of SD Motorwerks and EuroMotorwerks affirmatively accepted— on multiple occasions—Manheim's Terms and Conditions as a condition of participating in Manheim's auctions and using its services. The Terms and Conditions contain a mandatory arbitration provision (the "Arbitration Agreement") that requires arbitration of all disputes or claims against Manheim that "arise out of or relate in any way" to "any purchase, sale, or other auction or credit transaction with Manheim." Plaintiffs' claims plainly fall within the Arbitration Agreement, and as agents of EuroMotorwerks and SD Motorwerks, Plaintiffs Hagen and Sorrento are likewise bound.  For this reason, these claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because an arbitral tribunal—not this court—has subject matter jurisdiction over them.

Alternatively, if the Court does not dismiss Plaintiffs SD Motorwerks', EuroMotorwerks', Hagen's, and Sorrento's claims against Defendants Manheim Riverside, Manheim Nevada, and the Employee Defendants under Rules 12(b)(1) and 12(b)(6), the Court should transfer this action to the Northern District of Georgia pursuant to the parties' forum-selection clause so the court there may compel the parties to arbitration in Atlanta, Georgia—where the parties mutually agreed to arbitrate the claims at issue in this action.

Second, Plaintiff Amadi's claims against Manheim Riverside, Manheim

Nevada, and the Employee Defendants fail for multiple reasons.[4] First, Amadi's implied warranty claim is supported by nothing more than conclusory allegations that merely track the elements of the cause of action and are contradicted by other allegations in the Complaint. Amadi's quasi-contract/restitution claim likewise fails, as it is apparent from the allegations in the Complaint that Amadi did not purchase any vehicles from Manheim or the Employee Defendants, and therefore cannot plead the "receipt of a benefit" and the Defendants' "unjust retention" of such benefit to assert such a cause of action. Finally, Amadi's remaining claims, which all sound in fraud, fail under Federal Rule of Civil Procedure 9(b)'s particularity requirement. There are no allegations in the Complaint indicating how, when, where, or to whom the alleged fraudulent representations were made to Amadi—because there were none. The Court should thus dismiss Amadi's claims.

Third, the claims against Defendants Brawn and Harmon must be dismissed for lack of personal jurisdiction.  Defendants Brawn and Harmon are all residents of Nevada, not California, and their alleged wrongdoing was in furtherance of their employment duties, which they performed in Nevada. Accordingly, they are not subject to general or specific jurisdiction in California, and it would violate due process for this Court to exercise jurisdiction over them.

Finally, the Complaint is devoid of any factual allegations against NextGear (because there are none relevant to Plaintiffs' claims), and therefore fails to state a claim against it.

## II.   FACTUAL BACKGROUND

### A.   Allegations of the Complaint[5]

---

[4] As Plaintiff Amadi is a stranger to any transaction with Manheim Riverside, Manheim Nevada, and the Employee Defendants, the Arbitration Agreement is inapplicable to Amadi's claims.

[5] The facts alleged in the Complaint are assumed to be true solely for purposes of this Motion. *See In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1086 (S.D. Cal. 2010) ("The court must accept all

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Plaintiffs assert seven causes of action against Defendants arising out of the purchase of three used vehicles (the "Vehicles") at auctions hosted by Manheim. *See generally* Compl. Plaintiffs allege that the Vehicles contained defects that Manheim and the Employee Defendants failed to disclose. *See id*. SD Motorwerks is a limited liability company owned by "Dipito LLC Series A (sic) Delaware LLC," and is operated as a "San Diego Business Trust." Compl. ¶ 1. Sorrento is the "Co-Trustee" of SD Motorwerks, and "[a]t all times material thereto . . . is and was the operator of" SD Motorwerks. *Id*. EuroMotorwerks is an inactive business with which Hagen is affiliated. *See* Compl. ¶¶ 3-4. Hagen is additionally Sorrento's spouse and an employee of SD Motorwerks. Compl. ¶ 52.

Manheim hosts automobile auctions in different states, and some of the vehicles are sold online. Compl. ¶¶ 26, 31. The Employee Defendants are, or were, employees of Manheim Riverside. *Id*. ¶¶ 10-12.

On or around June 7, 2019, SD Motorwerks allegedly purchased a 2009 Chevrolet Corvette (the "Chevrolet") from Premier Nevada Credit through an online auction hosted by Manheim Nevada. *Id*. ¶ 73. Plaintiffs allege that "the Purchaser" picked up the Chevrolet from Manheim Nevada and then drove the Chevrolet approximately 3 miles "prior [to] the engine sustaining catastrophic failure." *Id*. ¶ 76. Plaintiffs allege that Defendant Harmon "refused to consider a return of the vehicle to Manheim" and that they subsequently obtained an inspection report that was not provided prior to purchase that showed the score on the condition report was an alleged "total fabrication." *Id*. ¶¶ 77-79.

---

factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party").

[6] The term "arbitration" as used in these paragraphs refers to a term of art used in the auction industry where Manheim acts as a neutral intermediary to investigate and resolve transaction-related disputes between buyers and sellers of vehicles at its auctions. These dispute resolution services are governed by policies of the National Auto Auction Association.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

On or about January 28, 2020, SD Motorwerks allegedly purchased a 2016 BMW M6 CPE (the "BMW") from "BMW/FSVT" through a Manheim auction. Compl. ¶ 32. Plaintiffs allege that prior to the sale, Manheim provided them with an inspection report that was allegedly intended for customers to determine the value of the BMW, and that Manheim inspected the Vehicle prior to the sale. Compl. ¶¶ 33-34. Following the sale, Hagen and/or SD Motorwerks allegedly performed their own visual inspection of the vehicle and discovered numerous defects that Plaintiffs claim were undisclosed. *Id.* ¶¶ 34-36. SD Motorwerks subsequently sold the BMW to Plaintiff Amadi. *Id.* Thereafter, Amadi allegedly discovered numerous issues with the BMW, including undisclosed structural body damage, and took the BMW for service to various BMW dealerships. *See id.* ¶¶ 37-50. When Hagen, on behalf of SD Motorwerks, requested a copy of Manheim's inspection report, Hagen was allegedly provided with a new report that showed that the BMW had extensive structural damage, which had been concealed from Plaintiff at the time of the auction. *Id.* ¶ 53.

On or around February 28, 2020, SD Motorwerks allegedly purchased a 2008 Bentley Continental GT Speed (the "Bentley") from "Premier Nevada Credit" through an online auction hosted by Manheim Nevada. *Id.* ¶ 64. SD Motorwerks allegedly ordered a "full inspection" for the Bentley, but "the inspection report was not produced as requested." *Id.* ¶ 66. A third party named "Billy Elliot" allegedly sent "a report of defects" to an employee of Manheim Nevada. *Id.* ¶ 67. The report allegedly noted "many defective conditions," which Defendant Harmon disputed. *Id.* SD Motorwerks alleges that it subsequently performed additional inspections, which revealed other defects. *Id.* ¶ 68. The Complaint alleges that after SD Motorwerks and Manheim conducted arbitration[6] on the Bentley, Manheim terminated its relationship

---

[6] The term "arbitration" as used in these paragraphs refers to a term of art used in the auction industry where Manheim acts as a neutral intermediary to investigate and resolve transaction-related disputes between buyers and sellers of vehicles at its auctions. These dispute resolution services are governed by policies of the National Auto Auction Association.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

with SD Motorwerks. *Id.* ¶¶ 68-70.

Plaintiffs concede that, Manheim "makes no representation or guarantees on any vehicle sold or offered for sale," and that the "seller" (not Manheim) "must disclose permanent structural damage … prior to selling a vehicle at auction regardless of sales channel or light condition." Compl. ¶ 56.

Based on these allegations, Plaintiffs assert "[a]gainst All Defendants"[7] violations of (1) California Consumer Legal Remedies Act; (2) Song Beverly Consumer Warranty Act; (3) Magnuson-Moss Consumer Warranty Act; (4) Quasi-Contract/Restitution; (5) California Business and Professions Code § 17200; (6) Wire Fraud under § 18 U.S.C. § 1343, Deceit, and/or Misrepresentation; and (7) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

## B.    The Arbitration Agreement

Manheim operates wholesale auto auctions online and in various locations, including in Nevada, Riverside, California, and online platforms through which licensed and registered motor vehicle dealers may buy and sell motor vehicles in direct transactions with other motor vehicle dealers. *See* Declaration of Veronica Tai, ("Tai Decl."), ¶ 5, attached as Exhibit 1. Manheim's role is to provide a marketplace to facilitate the purchase and sale of motor vehicles between wholesale buyers and sellers. *See id.*

Manheim's dealer customers must review its written Terms and Conditions ("Ts&Cs") for conducting business at its auction, and are ***required*** to affirmatively accept and agree to these Terms and Conditions as a prerequisite to purchasing

---

[7] Plaintiffs allege, in conclusory fashion and without any supporting factual allegations, that numerous individuals and entities are all involved with Defendants in the alleged unlawful enterprise of "enriching themselves in a pattern and practice of fraudulent activities," including, Defendants Jerry Siderman who was allegedly the lessee of the BMW before Plaintiffs purchased it; BMW Financial Services NA, LLA who allegedly sold Plaintiffs the BMW; and Carfax, Inc. *See* Compl. ¶¶ 25, 32-33, 155.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

vehicles. *See* Ex. 1, ¶¶ 10-11 (emphasis added). When the Ts&Cs are modified, Manheim's dealer customers must accept the new Ts&Cs when logging into their account before they are able utilize Manheim's services or participate in its auctions. *Id*. ¶ 12.

At all relevant times, Manheim's Ts&Cs contained a section titled "Dispute Resolution and Class Action Waiver" that reads:

> **ABTRATION AGREEMENT.** YOU AGREE TO ARBITRATE ANY DISUPTE OR CLAIM THAT YOU MAY HAVE WITH MANHEIM THAT <u>ARISES OUT OF OR RELATES IN ANY WAY</u> TO THESE TERMS AND CONDITIONS; <u>ANY PURCHASE, SALE, OR OTHER AUCTION</u> OR CREDIT TRANSACTION WITH MANHEIM; YOUR USE OF ANY MANHEIM WEBSITE, ONLINE PORTAL, OR ANY MANHEIM PRODUCT OR SERVICE; OR ANY OTHE RAGREEMENT BETWEEN YOU AND MANHEIM. ARBITRATION CONDUCTED HEREUNDER WILL BE FINAL AND BINDING. THIS ARBITRATION PROVISION MEANS THAT YOUR CLAIMS AGAINST MANHEIM WILL BE RESOLVED THROUGH ARBITRATION RATHER THAN LITIGATION IN COURT. YOU ACKNOWLEDGE THAT MANHEIM MAY (BUT WILL NOT BE REQUIRED TO) SUBMIT TO ARBITRATION ANY DISPUTE OR CLAIM THAT IT MAY HAVE AGAINST YOU, WITH ANY SUCH ARBITRATION BEING GOVERNED BY THE PROVISIONS OF THIS SECTION 26.

Tai Decl., Exs. C & D, ¶ 26(a) (emphasis added) (the "Arbitration Agreement"). The Ts&Cs further notify Manheim's customers of their rights and ability to opt out of the arbitration provision:

> **ABILITY TO OPT OUT.** YOU MAY OPT OUT OF THIS ARBITRATION AGREEMENT (SECTION 26 ONLY) FOR ANY FUTURE BUSINESS WITH MANHEIM AND DOING SO WILL NOT IN ANY WAY PREJUDICE OR AFFECT YOUR DEALINGS WITH MANHEIM. TO EXERCISE THIS OPT OUT RIGHT, YOU MUST EMIAL MANHEIM WRITTEN NOTICE OF YOUR ELECTION TO OPT OUT AT

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

EMAILNOTICES@COXAUTOINC.COM NO LATER THAN 30 DAYS AFTER YOUR INITIAL ACCEPTANCE OF THESE TERMS AND CONDITIONS AS SET FORTH IN THE FIRST PARAGRAPH HEREOF. THE PROCEDURE SPELLED OUT HEREIN IS THE ONLY WAY TO OPT OUT OF THIS ARBITRATION AGREEMENT, AND ANY ATTEMPTS TO OPT OUT AFTER THE DEADLINE SET FORTH HEREIN WILL BE INEFFECTIVE.

*Id*. ¶ 26(b).

"Manheim" is defined as "Manheim Remarketing, Inc. and its various subsidiaries and affiliates, including, but not limited to, the various Manheim auto auctions and Cox Automotive, Inc." *Id*. ¶ 1. Moreover, the Ts&Cs provide that "[b]y attending any of Manheim's private auctions or using any of Manheim's services (including, for the avoidance of doubt, private store sites powered by Manheim), **whether at a Manheim location or online, you agree, for yourself, your dealership, your company, and your representatives (collectively, 'you'), to abide by the following terms and conditions, as amended from time to time by Manheim.**" *Id*., at Introductory Paragraph (emphasis added).

Plaintiff Sorrento, who is listed as a representative of SD Motorwerks in Manheim records, logged onto SD Motorwerks' Manheim account on three separate dates—November 29, 2019, February 7, 2020, and September 26, 2020—and affirmatively accepted Versions 1.7, 1.8, and 2.0 of Manheim's Ts&Cs on behalf of SD Motorwerks. *See* Ex. Tai Decl., Ex. B, PPN Portal Screenshot of SD Motorwerks' Account. Likewise, Plaintiff Hagan, who EuroMotorwerks listed as its representative in Manheim's records, logged onto EuroMotorwerks' Manheim account on August 4, 2018, and affirmatively accepted Version 1.7 of Manheim's Ts&Cs on behalf of EuroMotorwerks. *See id*., Ex. A, PPN Portal Screenshot of EuroMotorwerks' Account. Neither SD Motorwerks nor EuroMotorwerks opted out of the Arbitration Agreement. Ex. 1, ¶ 21.

## III.   PLEADING STANDARDS

A motion filed under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1175 (C.D. Cal. 2008). In deciding a Rule 12(b)(6) motion, courts may consider the facts alleged in the complaint and documents attached thereto or relied upon by the plaintiff. *Id*. As relevant here, "[w]here a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)." *Id*. at 1176.

To avoid dismissal, a plaintiff must plead a cognizable claim to survive a motion filed pursuant to Rule 12(b)(6). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A legal theory is not cognizable simply because it is alleged; mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may disregard any "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is "plausible" and cognizable only if it states more than the "possibility that a defendant has acted unlawfully" or is "'merely consistent with' a defendant's liability").

When pleading fraud, or allegations that "sound in fraud," the heightened "particularity" standard of Rule 9(b) applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, Plaintiffs' CLRA, Business & Professions Code, wire fraud, and RICO allegations must meet the Rule 9(b) standard, which requires allegations of fact setting forth "how, when, where, to whom, and by what means the [fraudulent] representations were tendered." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his [or her] alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

IV.   **ARGUMENT**

A.   **The Court Must Dismiss The Complaint Pursuant to the Parties' Arbitration Agreement.**

The Court can easily dispense with the claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants by applying the "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Plaintiffs agreed to arbitrate all claims against Manheim when they agreed to the Ts&Cs and did not opt-out of the arbitration provision. And although Plaintiffs attempt to avoid arbitration by claiming, "[a]ll agreements, if any, related to venue outside this District are null and void due to their fraudulent nature," Compl. ¶ 24, such argument falls flat, as Supreme Court and Ninth Circuit precedent mandate that issues of arbitrability must be delegated to the arbitrator in the first instance.

1.   **The Federal Arbitration Act Governs the Parties' Arbitration Agreement.**

Section 4 of the Federal Arbitration Act, 9 U.S.C. § 2 et seq. ("FAA") empowers "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." In particular, the FAA governs a written arbitration provision in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" is the functional equivalent of "affecting commerce" and signals "an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Here, both requirements are satisfied.

The Arbitration Agreement is a written agreement relating to vehicles in interstate commerce. *See* Tai Decl., Exs. C & D. Specifically, Manheim hosts auctions to facilitate the purchase and sale of vehicles between licensed and registered motor vehicle dealers. Ex. 1, ¶ 5. And as Plaintiffs allege in the Complaint, these transactions often occur across state lines. Compl. ¶ 31. Further, the parties

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

expressly agreed that the FAA would govern the interpretation and enforcement of the Arbitration Agreement: "You agree that your transactions with Manheim evidence transactions in interstate commerce, and thus, the Federal Arbitration governs the interpretation and enforcement of this [Arbitration Agreement]. . ."). Tai Decl., Exs. C & D, ¶ 26(e). The allegations in Plaintiff's Complaint likewise acknowledge that the transactions underlying the parties' dispute "affect[s] interstate commerce[.]" Compl. ¶¶ 31, 155.

Thus, the FAA governs the parties' Arbitration Agreement. *See Citi Cars, Inc. v. Cox Enters.*, No. 1:17-cv-22190-KMM, 2018 U.S. Dist. LEXIS 42544, at *18 (S.D. Fla. Jan. 22, 2018) ("[T]he transactions here—purchasing used vehicles at auction and receiving financing in order to do so—implicate interstate commerce on the face of the Complaint").

### 2.  Disputes falling within the Scope of FAA must be Arbitrated.

The FAA creates a body of federal substantive law governing "the duty to honor an agreement to arbitrate." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *see also Fraher v. Verizon Wireless Servs., Ltd. Liab. Co.*, No. 21-cv-00763-H-JLB, 2021 U.S. Dist. LEXIS 115380, at *5 (S.D. Cal. June 21, 2021). When there is a valid arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem [is] an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.* 460 U.S. at 25 (1983).

When, as here, a party invokes an arbitration agreement, a court's role is limited to two questions: (1) does a valid arbitration agreement exist between the parties, and (2) does the dispute at issue fall within the scope of the agreement. *See* 9 U.S.C. § 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626-

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

28 (1985); *Allied-Bruce Terminix*, 513 U.S. at 273-77 (1995). In answering these questions, a court may not review the merits of the underlying case, but "may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party." *Fraher*, 2021 U.S. Dist. LEXIS 115380, at *5-6.

When the parties have clearly and unmistakably delegated questions about arbitrability to the arbitrator, however, the Court need not reach the second inquiry regarding the scope of the agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Valley Power Sys. v. GE*, No. CV 11-10726 CAS (JCx), 2012 U.S. Dist. LEXIS 26228, at *11 (C.D. Cal. Feb. 27, 2012) (holding that "[w]hen an arbitration agreement demonstrates a clear intent to delegate arbitrability to the arbitrators, a court will decide arbitrability only if the party opposing arbitration successfully challenges the delegation provision itself.)." All other challenges are exclusively for the arbitrator to decide.

The Arbitration Agreement relevant here provides:

> **Arbitration Procedures/Arbitrator Authority:** Any dispute or claim subject to arbitration pursuant to this Section 26 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Streamlined Arbitration Rules and Procedures in effect at the time of the submission of such dispute or claim (the "JAMS Streamlined Rules").

Tai Decl., Exs. C & D, ¶ 26(d). Courts in the Ninth Circuit have held that where an agreement expressly incorporates the JAMS Streamlined Rules, parties have "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator. *See Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, No. CV 19-10337-DSF (JPRx), 2020 U.S. Dist. LEXIS 92837, at *5-6 (C.D. Cal. Mar. 13, 2020) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)) (holding that where an arbitration agreement stated that the "arbitration shall be administered by JAMS pursuant to its JAMS' Comprehensive Arbitration Rules and Procedures," there was

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

"clear and unmistakable evidence of an agreement to arbitrate arbitrability") *Id*. at *7; *Luckert v. Tesla Energy Operations, Inc.*, No. 21-cv-03027-VC, 2021 U.S. Dist. LEXIS 147167, at *1 (N.D. Cal. Aug. 5, 2021) (parties clearly and unmistakably delegated the question of arbitrability to the arbitrator where the agreement "incorporate[d] the JAMS Streamlined Arbitration Rule into its arbitration provision").

It therefore follows that when the parties delegate threshold issues to the arbitrator, the arbitrator, not a court, determines in the first instance the scope of the agreement to arbitrate. For example, in *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co*., 862 F.3d 981, 986 (9th Cir. 2017), as amended (Aug. 28, 2017), the Ninth Circuit held that, as the parties had clearly and unmistakably delegated questions of arbitrability, the question whether a non-party to an arbitration agreement could be obligated to arbitrate its dispute should be determined by the arbitrator. *Id*.

Applying these governing principles, "clear and unmistakable" evidence exists establishing the parties intended to arbitrate issues of arbitrability. First, the Arbitration Agreement expressly incorporates the JAMS Streamlined Rules, which the Ninth Circuit has found to be dispositive on the delegation clause. *Brennan, supra.* Second, Plaintiffs do not and cannot contest the validity of the Arbitration Agreement's delegation provision, which is the only matter this Court may properly consider. *Valley Power Sys*., 2012 U.S. Dist. LEXIS 26228, at *11. Rather, Plaintiffs' own allegations assume that a facially valid agreement to arbitrate exists but argue that it should not be applied here for other reasons. Compl. ¶ 24 ("All agreements, if any, related to venue outside this District are null and void due to their fraudulent nature.") And despite Plaintiffs' attempted end-run, courts have held that contesting the validity of arbitration agreements based on fraud is a delegable issue for arbitrators to decide. *McLellan*, 2017 U.S. Dist. LEXIS 168370, at *15  (holding that contract defenses to the validity of the arbitration provision, including that the

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

provision was procured by fraud, "must be considered by the AAA arbitrator in the first instance" due to the arbitration provision's delegation clause).

In short, because the parties have clearly and unmistakably delegated arbitrability issues to the arbitrator, the Court should dismiss the claims of Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento because they agreed to arbitrate their claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants, and any issues of arbitrability should be left to the arbitrator. *Cigirex, LLC v. Acosta, Inc.*, No. SACV 14-939 AG (DFMx), 2014 U.S. Dist. LEXIS 195377, at *8-9 (C.D. Cal. Oct. 6, 2014) (dismissing claims under arbitration provision that mandated arbitration outside of the District, stating that "[i]n these circumstances, the Court has discretion to simply dismiss claims that are subject to arbitration without also ordering them to arbitration").

### 3. The Arbitration Agreement is Enforceable against Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento.

Even if the Court ruled that the delegation clause did not delegate all threshold questions to the arbitrator, the Complaint must still be dismissed because the arbitration agreement covers this dispute. *See Cox v. Ocean View Hotel*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (citation omitted).

As noted above, an arbitration agreement governed by the FAA is presumed valid and enforceable. 9 U.S.C. § 2; *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). In determining whether an arbitration agreement is enforceable under the FAA, courts look to the state contract law governing the agreement, "while giving due regard to the federal policy in favor of arbitration." *Fraher*, 2021 U.S. Dist. LEXIS 115380, at *6 (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)).

### a. The Arbitration Agreement is Valid and Enforceable.

In this case, Plaintiffs agreed pursuant to the Manheim Terms and Conditions that Georgia law applies. *See* Tai Decl., Exs. C & D, ¶ 25 ("These terms and

conditions will be governed by the internal laws of the State of Georgia. . ."); *see also Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531, at *12 (N.D. Cal. Nov. 2, 2005) (holding that "California law generally favors enforcement of bargained for choice-of-law provisions" and applying Ohio law to determine validity of an arbitration agreement pursuant to choice-of-law provision); *Retina Consultants P.C. v. Benjamin*, No. CV 119-037, 2020 U.S. Dist. LEXIS 48820, at *15 (S.D. Ga. Mar. 19, 2020) (holding a binding contract includes "[a] definite offer and complete acceptance for consideration").

A valid agreement to arbitrate exists here. Plaintiffs expressly agreed to "arbitrate any dispute or claim that you may have with Manheim that arises out of or relate in any way" to "any purchase, sale, or other auction or credit transaction with Manheim." Tai Decl., Exs. C & D, at ¶ 26(a). Additionally, Hagen and Sorrento, acting on behalf of SD Motorwerks and EuroMotorwerks, affirmatively accepted Manheim's Ts&Cs online at Manheim.com, which incorporate the Arbitration Agreement, as a condition of using Manheim's auctions and other services, including transacting through Manheim's online portals. The electronic receipt of Plaintiffs' acceptance is evidence of this. Ex. 1, ¶¶ 15-16. After accepting these terms online, SD Motorwerks and EuroMotorwerks then began purchasing vehicles from other dealers through Manheim's auctions and continued to do so through the relevant period in the Complaint. *See generally* Compl.

Courts in Georgia and California routinely recognize that agreements similar to Manheim's Ts&Cs are valid and enforceable. *See Ivy v. Ecolab, Inc.*, No. 1:19-CV-5476-JPB-JSA, 2020 U.S. Dist. LEXIS 256054, at *4 (N.D. Ga. Apr. 20, 2020) (finding that arbitration agreement which plaintiff accepted by clicking the "AGREE" button was valid and enforceable); *NCR Corp. v. Manno*, No. 3:12-cv-121-TCB, 2012 U.S. Dist. LEXIS 196750, at *13 (N.D. Ga. Oct. 26, 2012) (enforcing online agreement where the recipient clicked a button acknowledging his assent to the terms of the agreement); *Jialu Wu v. iTalk Glob. Communs., Inc.*, No. CV 20-

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

7150 PSG (PJWx), 2020 U.S. Dist. LEXIS 250121, at *9-10 (C.D. Cal. Oct. 21, 2020) ("[T]he Agreement is clearly a clickwrap agreement, and Plaintiff's assent to the clickwrap agreement is valid regardless of his actual notice of the Agreement's terms"). Thus, the Ts&Cs and the Arbitration Agreement contained therein constitute a valid and enforceable contract.

### b.   The Arbitration Agreement Applies to Claims against Manheim and the Employee Defendants.

Because the Arbitration Agreement is valid and enforceable, Manheim Riverside and Manheim Nevada may enforce its terms against Plaintiffs, as Plaintiffs expressly agreed to arbitrate any and all claims against "**Manheim Remarketing, Inc. and its various subsidiaries and affiliates, including the various Manheim auto auctions,** Cox Automotive, Inc." Tai Decl., Exs. C & D, ¶ 1 (emphasis added); *Hoffman, supra.*

The Arbitration Agreement is likewise enforceable by the Employee Defendants even though they are not signatories to the Agreement. Georgia law holds that an employee may rely on arbitration agreements entered into by its employers in disputes involving their role for the employer. *See Comvest v. Corp. Sec. Grp.*, 234 Ga. App. 277, 281, 507 S.E.2d 21, 25 (1998) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements"). Thus, the Employee Defendants are "also covered under the terms of [the Arbitration Agreement]." *Id*.[8]

Thus, where a party asserts claims against a signatory and a non-signatory that "are based on the same facts and are inherently inseparable," courts dismiss the claims against the non-signatory under equitable estoppel. *Autonation Fin. Servs. Corp.*, 264 Ga. App. 755, 761, 592 S.E.2d 96, 101 (2003); *Jackson v. Cintas Corp.*,

---

[8] California law holds the same. *See Moss v. McLucas*, No. 12-cv-2368 BEN (KSC), 2013 U.S. Dist. LEXIS 55391, at *10 (S.D. Cal. Apr. 15, 2013) (finding a non-signatory employee is entitled to invoke arbitration based on an arbitration agreement entered into by his employer).

No. 1:03-CV-3104-JOF, 2004 U.S. Dist. LEXIS 30850, at *27-28 (N.D. Ga. Sep. 29, 2004) (finding that trial court did not err in dismissing claims against an individual defendant who was not a signatory to the arbitration agreement, reasoning that the claims against the non-signatory and signatory arose out of "substantially interdependent and concerted misconduct"); *Smith v. First Equity Card Corp.*, No. 4:08-CV-08(CDL), 2008 U.S. Dist. LEXIS 80217, at *5 (M.D. Ga. Oct. 9, 2008) (authorizing a non-signatory to invoke an arbitration provision and dismissing the action "so that the parties may resolve this dispute through arbitration).

Here, Plaintiffs assert the same seven causes of action against "[a]ll Defendants," premised on the same underlying allegations: that Manheim Riverside, Manheim Nevada, and the Employee Defendants did not disclose the Vehicles' material defects before SD Motorwerks and/or EuroMotorwerks purchased the Vehicles from the sellers. *See* Compl. The Complaint also alleges that each of the Employee Defendants is "a management employee and authorized agent of MANHEIM," (Compl. ¶¶ 10-12), and that the allegedly unlawful conduct at issue was the product of a carefully orchestrated "enterprise" by Manheim. Compl. ¶ 31. In other words, the claims against both the non-parties to the Arbitration Agreement (the Employee Defendants) "are based on the same facts and are inherently inseparable," from the claims against the parties to the Agreement (Manheim), and should therefore be dismissed under the principle of equitable estoppel. *Autonation Fin. Servs. Corp*., 264 Ga. App. at 761. Holding otherwise would render the parties' Arbitration Agreement meaningless, as Plaintiffs could avoid their obligation to arbitrate all disputes against Manheim by proceeding against the Employee Defendants individually. *Retina Consultants, P.C.*, 2020 U.S. Dist. LEXIS 48820, at *28.

        **c.**    **The Arbitration Agreement is Enforceable against Plaintiffs Hagen and Sorrento.**

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Plaintiffs Sorrento's and Hagen's claims against Defendants must be dismissed and arbitrated for similar reasons. State law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (applying Georgia law). The Ts&Cs expressly apply not only to SD Motorwerks and EuroMotorwerks, but also to their "dealership," "company," and "representatives." Tai Decl., Exs. C & D, Introductory Paragraph. Plaintiffs have clearly pled that Plaintiffs Hagen and Sorrento are representatives of SD Motorwerks and EuroMotorwerks, which binds them to arbitration. *See* Compl. ¶¶ 1, 3-4, 52; *see also* Ex. 1, ¶¶ 15-16.

For example, EuroMotorwerks listed Hagen as its representative in registering its Manheim account, and Hagen accepted Manheim's Ts&Cs's on its behalf. Ex. 1, ¶ 15. In fact, the allegations in the Complaint conflate the actions of Hagen with those of SD Motorwerks and EuroMotorwerks, further demonstrating the existence of an agency relationship. *See* Compl. ¶ 35 ("HAGEN/SD Motorwerks contacted MANHEIM to express his concerns"); *id.* ¶ 3 ("RICHARD JOHN HAGEN dba EUROMOTORWERKS"). These allegations likewise establish that Sorrento was SD Motorwerks' agent. Notably, the Complaint alleges that SD Motorswerks is organized as a "San Diego Business Trust" which is "operated by the Co-Trustee, Carrie Elin Sorrento." *Id*. ¶ 1. Plaintiffs further allege that, "[a]t all times material thereto, the Co-Trustee is and was the operator of the business." *Id*. Plainly, as SD Motorwerks' "operator" and "Co-Trustee," Sorrento was authorized to act on its behalf, giving rise to an agency relationship.

Simply put, Plaintiffs' allegations and the undisputed evidence show that Hagen and Sorrento were agents of SD Motorwerks and EuroMotorwerks. *See Merrill Lync, Pierce, Fenner & Smith v. Landau-Taylor*, 357 Ga. App. 818, 822, 849 S.E.2d 504, 507 (2020). As such, a valid and enforceable arbitration agreement exists between Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento, on one hand, and Manheim Riverside, Manheim Nevada, and the Employee Defendants on

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

the other.

### 4.   Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement.

Plaintiffs' claims fit squarely within the Arbitration Agreement given its all-encompassing language covering "any dispute or claim" "aris[ing] out of or relat[ing] in any way" to "any purchase, sale, or other auction or credit transaction with Manheim." Tai Decl., Exs. C & D, ¶ 26(a). Courts hold that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Haas v. J.A. Cambece Law Office, P.C.*, No. 05cv2039 DMS (RBB), 2006 U.S. Dist. LEXIS 104295, at *10 (S.D. Cal. Apr. 4, 2006), as "the general rule is that arbitration will be ordered 'unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at *10-11 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986)).

The preference for arbitration is particularly strong where, as here, there is a broad arbitration clause at issue. *AT&T Techs.*, 475 U.S. at 650. "Clauses requiring arbitration of claims 'arising out of or relating to' a contract are considered broad. *Homestake Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003); *see also Southland Corp. v. Keating*, 465 U.S. 1, 15 n.7 (1984) (noting that an arbitration clause was "broad" where it contained "arising out of or relating to" language).

Given these considerations and the strong presumption in favor of arbitration, Plaintiffs' claims fall directly within the scope of the Arbitration Agreement. Fundamentally, Plaintiffs' claims are predicated on Manheim's alleged failure to disclose defects in the three Vehicles they purchased from sellers at Manheim auctions. *See* Compl. Plaintiffs' claims therefore "arise[] out of or relate" to their "purchase, sale, or other auction or credit transaction with Manheim." Tai Decl., Exs. C & D, ¶ 26(a). Thus, even if this Court were authorized to address the scope of the Arbitration Agreement, it must find all of Plaintiffs' claims arbitrable.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**5.      Because the Claims are Subject to Arbitration, the Court Must Dismiss the Claims with Prejudice or Transfer this Case to the Northern District of Georgia.**

Ninth Circuit law mandates dismissal under 12(b)(6) where all claims in the action are barred by an arbitration provision. *See Luna*, 575 F. Supp. 2d at 1176, ("Where a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)") (citing *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000).

In the event, however, the Court declines to exercise its discretion to dismiss Plaintiffs' claims with prejudice, the Court should transfer this case pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 12(b)(3). The Court may transfer a civil action to any other district "where it might have been brought" or to any district "to which all parties have consented" "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

A motion to dismiss a plaintiff's claim based on a forum selection clause is analyzed under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Under this standard, the pleadings are not accepted as true, and the district court may consider facts outside of the pleadings. *Id.* "[I]n the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003).The Arbitration Agreement states that "[a]ny arbitration will be held in Atlanta, Georgia, unless otherwise agreed upon by the parties in writing." Tai Decl., Exs. C & D, ¶ 26(d). In other words, Atlanta, Georgia "has been deemed a convenient forum for arbitration by the parties." *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1093 (D. Haw. 2011). The Ts&Cs further state that to the extent any claims are not arbitrated,

"[Plaintiffs] agree that non-exclusive jurisdiction and venue for such claims and disputes will exist in the federal and state courts located in Fulton County, Georgia, [and] further agree and acknowledge that [Plaintiffs] may not sue Manheim in any jurisdiction or venue except Fulton County, Georgia." Tai Decl., Exs. C & D, ¶ 31.

*Lexington* is instructive here. After determining the plaintiff's claims were subject to arbitration, the court transferred venue to the Northern District of Texas so the court there could compel arbitration in Dallas, Texas, per the parties' agreement. *Id*. at 1092-93. The court noted that the arbitration agreement's forum selection clause selecting Dallas, Texas as the forum for arbitration "strongly suggests to the court that Hawaii is not the proper venue to adjudicate a motion to compel arbitration under the parties' agreement." *Id*. at 1092. Likewise here, the parties' forum selection clause designating Atlanta, Georgia as the situs for arbitration "strongly suggests" that mandating arbitration in the Southern District of California would be improper.

Thus, under Rule 12(b)(6), the Court should dismiss with prejudice the claims of Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento against Manheim Riverside, Manheim Nevada, and the Employee Defendants as barred by the Arbitration Agreement. However, if the Court does not dismiss Plaintiffs' claims under 12(b)(6), the Court should transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a) and Rule 12(b)(3) so that arbitration may be compelled in the contractually designated forum.

**B.     Plaintiffs' Claims Fail For Lack of Subject Matter Jurisdiction.**

As discussed above, Plaintiffs' claims must be dismissed under Rule 12(b)(6) because they are subject to binding arbitration. This also means, however, that this Court lacks subject matter jurisdiction over them. *See Camarillo v. Balboa Thrift & Loan Ass'n*, No. 3:20-cv-00913, 2021 U.S. Dist. LEXIS 22351, at *36-44 (S.D. Cal. Feb. 4, 2021) (dismissing lawsuit subject to arbitration under Federal Rule of Evidence 12(b)(1) for lack of subject matter jurisdiction); *Machiavelli v. Shearson,*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Hammill & Co.*, 384 F. Supp. 21, 28 (E.D. Cal. 1974) (holding that a court is deprived of subject matter jurisdiction while an arbitration is pending).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) may be either "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject-matter jurisdiction, the court resolves the motion as it would a motion to dismiss under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). The court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor, and "the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

As discussed above, all claims except those of Plaintiff Amadi are subject to a binding and enforceable arbitration provision, governed by the FAA. Accordingly, this Court lacks subject matter jurisdiction over them, and the claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

### C. Plaintiff Amadi's Claims Fail as a Matter of Law.

Plaintiff Amadi similarly asserts a variety of claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants, including breach of implied warranty,[9] restitution, and claims sounding in fraud.[10] The Court should dismiss Amadi's claims because there are devoid of any supporting factual allegations and cannot state a claim, even with discovery.

---

[9] Count 2 (Song-Beverly Consumer Warranty Act) and Count 3 (Magnuson Moss Warranty Act).[10] Count 1 (CLRA), Count 5 (Cal. Business & Professions Code), Count 6 (Wire Fraud), Count 7 (RICO).

[10] Count 1 (CLRA), Count 5 (Cal. Business & Professions Code), Count 6 (Wire Fraud), Count 7 (RICO).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

First, Amadi's claim under "the Magnuson-Moss Act stand[s] or fall[s] with his . . . implied warranty claim[] under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Under California law, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the *manufacturer's and the retail seller's* implied warranty that the goods are merchantable." Cal. Civ. Code § 1792 (emphasis added). In support of his claims, Amadi does little more than track the elements of an implied warranty claim. But the Court need not consider Amadi's conclusion that Manheim and the Employee Defendants "manufacture[d], distribut[ed], and warrant[ed]" the Vehicles because this conclusion is belied by Amadi's factual allegations. Compl. ¶ 97; *see In re Gilead Scis., Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (rejecting conclusory and unwarranted deductions of fact).

For example, it is clear from the Complaint that Manheim and Employee Defendants are not vehicle manufacturers. *See* Compl. ¶¶ 26, 31 (alleging Manheim "*sources* **the automobiles marketed and sold at their auctions from various sources**."); *id.* ¶¶ 10-12 (emphasis added).  Amadi also alleges that Manheim, as a third-party to the transactions, "makes no representation or guarantees on any vehicle sold or offered for sale," and that the "seller" (not Manheim) "must disclose permanent structural damage … prior to selling a vehicle at auction regardless of sales channel or light condition." Compl. ¶ 56. Finally, Amadi did not purchase the used BMW from Manheim. Compl. ¶ 37 (alleging Amadi purchased the vehicle from SD Motorwerks). Amadi therefore fails to allege an implied warranty claim against the Manheim and Employee Defendants because they did not manufacture or sell any vehicle at retail to Amadi—or at all. *See Watkins v. MGA Entm't, Inc.*, No. 21-cv-00617-JCS, 2021 U.S. Dist. LEXIS 138888, at *32 (N.D. Cal. July 26, 2021) (concluding privity is required for implied warranty claims) (citing *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058 (2008) ("Privity of contract is a

prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.")).

Second, Amadi's restitution/quasi-contract claim likewise fails. "To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Walters v. Fid. Mortg. of Cal., Inc.*, No. 09-cv-3317-FCD, 2010 U.S. Dist. LEXIS 36839, at *34 (E.D. Cal. Apr. 14, 2010) (citation omitted). "Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (citation omitted). Thus, a plaintiff must demonstrate that the defendant is in possession of money or property taken from her. *See Groupion, LLC v. Groupon, Inc*., 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest of any of [defendant's] profits," *citing Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 699, 38 Cal. Rptr. 3d 36 (2006) (a plaintiff can seek money or property as restitution only when the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession").

For example, in *Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013), the court concluded that the plaintiff was not entitled to restitution because she did not allege facts showing the defendants were "in possession of funds rightfully belonging to her."  There, the plaintiff purchased a used vehicle from a third party, yet sought restitution from the manufacturer. *Id.* Relying on several authorities, the court reasoned, "[t]o show that she is entitled to restitution, a plaintiff must demonstrate that the defendant is in possession of money or property taken from her." *Id.*; *see also Hill v. Opus Corp.*, 464 B.R. 361, 394 (C.D.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Cal. 2011) (finding restitution is not available where plaintiff claims money that cannot be "traced to any particular funds in [the defendant's] possession").

According to the Complaint, although SD Motorwerks claimed the BMW was defective on January 30, 2020, SD Motorwerks nonetheless sold the vehicle to Amadi just five days later. Compl. ¶¶ 36-37. After purchasing the BMW, Amadi took the BMW in for service to various BMW dealerships. Compl. ¶¶ 38-49. Noticeably missing are any allegations related to Manheim vis-à-vis Amadi. Taking Plaintiffs' factual allegations as true then, Amadi did not purchase the BMW from a Manheim auction, did not visit Manheim Riverside or Manheim Nevada, and did not communicate with anyone from Manheim.  It therefore follows that Amadi cannot plausibly allege that Manheim and the Employee Defendants retained a benefit at his expense. Amadi's single, boilerplate allegation that, "each of the Defendants were acting as agents, employees, assigns and/or contractors of one another" (Compl. ¶ 62) is insufficient to elevate his claims against Manheim and the Employee Defendants to the level of plausibility. *See Palomares v. Bear Stearns Residential Mortg. Corp.*, No. 07cv01899 WQH, 2008 WL 686683, at *4 (S. D. Cal. Mar. 13, 2008). Neither Manheim nor the Employee Defendants could have plausibly, as a matter of law, received a benefit from Amadi, and the Court should dismiss these claims.

With respect to Amadi's remaining claims—CLRA, California's Unfair Competition Law,[11] wire fraud, and RICO[12]—(which all sound in fraud), Amadi fails

---

[11] CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer," Cal. Civ. Code § 1770, and the UCL prohibits "any unlawful, unfair, or fraudulent business practice, Cal. Bus. & Prof. Code § 17200.

[12] Wire fraud requires three elements: (1) a scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) specific intent to deceive or defraud. *See United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001); and the elements of a RICO cause of action require that a defendant "must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

to plead facts with the particularity required by Rule 9(b). *See Kearns*, 567 F.3d at 1125 (noting that claims sounding in fraud must satisfy the particularity requirement of Rule 9(b)). Amadi fails to allege any facts of "how, when, where, to whom, and by what means the representations [central to the fraud] were tendered" by Manheim or the Employee Defendants. *See Hamilton*, 195 Cal. App. 4th at 1614. Amadi does not allege when, if ever, he visited Manheim or spoke with a Manheim employee or who from Manheim made any misrepresentation or omission to him—because no one did. On the contrary, Amadi had no interaction with any Manheim representative because he purchased his vehicle from SD Motorwerks. Compl. ¶ 37.

Thus, based on the Complaint's allegations, it is entirely plausible that Manheim Riverside, Manheim Nevada, and the Employee Defendants did not engage in *any* unlawful conduct concerning Amadi, did not make *any* misrepresentations or material omissions to him, and did not interact with him *at all*. Amadi's claims sounding in fraud therefore do not satisfy Rule 9(b)'s particularity requirement—let alone Rule 8(a)'s plausibility standard. The Court should therefore dismiss with prejudice Amadi's claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants because no amount of discovery can cure this deficiency. *See*, *e.g. Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (affirming dismissal of CLRA and UCL claims sounding in fraud for lack of particularity); *Sihler v. Fulfillment Lab, Inc.*, No. 20-cv-01528-H-MSB, 2020 U.S. Dist. LEXIS 230404, at *40 (S.D. Cal. Dec. 8, 2020) (finding plaintiff failed to plead sufficient specific facts that move their "RICO allegations from the realm of the possible to the plausible."); *Doan v. Singh*, 617 Fed. App'x 684, 686 (9th Cir. 2015) (affirming dismissal without leave to amend of plaintiff's RICO wire fraud claim because

activity or collection of unlawful debt." *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13cv1395-GPC (BLM), 2015 U.S. Dist. LEXIS 81492, at *20 (S.D. Cal. June 23, 2015).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1   plaintiffs' allegations were unclear as to "what exactly each individual did, when they
2   did it, or how they functioned together as a continuing unit.").

### D.    The Complaint Does Not Allege A Cognizable Claim Against NextGear Capital.

3
4

5   Finally, Plaintiffs' Complaint fails to state a claim against NextGear. Of the
6   162 paragraphs in the Complaint, Plaintiffs aver only a single, non-substantive
7   allegation against NextGear. *See* Compl. ¶ 9 (alleging NextGear is a "California
8   fictitious named LLC"). Aside from this reference, the Complaint fails to state any
9   well-pleaded facts showing even a possibility that NextGear acted unlawfully, and
10  no amount of discovery will change this result. *See Iqbal*, 556 U.S. at 679. The Court
11  should therefore dismiss Plaintiffs' claims against NextGear. *See Twombly*, 550 U.S.
12  at 557.

### E.    In The Alternative, Plaintiffs' Complaint Against Defendants Brawn and Harmon Must Be Dismissed For Lack of Personal Jurisdiction.

13
14

15  As shown above, Plaintiffs' claims against Defendants Brawn and Harmon are
16  subject to dismissal based on the Arbitration Agreement or transfer of venue based
17  on the forum selection clause. But if the Court denies both requests, it must still
18  dismiss Plaintiffs' claims against them under Federal Rule of Civil Procedure
19  12(b)(2) for lack of personal jurisdiction.

20  Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek
21  dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).
22  "Where, as here, the defendant's motion is based on written materials rather than an
23  evidentiary hearing, the plaintiff need only make a prima facie showing of
24  jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d
25  1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).
26  Uncontroverted allegations in the complaint are taken as true, *Schwarzenegger v.*
27  *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and factual disputes

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

contained within declarations or affidavits are resolved in the plaintiff's favor, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Under Federal Rule of Civil Procedure 4(k)(1)(A), this Court has personal jurisdiction if the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," *i.e.*, California. Because California's long-arm statute is coextensive with federal due process requirements, the Court may exercise personal jurisdiction so long as it comports with due process. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, Defendants Brawn and Harmon do not have sufficient contacts to subject them to either general or specific jurisdiction in California. They are employees and former employees of Manheim Nevada, which is located in Downtown, Nevada. Declaration of Danny Brawn, ("Brawn Decl."), ¶ 2, attached as Exhibit 2; Declaration of Steve Harmon, ("Harmon Decl."), ¶ 2, attached as Exhibit 3. Defendants Brawn and Harmon are residents of Nevada, and were residents of Nevada during all pertinent times in the lawsuit. Ex. 2, ¶ 4; Ex. 3, ¶ 4. They do not own real or tangible personal property in California, are not subject to taxation in California, do not report personal income taxes, and do not regularly work or maintain an office in California. Ex. 2, ¶¶ 5, 10-12; Ex. 3, ¶¶ 5, 10-12.  Defendants Brawn and Harmon are therefore not domiciled in California and, thus, are not subject to general personal jurisdiction in California. *See Goodyear Dunlop Tires Opreations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Moreover, Defendants Brawn and Harmon are not subject to specific jurisdiction in California, as they lack minimum contacts with it relative to Plaintiffs' claims here. Any actions they took, or failed to take, occurred in Nevada, not California. Ex. 2, ¶¶ 6, 13; Ex. 3, ¶¶ 6, 13. And they did not direct any action towards California in connection with Plaintiffs claims, did not place any goods in the stream of commerce that would direct them to California, and did not derive any benefit from economic activity in California associated with Plaintiffs' claims. Ex. 2, ¶¶ 8-9; Ex. 3. ¶¶ 8-9. Thus, because the Plaintiffs' claims against Defendants Brawn and Harmon arise out of their employment with Manheim Nevada, and the employees lack the necessary minimum contacts with California, the claims against them must be dismissed. *See Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 947-48 (N.D. Cal. 2014) (dismissing claims against employee defendants because "[t]he Court is not convinced that it may exercise specific personal jurisdiction over the employee defendants on the basis that they communicated with [plaintiff], in their capacity as Wells Fargo employees, in response to her request for a loan modification.").

In short, Defendants Brawn and Harmon live and work in Nevada. To the extent Plaintiffs' baseless claims against them are not subject to arbitration, the Court should dismiss them under Federal Rule of Evidence 12(b)(2) for lack of personal jurisdiction.[13]

**F.    Defendants are Entitled to Attorneys' Fees.**

Pursuant to the Ts&Cs that Plaintiffs SD Motorwerks and EuroMotowerks indisputably accepted, *see* Ex. 1, Declaration of Veronica Tai, Defendants Manheim Riverside and Manheim Nevada are entitled to attorneys' fees for defending against Plaintiffs' claims and bringing this Motion. Specifically, Section 6(l)(v) of the Ts&Cs states:

---

[13] Plaintiff Amadi's claims against Defendants Brawn and Harmon also fail for lack of personal jurisdiction.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**6. Terms of Sale (l) Disclaimers and Indemnification**

(v) If Manheim is required to make or defend a claim, related in any way to a Vehicle or Vehicle transaction, from or against either Seller or Buyer or an agent, employee, insurer, or bonding company of either, then Manheim shall recover, in addition to the amount of the claim and the costs incurred in the claim, reasonable attorneys' fees and legal fees in an amount not less than twenty-five percent (25%) of the amount of the claim, regardless of whether suit is filed, including appellate and bankruptcy fees and costs. Interest shall accrue on the unpaid balance of any such claim at the rate of one and one-half percent (1.5%) per month, provided that, if applicable law permits a higher rate, such higher rate shall apply.

Tai Decl., Exs. C & D, ¶ 6(l)(v). Plaintiffs filed the Complaint against Manheim Riverside and Manheim Nevada, requiring them to defend against these claims in contravention of the Arbitration Agreement. Based on the clear and unambiguous language of Section 6 of the Ts&Cs, Manheim is entitled to "reasonable attorneys' fees and legal fees in an amount not less than 25% of the amount of the claim" because it is forced to "defend a claim . . . related to a Vehicle transaction." *See id*.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court (1) dismiss the claims of Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen and Sorrento against Defendants Manheim Riverside, Manheim Nevada, and the Employee Defendants, or alternatively, transfer the action to the Northern District of Georgia; (2) dismiss Plaintiff Amadi's claims against Defendants Manheim Riverside, Manheim Nevada, and the Employee Defendants; (3) dismiss all Plaintiffs' claims against Defendant Nextgear; and (4) award Manheim Riverside and Manheim Nevada its reasonable attorneys' fees and legal fees, and any other relief to which Defendants are justly entitled.

1

2

Dated: September 3, 2021

Squire Patton Boggs (US) LLP

3

By: */s/ Petrina A. McDaniel*

4

Petrina A. McDaniel
Eric J. Knapp
Hannah Makinde

5

6

*Attorneys for Defendants
Manheim Riverside, Manheim Nevada,
NextGear Capital, Danny Brawn, Steve
Harmon, and Cesar Espinosa*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 31 -