TROUTMAN PEPPER HAMILTON SANDERS LLP
Monique M. Fuentes, Bar No. 205501
monique.fuentes@troutman.com
Ross Smith, Bar No. 416738
ross.smith@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA  92614-2545
Telephone:    949.622.2700
Facsimile:      949.622.2739

Attorneys for Defendant
CARFAX, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO, LLC, a Montana LLC dba SAN DIEGO MOTORWERKS; CHIDIEBERE AMADI, an individual, RICHARD JOHN HAGEN dba EUROMOTORWERKS; RICHARD JOHN HAGEN, an individual; and CARRIE SORRENTO, an individual, | Case No.  21-cv-1205-H-JLB |
| | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| Plaintiff, | Judge: Hon. Marilyn Huff |
| | Date:      November 1, 2021 |
| v. | Time:      10:30 a.m. |
| | Ctrm:      TBD |
| MANHEIM RIVERSIDE aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC; MANHEIM NEVADA aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC CARFAX, INC.; NEXTGEAR CAPITAL; DANNY BRAUN, an individual; CESAR ESPINOSA, an individual; STEVE HARMON, an individual; JERRY SIDERMAN, an individual; BMW OF NORTH AMERICA, LLC; CENTER AUTOMOTIVE, INC dba CENTER BMW; and DOES 1 through 200, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 1

STANDARD OF REVIEW ................................................................................... 7

ARGUMENT ........................................................................................................ 8

    A.    The Claims of the SD Motorwerks Plaintiffs Must Be Dismissed Pursuant to Rule 12(b)(6) Because They Are Subject to a Binding Arbitration Agreement .................................................................................................. 8

    B.    Plaintiffs' Claims Fail to Plead Fraud With Particularity .................................... 10

    C.    Plaintiffs' First Cause of Action for Violation of CLRA § 1750 Fails Because Plaintiffs Are Not Consumers Under the CLRA, Had No Transaction with Carfax, Fail to Adequately Plead Reliance, the VHRs Show Carfax Did Not Engage in Unfair or Deceptive Practices ......................... 11

        1.    The SD Motorwerks Plaintiffs Are Not "Consumers" Who Purchased "Goods" or "Services" Under the CLRA ............................... 11

        2.    Plaintiff Amadi Had No Transaction with Carfax ................................... 12

        3.    Plaintiffs Fail to Adequately Plead Reliance ........................................... 12

        4.    The VHRs Show That Carfax Did Not Engage in Unfair Or Deceptive Practices ................................................................................. 13

    D.    Plaintiffs' Second Cause of Action Under the Song-Beverly Consumer Warranty Act Fails Because The Vehicles Are Not "Consumer Goods" And Carfax Is Not a Manufacturer, Distributor, Or Seller of the Vehicles ......... 15

    E.    Plaintiffs' Third Cause of Action for Breach of Implied Warranty Under the Magnuson-Moss Warranty Act Fails Because The Vehicles Are Not "Consumer Products," the SD Motorwerks Plaintiffs Are Not "Consumers," And Carfax Is Not a Supplier or Warrantor of the Vehicles ......... 16

    F.    Plaintiffs' Fourth Cause of Action for Quasi-Contract/Restitution Fails Because Carfax Was Not Unjustly Enriched ...................................................... 16

    G.    Plaintiffs' Fifth Cause of Action for Violation of Section 17200 Fails Because Plaintiffs Cannot Adequately Allege Carfax Engaged in Unfair, Unlawful, or Fraudulent Business Practices .......................................................... 17

    H.    Plaintiffs' Sixth and Seventh Causes of Action for Wire Fraud and RICO Violations Fail Because There Is No Private Right of Action for Wire Fraud and Plaintiffs Fail to State A Claim Under RICO ...................................... 19

CONCLUSION .................................................................................................... 21

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

- i -

# TABLE OF AUTHORITIES

**Page (s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)..........................................................................8

*Davis v. Ford Motor Credit Co. LLC*,
   179 Cal. App. 4th 581 (2009)...................................................................17, 18

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985).........................................................................................8

*Fraher v. Verizon Wireless Servs., LLC*,
   No. 21-cv-00763, 2021 U.S. Dist. LEXIS 115380 (S.D. Cal. June 21, 2021)............8

*Garmon v. County of L.A.*,
   828 F.3d 837 (9th Cir. 2016)............................................................................7

*Hoffman v. Citibank (S. Dakota), N.A.*,
   546 F.3d 1078 (9th Cir. 2008)..........................................................................8

*Jordan v. Wonderful Citrus Packing Ltd. Liab. Co.*,
   No. 1:18-CV-00401-AWI-SAB, 2018 U.S. Dist. LEXIS 154094 (E.D. Cal.
   Sep. 10, 2018) .........................................................................................16, 17

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..........................................................................7

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001)............................................................................7

*Luna v. Kemira Specialty, Inc.*,
   575 F. Supp. 2d 1166 (C.D. Cal. 2008).............................................................9

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)...........................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).............................................................................................8

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Reilly v. Levin*,
No. 1:15-cv-00429-EJL-CWD, 2015 U.S. Dist. LEXIS 178165 (D. Idaho Dec. 18, 2015) ........................................................................................................................19

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F.2d 530 (9th Cir. 1984) ..................................................................................7

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ................................................................................19

*Shroyer v. New Cingular Wireless Serv., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ................................................................................7

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..................................................................................7

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ............................................................................8, 10

*Tucker v. Pac. Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) ..............................................................................17

*United States v. Jinian*,
725 F.3d 954 (9th Cir. 2013) ................................................................................19

*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020) ........................................................................19, 20

**Statutes**

9 U.S.C. § 1 ...........................................................................................................4, 8

 9 U.S.C. § 2 ...............................................................................................................8

9 U.S.C. § 4 ...............................................................................................................8

15 U.S.C. § 2301(1) ................................................................................................16

18 U.S. C. § 1962(c) ...............................................................................................19

18 U.S.C. § 1964(c) ................................................................................................19

Federal Rule of Civil Procedure 9(b) ................................................................7,8

Federal Rule of Civil Procedure 12(b)(6) ................................................1, 7, 8, 9

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Business and Professions Code §17200 ................................................................10, 17, 18

Cal. Civil Code §1750 ................................................................................................................11

Cal. Civil Code §§ 1760 and 1761 ...........................................................................................11

Cal. Civil Code § 1761(d) .........................................................................................................11

Cal. Civil Code § 1761(e) .........................................................................................................12

Cal. Civil Code § 1770 ..............................................................................................................12

Cal. Civil Code § 1780 ..............................................................................................................12

Cal. Civil Code § 1791(a) .........................................................................................................15

Cal. Civil Code § 1791.1 ...........................................................................................................15

Cal. Civil Code § 1792 ..............................................................................................................15

Cal. Civil Code § 1795.8 ...........................................................................................................15

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- iv -

## **INTRODUCTION**

Based on the allegations contained in the Complaint, Plaintiffs do not comply with Federal Rule of Civil Procedure 9(b) and cannot state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Accordingly, the Complaint against Carfax should be dismissed with prejudice.  However, even if the Court finds that Plaintiffs do state claims, it should still dismiss the Complaint with respect to all Plaintiffs except Mr. Amadi, owing to the binding and enforceable written arbitration agreement.

## **STATEMENT OF FACTS**

Plaintiffs'[1] Complaint asserts seven separate causes of action against Carfax, Inc. ("Carfax").  The allegations in the Complaint relate to the purchase of three used vehicles by the SD Motorwerks Plaintiffs at auctions.  Plaintiffs allege that after purchasing the vehicles, they discovered problems that were not previously disclosed.  The majority of the allegations in the Complaint relate to Defendants other than Carfax.  The only alleged involvement by Carfax was SD Motorwerks' alleged review of a Carfax Vehicle History Report ("VHR") prior to purchase for two of the three vehicles.

Carfax provides vehicle history information for buyers and sellers of used cars and light trucks.  A VHR contains vehicle information that is reported to Carfax from its data sources.  Such information may include the vehicle's title information, flood damage history, total loss, accident

---

[1] Plaintiffs fall into two categories.  First, Plaintiffs San Diego Motorwerks ("SD Motorworks"), Richard John Hagen dba EuroMotorwerks ("EuroMotorwerks"), Richard Hagen ("Hagen"), and Carrie Sorrento ("Sorrento") (collectively, the "SD Motorwerks Plaintiffs") are all affiliated with SD Motorwerks.  EuroMotorwerks was the prior business name of SD Motorwerks.  Both Hagen and Sorrento are representatives and agents of SD Motorwerks and EuroMotorwerks who, at all relevant times, were acting as such.  Sorrento is the Co-Trustee and operator of SD Motorwerks. Compl. ¶ 1.  Hagen was affiliated with EuroMotorwerks before its name was changed to SD Motorwerks, and is currently affiliated with SD Motorwerks.  Compl. ¶¶ 3-4, 52.  Second, Plaintiff Amadi is the individual who purchased one of the vehicles discussed in the Complaint from SD Motorwerks.  Compl. ¶ 37.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

21-CV-1205-H-JLB

history, odometer readings, number of owners, and accident indicators, among other information. The Carfax vehicle history database is a live, constantly evolving database of VIN-specific vehicle history data that has been electronically submitted from over 113,000 data sources, including motor vehicle agencies, rental and fleet vehicle companies, state inspection stations, fire and police departments, manufacturers, inspection companies and service and repair facilities. Some sources of data may include historical events dating back several years in a vehicle's history, and newly acquired sources may provide data that updates prior events on the VHR.

Carfax can only report information in a Carfax VHR that is reported to Carfax from its sources. For this reason, Carfax does not provide any representations or guarantees in the VHR, or anywhere else, that a VHR is complete or that a vehicle was never in an accident or never sustained damage. In fact, Carfax is very transparent in noting the limitations of its products and services because the data is *not* a complete source of information.

The VHRs generated by SD Motorwerks and attached to the Complaint as Exhibits B, N, S, and Z, all contained clear and unambiguous notices that the VHR only contained the vehicle information that had been reported to Carfax. The VHRs stated "Not all accidents / issues are reported to CARFAX." They also stated on the very first page:

> This CARFAX Vehicle History Report *is based only on information supplied to CARFAX and available as of [date and time VHR was generated]. Other information* about this vehicle, *including problems*, *may not have been reported* to CARFAX. Use this report as one important tool, *along with a vehicle inspection* and test drive, to make a better decision about your next used car.

Compl., Exs. B, N, S, & Z (emphasis added). At the bottom of each VHR, it further stated:

> CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION. THEREFORE, NO RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR ERRORS OR OMISSIONS IN THIS REPORT. CARFAX FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

*Id.*

EuroMotorwerks first entered into a contractual relationship with Carfax on or about April 6, 2015, when Hagen signed an agreement on behalf of EuroMotorwerks to subscribe to Carfax's Advantage Program.  Advantage Agreement (attached hereto as Ex. 1); *see also* Decl. of M. Genovese at ¶ 4.  Under the Advantage Program, automobile dealers pay a flat monthly fee for unlimited access to VHRs.  On March 8, 2017, Euromotorwerks entered into an agreement with Carfax for Carfax's Enhanced Used Car Listings and Retargeting programs.  Retargeting Agreement (attached hereto as Ex. 2); *see also* Decl. of M. Genovese at ¶ 5. That agreement specified that leads should be sent directly to Hagen.  On October 10, 2018, Hagen signed another agreement with Carfax for Enhanced Used Car Listings.  UCL Agreement (attached hereto as Ex. 3); *see also* Decl. of M. Genovese at ¶ 6.  On or about November 26, 2019, Hagen contacted Carfax to inform Carfax that EuroMotorwerks was changing its name to SD Motorwerks, and Carfax updated its records accordingly.

When the SD Motorwerks Plaintiffs entered into agreements with Carfax, they agreed to be bound by the CARFAX Services Terms and Conditions.[2]  Terms & Conditions ("T&C") (attached hereto as Ex. 4); *see also* Decl. of M. Genovese at ¶ 7.  These Terms and Conditions contain several provisions applicable to this case.  First, Carfax limits the use of VHRs obtained by Advantage subscribers to "business purposes consisting of the acquisition or potential acquisition of used vehicles primarily for retail sale. . ."  T&C, ¶¶ 1, 2(vi).  Only customers "primarily in the business of retail sale of vehicles" are eligible for the Advantage Program.  *Id.* at ¶ 4(a).

Second, the SD Motorwerks Plaintiffs also expressly agreed to a provision providing for limited liability:

> Customer acknowledges that CARFAX is collecting data from

---

[2] All three agreements state that they are subject to the CARFAX Services Terms and Conditions, available online at http://www.carfaxfordealers.com/service-terms-and-conditions/.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

public records and other sources for use in the VHS and that this data may contain errors and omissions. CARFAX does not guarantee the correctness or completeness of the VHS or the CARFAX Reports and CARFAX will not be liable for any loss or injury caused, in whole or part, either by its procuring, compiling, collecting, interpreting or making available the VHS. Customer understands that not all information is available for all states and that CARFAX does not have access to some information that may be available to other parties. Customer also understands there may be a period of time between receipt of certain information by CARFAX and its inclusion of such information into the VHS. Customer acknowledges that the VHS does not provide any conclusions regarding the condition of any vehicle, and Customer assumes full responsibility with respect to its decisions and transactions using the VHS. Customer recognizes that CARFAX's sole obligation in the case of erroneous data, when notified in writing by Customer of such erroneous data, is correction of the record in question. CARFAX MAKES AND CUSTOMER RECEIVES NO WARRANTIES, EXPRESS OR IMPLIED, AND CARFAX EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Customer agrees that CARFAX's liability for damages, regardless of the form of action, shall not exceed the amount paid by Customer for the individual CARFAX Report from the VHS in question (or, in the case of Customers in the CARFAX Advantage Program, the monthly fee paid by the affected Location for the month in which the individual CARFAX Report in question was run).

*Id.* at ¶ 12.

Third, they also agreed to mandatory arbitration with respect to "any claim, controversy, dispute, action, cause of action, issue, or request for relief arising out of or relating in any way to CARFAX products or services, or from any advertising for any such products or services . . ." *Id.* at ¶ 52(a). Specifically, the SD Motorwerks Plaintiffs agreed that "any Dispute will be resolved by binding arbitration, rather than in court, except that Customer may assert claims in small claims court if the claims qualify and CARFAX may pursue a collection action against Customer in court. Customer and CARFAX agree to give up any right to litigate a Dispute in a court or before a jury or to participate in a class action or representative action with respect to a Dispute." *Id.* at ¶ 52(a)(i). The parties agreed that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and federal arbitration law would apply. *Id.*

Carfax has no prior relationship with Plaintiff Amadi. Amadi did not purchase a VHR

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

from Carfax or engage in any transaction with Carfax. *See* Decl. of M. Genovese at ¶ 3. Amadi's role in this lawsuit is limited to having purchased a vehicle from SD Motorwerks. Carfax likewise has no data relationship with Manheim Riverside, Manheim Nevada, Nextgear Capital, or their employees. Nor does Carfax serve as an agent or employee of these entities.

Plaintiffs allege that on or about June 7, 2019, SD Motorwerks purchased a 2009 Chevrolet Corvette Z06 with Vehicle Identification Number ("VIN") 1G1YZ26E295110239 ("Subject Vehicle No. 3"). Compl. ¶ 73. Plaintiffs allege that on June 6, 2019,[3] SD Motorwerks generated a Carfax Vehicle History Report ("VHR") for Subject Vehicle No. 3 that showed the Vehicle had been through auctions in several states. *Id.* ¶ 75. Plaintiffs allege that prior to purchase, SD Motorwerks obtained an Insight Condition Report from Manheim that failed to disclose damage to the vehicle. *Id.* ¶¶ 74, 78. Plaintiffs do not identify what, if any, information they believe should have been included in the Carfax VHR. Notably, the VHR does not state that the vehicle was never damaged. Instead, Exhibit Z is clear that no accidents or damage were <u>reported</u> to Carfax.

Plaintiffs next allege that on January 28, 2020, SD Motorwerks purchased a 2016 BMW M6 with VIN WBS6J9C53GD934586 ("Subject Vehicle No. 1"). Plaintiffs allege that on the same day, SD Motorwerks generated a VHR for the vehicle. Plaintiffs admit that the VHR (Ex. B) reported that the vehicle had sustained damage on at least three occasions. Compl. ¶ 51. However, Plaintiff misrepresents the VHR as stating these damage events were "minor." The VHR (Ex. B) does not use that term, nor any other description, to describe the severity of the damage. Plaintiffs allege that after purchasing the vehicle, they learned it had issues not disclosed by Manheim prior to sale. Compl. ¶¶ 35-50.

---

[3] The date on the VHR itself shows the VHR was generated on June 7, 2019, not June 6. *See* Compl., Ex. Z.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Plaintiffs make only vague and conclusory allegations against Carfax.  Plaintiffs allege that Exhibit B "failed to adequately report certain damages which Plaintiff relied upon . . ." *Id.* ¶ 59.  Plaintiffs also allege that a VHR generated nearly a year after the purchase of the vehicle, on January 13, 2021, was "revised . . . to disclose 'moderate' damages not previously reported." *Id.* However, nowhere in the Complaint do Plaintiffs specify what damages they believe were not adequately reported or what changes to the VHR they consider problematic.  As discussed above, Carfax updates its VHRs when it receives new information.  In addition, after the first VHR was run, Carfax added a "Damage Severity Scale" that, where possible, indicates whether a damage event resulted in minor, moderate, or severe damage.

Plaintiffs misconstrue Carfax's BuyBack Guarantee ("BBG") when they allege that Carfax "guarantees that the vehicle was not subject to 'Salvage, Junk, Rebuilt, Fire, Flood, Hail or Lemon" [sic] and that Subject Vehicle No. 1 "should have been salvaged." Compl. ¶ 51. As Exhibit B shows, Carfax's BBG guarantees only that certain types of title brands were not "reported by a state Department of Motor Vehicles." [4]  Branded titles vary by state, but states issue them to indicate that a vehicle is a lemon, has sustained significant damage and/or been declared a total loss by an insurance company.  Carfax plays no role in the issuance of title brands by state Departments of Motor Vehicles ("DMVs").  Carfax does not issue branded titles.  Carfax only *reports* branded titles when a state DMV reports to Carfax that the DMV has issued a branded title.  Plaintiffs do not allege that Subject Vehicle No. 1 had a branded title that Carfax failed to report.  Nor has any Plaintiff filed a BBG claim with Carfax for this vehicle.  Instead, Plaintiffs merely assert that, in their opinion, a state DMV should have declared Subject Vehicle No. 1 a salvage and branded the title.  As Carfax did not miss a branded title event, the BBG has

---

[4] The terms and conditions of Carfax's BBG may be found at
https://www.carfax.com/manifest/bbg/termsConditions.cfx.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   nothing to do with Plaintiff's allegations and cannot form the basis of a claim against Carfax.

2   Plaintiffs' final allegations relate to SD Motorwerk's February 28, 2020 purchase of a

3   2008 Bentley Continental GT Speed with VIN SCBCP73W38C057291 ("Subject Vehicle No.

4   2"). Plaintiff makes no specific allegations as to Carfax with respect to Subject Vehicle No. 2.

5   Rather, Plaintiffs allege that after purchasing the vehicle at auction, they discovered water and

6   other damage. However, they admit that they did not generate a VHR for the vehicle until nearly

7   seven months after purchase, on September 15, 2020 and therefore could not have relied upon it.

8

9                                    **STANDARD OF REVIEW**

10          Dismissal pursuant to Rule 12(b)(6) is warranted where a complaint lacks a cognizable

11   legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

12   Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails

13   to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530,

14   534 (9th Cir. 1984). The Court is not required to accept as true allegations that are merely

15   conclusory, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State*

16   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). And legal conclusions need not be taken as true

17   merely because they are couched as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

18   544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere

19   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

20   *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the Court may consider the

21   facts alleged in the complaint, documents attached to the complaint, and documents relied upon

22   but not attached to the complaint when authenticity is not contested. *Lee v. City of Los Angeles*,

23   250 F.3d 668, 688-89 (9th Cir. 2001). Leave to amend a complaint need not be granted if

24   amendment would be futile. *Garmon v. County of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

25          Federal Rule of Civil Procedure 9(b) requires that a claim for fraud or allegations that

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

sound in fraud be pled with particularity.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that allegations sounding in fraud include facts sufficient to set forth with particularity the time, place, and content of the false representations, and identify the parties to the representations.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (Rule 9(b) requires allegations setting forth the "how, when, where, to whom, and by what means" fraudulent representations were made).  Further, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65.

## ARGUMENT

A. **The Claims of the SD Motorwerks Plaintiffs Must Be Dismissed Pursuant to Rule 12(b)(6) Because They Are Subject to a Binding Arbitration Agreement**

The Supreme Court has held that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  An arbitration agreement governed by the FAA is presumed valid and enforceable.  9 U.S.C. § 2; *see also Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008).  Disputes must "be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).  Where a party attempts to enforce an arbitration agreement, a court should consider only two issues: (1) does a valid arbitration agreement exist between the parties and (2) does the dispute at issue fall within the scope of the agreement."  *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  A court may not consider the merits of the underlying case, but "may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party."  *Fraher v. Verizon Wireless Servs., LLC*, No.

21-cv-00763, 2021 U.S. Dist. LEXIS 115380, at *5 (S.D. Cal. June 21, 2021).  In the Ninth

Circuit, "where a complaint and the attached exhibits demonstrate that all of plaintiff's claims are

subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)." *Luna v. Kemira*

*Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) (citations omitted).

      The SD Motorwerks Plaintiffs, as owners or agents of SD Motorwerks (formerly

EuroMotorwerks), are all bound by the arbitration provision in their agreements with Carfax.  At

all relevant times, the Terms and Conditions provided:

> With respect to any claim, controversy, dispute, action, cause of
> action, issue, or request for relief arising out of or relating in any
> way to CARFAX products or services, or from any advertising for
> any such products or services, including any question regarding the
> existence, validity, or termination of the Agreement and/or these
> CARFAX Services Terms and Conditions, as well as any issue
> regarding the interpretation of this Section 52 (a "Dispute"),
> Customer and CARFAX agree as follows:
>
> Customer and CARFAX both agree that any Dispute will be
> resolved by binding arbitration, rather than in court, except that
> Customer may assert claims in small claims court if the claims
> qualify and CARFAX may pursue a collection action against
> Customer in court. Customer and CARFAX agree to give up any
> right to litigate a Dispute in a court or before a jury or to participate
> in a class action or representative action with respect to a Dispute.
> This also includes any claims that arose before Customer accepted
> any agreement or these CARFAX Services Terms and Conditions,
> regardless of whether prior versions of the CARFAX Services
> Terms and Conditions required arbitration. The Federal Arbitration
> Act (9 U.S.C. § 1 et seq.) and federal arbitration law apply to this
> Section 52(a).

T&C, ¶ 52(a)(i).  Accordingly, the SD Motorwerks Plaintiffs agreed to mandatory arbitration with

respect to all of the claims asserted in the Complaint.  While the Complaint makes the bald

assertion that "[a]ll agreements, if any, related to venue outside this District are null and void due

to their fraudulent nature," Compl. ¶ 24, the Complaint is silent on the issue of arbitration and

does not dispute that, if the arbitration agreement is valid, the claims made in the Complaint fall

under the arbitration agreement.  The SD Motorwerks Plaintiffs cannot seriously contend that

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

there is anything fraudulent about their Advantage or other agreements with Carfax, nor have they made any attempt to cancel their Advantage subscription.

Given the binding arbitration agreement, the Court should dismiss with prejudice the claims brought by the SD Motorwerks Plaintiffs as to Carfax.[5]

### B.        Plaintiffs' Claims Fail to Plead Fraud With Particularity

Rule 9(b) requires that allegations sounding in fraud include facts sufficient to set forth with particularity the time, place, and content of the false representations, and identify the parties to the representations. *Swartz*, 476 F.3d at 764.  Further, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65.

Here, Plaintiffs' claims for violations of the CLRA, § 17200, wire fraud, and RICO all sound in fraud and therefore must be pled with particularity.  The Complaint, however, utterly disregards this requirement.  It engages in impermissible group pleading, lumping together all of the Defendants without "informing each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65.  With respect to Carfax, the Complaint is nearly devoid of specific allegations, instead relying on vague and conclusory allegations that Carfax knew the vehicles had been damaged and intentionally hid that.  This is pervasive in all counts of the Complaint, and is especially problematic insofar as Plaintiffs allege that Carfax participated in a "scheme" to defraud without alleging "how, when, where, to whom,

_____

[5] Alternatively, if the Court disagrees that the arbitration agreement is binding, the Court should transfer venue to the Eastern District of Virginia, Alexandria Division, as the Carfax Terms and Conditions to which the SD Motorwerks Plaintiffs expressly agreed also contain both a choice of law and a forum selection clause agreeing that the law of Virginia shall apply and that jurisdiction will be vested exclusively in the state courts of Fairfax County, Virginia or the Eastern District of Virginia, Alexandria Division.  T&C, ¶ 52(b), (c); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) (instructing courts to recognize forum selection clauses as "prima facie valid.").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

and by what means" Carfax so participated.  The Complaint does not even allege relationships between the various Defendants, instead merely asserting without any basis that they must have been colluding. Without specific allegations, Carfax cannot properly defend itself, and the Complaint should therefore be dismissed.

      **C.**    **Plaintiffs' First Cause of Action for Violation of CLRA § 1750 Fails Because Plaintiffs Are Not Consumers Under the CLRA, Had No Transaction with Carfax, Fail to Adequately Plead Reliance, the VHRs Show Carfax Did Not Engage in Unfair or Deceptive Practices**

      Plaintiffs' first cause of action is based on an alleged violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.*  The purpose of the CLRA is to protect consumers against unfair and deceptive business practices with specific regard to family and household goods and services.  Civil Code §§ 1760 and 1761.

      **1.**    **The SD Motorwerks Plaintiffs Are Not "Consumers" Who Purchased "Goods" or "Services" Under the CLRA**

      The CLRA defines a consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Civil Code § 1761(d).  It defines "goods" to mean, in relevant part, "tangible chattels bought or leased for use primarily for personal, family, or household purposes. . ."  *Id.* at § 1761(a).  And it similarly defines "services" to mean "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *Id.* at § 1761(b).

      While the Complaint asserts that Plaintiffs are all "consumers" under the CLRA, Compl. ¶ 83, "because they purchased their Class Vehicles [sic] primarily for personal, family, or household use" this allegation is directly contradicted by the rest of the Complaint and in direct contravention to SD Motorwerks agreements with Carfax.  SD Motorwerks is a business entity (not an individual) that buys and sells vehicles for "business purposes."  *See* T&C, ¶ 1.  To the extent the SD Motorwerks Plaintiffs purchased either VHRs or vehicles, it did not purchase them for "personal, family, or household use."  Instead, SD Motorwerks purchased the vehicles with the intent of reselling them.  In the case of Subject Vehicle No. 1, the Complaint admits that the vehicle was purchased in order to resell it to Plaintiff Amadi.  Compl., ¶ 37.  And there is no

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

allegation that the SD Motorwerks Plaintiffs purchased Subject Vehicle No. 2 or 3 for any purpose other than a commercial purpose.  Accordingly, the SD Motorwerks Plaintiffs are not "consumers" under the CLRA.  Because they fail to state a claim under the CLRA, the CLRA claim against Carfax must be dismissed as to the SD Motorwerks Plaintiffs.

### 2.   Plaintiff Amadi Had No Transaction with Carfax

Section 1770 lists the categories of prohibited conduct that are deemed unlawful under the CLRA, stating in pertinent part, "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction* intended to result or that results in the sale or lease of goods or services to any consumer are unlawful…"  Civil Code § 1770 (emphasis added).  Pursuant to the express language of the statute, there must be a transaction between plaintiff and defendant to establish liability.  Section 1761(e) defines transaction as "an *agreement between a consumer and another person*, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  Civil Code § 1761(e) (emphasis added.)

The only alleged transaction involving Plaintiff Amadi was with SD Motorwerks, the dealer from whom he purchased Subject Vehicle No. 1.  Amadi does not allege any contact with Carfax, much less *an agreement* with Carfax or any performance pursuant to an agreement.  He does not allege that he made a purchase from Carfax.  Amadi does not (nor could he) allege that Carfax was a party to the purchase agreement for the vehicle.  Nor does Amadi allege or explain how two parties who have never had any contact with each other could have made any sort of agreement *between* them.  Because there was no transaction between Amadi and Carfax, Amadi's CLRA cause of action fails as a matter of law and must be dismissed as to Carfax.

### 3.   Plaintiffs Fail to Adequately Plead Reliance

In order to properly plead a CLRA cause of action, Plaintiffs must adequately allege reliance on the allegedly unfair methods of competition or unfair or deceptive practices.  Civil Code § 1780.  The SD Motorwerks Plaintiffs, however, only allege reliance on a Carfax VHR with respect Subject Vehicle No. 1.  Compl. ¶¶ 27, 33, 59.  They do not adequately allege reliance on a Carfax VHR with respect to Subject Vehicle No. 2 or Subject Vehicle No. 3 nor identify

anything in those VHRs upon which they relied.  Indeed, they could not allege reliance with respect to Subject Vehicle No. 2, as they admit they did not even generate a VHR until some seven months after they purchased the Vehicle.  Compl. ¶ 70.  Accordingly, Plaintiffs have not pled reliance with respect to Subject Vehicle No. 2 or Subject Vehicle No. 3.

Moreover, the SD Motorwerks Plaintiffs' allegations of reliance, to the extent they exist, are belied by the express disclaimers on each VHR, as well as their prior agreements with Carfax, the Terms and Conditions of which expressly disclaim liability, stating that the SD Motorwerks Plaintiffs "acknowledge that CARFAX is collecting data from public records and other sources . . . and that this data may contain errors or omissions.  CARFAX does not guarantee the correctness or completeness of [its database] or the CARFAX [VHRs] and CARFAX will not be liable for any loss or injury. . ."  T&C, ¶ 12.  Further, the SD Motorwerks Plaintiffs "acknowledge[d] that [Carfax] does not provide any conclusions regarding the condition of any vehicle" and that the Plaintiffs assumed full responsibility "with respect to its decisions and transactions" using Carfax data.  *Id.*  Given their express agreement with these terms, of which they cannot now feign ignorance, they cannot allege reliance on the VHRs.

Plaintiff Amadi does not allege reliance on a Carfax VHR anywhere in the Complaint. Accordingly, his CLRA claim against Carfax must also be dismissed.

4. **The VHRs Show That Carfax Did Not Engage in Unfair Or Deceptive Practices**

The Complaint alleges that Defendants violated § 1770(a)(5) and (7) by "failing to disclose and concealing the extent of the structural damages and other safety defects and misrepresenting the true standards, quality and grade as they were better that [sic] they actually were."  Compl. ¶ 84.  These allegations are made only with respect to Subject Vehicle No. 1 and Subject Vehicle No. 3 given that Plaintiffs did not generate a VHR for Subject Vehicle No. 2 until seven months after they purchased the vehicle.  Compl. ¶ 70.

In relevant part, § 1770(a)(5) prohibits a person, in a transaction intended to result or that results in the sale or lease of goods or services to a consumer, from "representing that goods or

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . ." Section 1770(a)(7) similarly prohibits a person in such a transaction from "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

The VHRs for Subject Vehicle No. 1 and Subject Vehicle No. 3, attached to the Complaint as Exhibits B, N, and Z, show that Carfax did not engage in unfair or deceptive practices under either § 1770(a)(5) or (7). With respect to Subject Vehicle No. 1, the VHR (Ex. B) reported that the vehicle had been damaged on at least three prior occasions in multiple locations across the vehicle. And with respect to both vehicles, the VHRs (Exs. B, N, & Z) put Plaintiffs on notice that (a) not all accidents / issues are reported to Carfax, (b) there could be other information about the vehicle, including problems, that were not reported to Carfax, (c) that Plaintiffs should have had the vehicle inspected and test driven it prior to purchase, and (d) that Carfax depends on its sources for the accuracy and reliability of its information and there could therefore be errors or omissions in the report for which Carfax does not assume responsibility.

Accordingly, on the face of the VHRs themselves, it is apparent that Carfax did not engage in unfair or deceptive practices. At no time did Carfax represent that the vehicles or VHRs themselves had "characteristics" they do not have, nor did Carfax represent that the vehicles or VHRs were of a particular standard, quality or grade. To the contrary, Carfax was transparent and made clear the limitations of each VHR. Plaintiffs cannot claim to have been misled by the VHRs.

Moreover, as discussed above, the SD Motorwerks Plaintiffs, as part of their contractual agreements with Carfax, expressly acknowledged that Carfax data may contain errors or omissions, that Carfax does not guarantee the correctness or completeness of a VHR, that Carfax does not provide any conclusions regarding the condition of a vehicle, and that the SD Motorwerks Plaintiffs were fully responsible for their own decisions and transactions using Carfax VHRs. T&C, ¶ 12. In light of these clear, agreed upon contractual provisions, Plaintiffs cannot plausibly allege that Carfax engaged in unfair or deceptive practices.

Accordingly, because there was nothing unfair or deceptive about the VHRs, Plaintiffs'

CLRA claims against Carfax must be dismissed for failure to state a claim.

**D.      Plaintiffs' Second Cause of Action Under the Song-Beverly Consumer Warranty Act Fails Because The Vehicles Are Not "Consumer Goods" And Carfax Is Not a Manufacturer, Distributor, Or Seller of the Vehicles**

The Song-Beverly Consumer Warranty Act, Civil Code § 1790-1795.8, protects consumers who buy defective consumer goods, including vehicles.  The statute defines "consumer goods" as "any new product or part of a product that is used, bought, or leased primarily for personal, family, or household purposes. . ."  Civil Code § 1791(a).  A "buyer" is defined as "any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail." *Id.* at § 1791(b).  A "manufacturer" is defined as "any individual, partnership, corporation . . . that manufactures, assembles, or produces consumer goods," *Id.* at § 1791(j), while a distributor is defined as "any individual, partnership, corporation . . . that stands between the manufacturer and the retail seller . . . for sale of consumer goods." *Id.* at § 1791(e).  Similarly, a "retail seller," "seller," or "retailer" is defined as "any individual, partnership, corporation . . . that engages in the business of selling or leasing consumer goods to retail buyers." *Id.* at § 1791(l).

Plaintiffs allege, falsely, that all of the Defendants were "at all relevant times the manufacturer, distributor, warrantor and/or seller and/or agent" for the three vehicles at issue in the case.  Compl. ¶ 97.  Plaintiffs further allege a wide range of "implied warranties" under §§ 1791.1 and 1792 regarding the three vehicles.  Compl. ¶ 99.

Plaintiffs fail to state a claim against Carfax under the Act.  First, for the reasons discussed above with respect to the CLRA, the vehicles were not "used, bought, or leased primarily for personal, family, or household purposes," by the SD Motorwerks Plaintiffs and therefore do not qualify as "consumer goods."  Civil Code § 1791(a).  Second, Carfax is not engaged in the business of manufacturing, distributing or selling vehicles, and did not manufacture, distribute, or sell the vehicles at issue here.  *See id.* at § 1791(b), (j), (l), & (n).

For these reasons, the Act does not apply to Carfax, and Plaintiffs therefore fail to state a claim with respect to Carfax.  Accordingly, Plaintiffs' Count 2 must be dismissed.

**E.**  **Plaintiffs' Third Cause of Action for Breach of Implied Warranty Under the Magnuson-Moss Warranty Act Fails Because The Vehicles Are Not "Consumer Products," the SD Motorwerks Plaintiffs Are Not "Consumers," And Carfax Is Not a Supplier or Warrantor of the Vehicles**

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, governs consumer product warranties.  It requires manufacturers and sellers of consumer products to provide consumers with detailed information about warranty coverage.  The Act only applies to "consumer products," defined as "tangible personal property . . . used for personal, family, or household purposes. . ." 15 U.S.C. § 2301(1).  It defines a "consumer" as a "buyer (other than for purposes of resale) of any consumer product . . ." *Id.* at § 2301(3).  Finally, it defines a "supplier" as "any person engaged in the business of making a consumer product directly or indirectly available to consumers, *Id.* at § 2301(4), and a "warrantor" as "any supplier . . . who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." *Id.* at § 2301(5).

Plaintiffs allege that the vehicles in this case were "consumer products" under the Act. However, as discussed above, the vehicles were not purchased for "personal, family, or household purposes."  Similarly, the SD Motorwerks Plaintiffs are not consumers under the Act, as the vehicles were purchased for "purposes of resale."  *Id.* at § 2301(3).

Plaintiffs also allege that all of the Defendants are suppliers and warrantors under the Act. Compl. ¶ 107.  This is clearly not the case.  Plaintiffs do not allege (nor could they) that Carfax sold the vehicles, or that it made the vehicles available to consumers.  Nor do they allege that Carfax offered a written warranty on the vehicles.  And for the reasons discussed above, Carfax is not obligated under an implied warranty for the vehicles.

For these reasons, the Act does not apply to Carfax, and Plaintiffs therefore fail to state a claim with respect to Carfax.  Accordingly, Plaintiffs' Count 3 must be dismissed.

**F.**  **Plaintiffs' Fourth Cause of Action for Quasi-Contract/Restitution Fails Because Carfax Was Not Unjustly Enriched**

Under California law, quasi-contract is a "claim for relief that seeks restitution based on a defendant's unjust enrichment. *Jordan v. Wonderful Citrus Packing Ltd. Liab. Co.*, No. 1:18-CV-00401-AWI-SAB, 2018 U.S. Dist. LEXIS 154094, at *9 (E.D. Cal. Sep. 10, 2018) (citation omitted).  Unjust enrichment "occurs when a person obtains a benefit that he or she may not

justly retain because the benefit was received at another's expense." *Id.* at *8 (citation omitted).

Plaintiffs allege that Defendants "have profited through the sale and lease of SUBJECT VEHICLE #1, #2, and #3" because "money from the vehicle sale flows directly back to Defendants and their third-party beneficiaries." Compl. ¶ 118. This is false. Carfax provides VHRs. It played no role in the sale of the vehicles, and did not profit or benefit in any manner from the sales. In fact, Carfax did not even profit from the "sale" of the VHRs in this case, as SD Motorwerks is a subscriber of Carfax's Advantage plan, which allows it to run unlimited VHRs for a monthly flat fee. Thus, SD Motorwerks did not pay anything extra to run the VHRs discussed in the Complaint – it would have paid the same monthly fee to Carfax whether or not it had generated the VHRs. Accordingly, Carfax has not been "unjustly enriched" in any manner. Nor do Plaintiffs allege unjust enrichment by Carfax, other than in conclusory fashion by lumping Carfax in with the other Defendants.

Because Plaintiffs have failed to state a claim against Carfax for quasi-contract/restitution, the Count 4 must be dismissed.

### G.   Plaintiffs' Fifth Cause of Action for Violation of Section 17200 Fails Because Plaintiffs Cannot Adequately Allege Carfax Engaged in Unfair, Unlawful, or Fraudulent Business Practices

To state a claim under California's Business and Professions Code §17200, Plaintiff must satisfactorily allege that Carfax engaged in a business practice that was "unfair," "unlawful," or "fraudulent." With respect to the "unlawful" prong, a plaintiff must plead a Constitutional, statutory, or regulatory violation. *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 225, (2012) ("An unlawful business practice under the UCL is . . . anything that can properly be called a business practice and that at the same time is forbidden by law."). A fraudulent practice is one in which members of the public are likely to be deceived. *Id.* at 225. Whether a practice is deceptive is based on the likely effect such a practice would have on a reasonable consumer. *Id.* at 226. The UCL does not define "unfair" but it has been interpreted to occur when a practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 595 (2009).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Plaintiffs allege that the "acts and practices of Defendants are likely to deceive, constituting a fraudulent business act or practice." *Id.* at ¶ 126. Plaintiffs also allege, in conclusory fashion, that Defendants' "policies and practices constitute unlawful business acts or practices. Compl. ¶ 130. Plaintiffs further allege that the "acts and practices . . . are unfair and violated [§17200] because they constitute violations of all the statutes previously listed above." *Id.* at 131. With respect to Carfax, the Complaint specifically alleges only that "CARFAX provided a report which concealed the extent of known damages to subject vehicle #1, #2, and #3." *Id.* Plaintiffs do not allege what "policies and practices" of Carfax are unlawful.

Plaintiffs fail to allege an "unlawful" practice for the reasons discussed elsewhere in this memorandum. Plaintiffs do not adequately allege (nor could they) violations by Carfax of the CLRA, Song-Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, 18 U.S.C. § 1343, RICO, or any other law. Nor do Plaintiffs allege a fraudulent business practice by Carfax – Carfax's VHRs, including all those attached as exhibits to the Complaint, are clear that the VHRs may not be a complete source of information. A reasonable consumer would understand that the VHR might not contain all of the relevant information for the vehicle. Moreover, the SD Motorwerks Plaintiffs cannot claim to have been deceived or misled by the VHRs, given their prior acknowledgements that Carfax data may contain errors or omissions, that Carfax does not guarantee the correctness or completeness of a VHR, that Carfax does not provide any conclusions regarding the condition of a vehicle, and that the SD Motorwerks Plaintiffs were responsible for their own decisions/transactions using Carfax VHRs. T&C, ¶ 12.

Finally, Plaintiffs fail to allege an "unfair" business practice by Carfax, as they do not allege with any specificity a Carfax business practice that "offends an established public policy" or that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Davis*, 79 Cal. App. 4th at 595. They do not allege, for example, how Carfax could be engaging in unfair business practices when every Carfax VHR is upfront about the limitations of the VHR.

For these reasons, Plaintiffs fail to state a claim under § 17200 and Count 5 should therefore be dismissed as to Carfax.

1

2

**H.**    **Plaintiffs' Sixth and Seventh Causes of Action for Wire Fraud and RICO Violations Fail Because There Is No Private Right of Action for Wire Fraud and Plaintiffs Fail to State A Claim Under RICO**

3

Wire fraud pursuant to 18 U.S.C. § 1343 has three elements: (1) a scheme to defraud, (2)

4

the use of wire, radio, or the television in furtherance of the scheme, and (3) intent to

5

defraud. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Wire fraud requires "the

6

specific intent to utilize deception to deprive the victim of money or property, i.e., to cheat the

7

victim." *United States v. Miller*, 953 F.3d 1095, 1098-99 (9th Cir. 2020). Importantly, 18 U.S.C.

8

§ 1343 is a criminal statute that does not provide for a private right of action, and therefore the

9

Court lacks subject matter jurisdiction over this non-existent cause of action. *See, e.g., Reilly v.*

10

*Levin*, No. 1:15-cv-00429-EJL-CWD, 2015 U.S. Dist. LEXIS 178165, at *26 (D. Idaho Dec. 18,

11

2015) ("18 U.S.C. § 1343 . . . does not allow for private enforcement or civil damages.").

12

Accordingly, Count 6 must be dismissed.

13

To state a claim under RICO § 1962(c), a plaintiff must allege (1) conduct (2) of an

14

enterprise (3) through a pattern (4) of racketeering activity. *Sanford v. MemberWorks, Inc.*, 625

15

F.3d 550, 557 (9th Cir. 2010) (citation omitted). To establish racketeering activity, plaintiff must

16

show that the defendant has committed one of the statute's enumerated predicate acts, including

17

wire fraud. Civil RICO plaintiffs must prove both that they have Article III standing and that

18

they meet RICO's requirements for a private right of action, which requires plaintiff to have been

19

"injured in his business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c).

20

With respect to wire fraud and RICO, Plaintiffs allege that Defendants "engaged in a

21

scheme . . . for the purpose of committing fraud," that Defendants knew they were engaging in

22

the scheme, that each Defendant "profited from their participation in the scheme," and that

23

Defendants used interstate wire or internet communications to further the scheme. Compl. ¶¶

24

134-137. The only allegation specific to Carfax with respect to wire fraud is that Carfax

25

"provided a report which concealed the extent of known damages to Subject Vehicles #1, #2, and

26

#3." *Id.* at ¶ 141(e). This allegation changes with respect to RICO: "CARFAX a "culpable

27

wrongdoer" provided a report which concealed the extent of known damages to the vehicle

28

(Exhibit B)." *Id.* at ¶ 156(f). Accordingly, it appears that Plaintiff's RICO claim against Carfax

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

relates only to Subject Vehicle No. 1. Plaintiffs do not allege any specific wrongdoing by Carfax. Instead, the Complaint makes only vague and conclusory allegations that all of the "culpable wrongdoers" "intended to fleece their customers by selling defective vehicles at inflated prices." Compl. ¶ 157.

Plaintiffs' RICO claim as to Carfax fails to state a claim for multiple reasons.[6] First, Plaintiffs fail to properly allege the predicate act of wire fraud. While Plaintiffs make vague and conclusory allegations that match the elements of wire fraud, they do not provide any specificity in their allegations. For example, Plaintiffs allege a scheme to defraud, but do not allege anything more about this so-called scheme with respect to Carfax. They do not allege how or why Carfax would participate in such a scheme, how the scheme worked, the role of Carfax in the scheme, how Carfax used interstate wires in furtherance of the scheme, how Carfax benefitted from the scheme, or how or why Carfax would act with intent to defraud one of its customers with respect to a vehicle sale transaction in which Carfax played no part and had no financial interest. Plaintiffs do not identify a single Carfax employee involved in the alleged scheme. Similarly, Plaintiffs do not allege (nor could they) how Carfax acted to cheat Plaintiffs by depriving them of money or property given that (a) Carfax did not sell the vehicles (b) SD Motorwerks obtained the VHRs using their monthly flat fee account and therefore Carfax did not monetarily gain from either the provision of the VHRs or sale of the vehicles, (c) the VHRs all contained clear language explaining the limitations of the VHRs, (d) the VHR for Subject Vehicle No. 1 disclosed prior damage, and (e) the SD Motorwerks Plaintiffs had previously acknowledged the limitations of VHRs in their contractual agreements with Carfax. *See Miller*, 953 F.3d at 1098-99.

Second, and for the same reasons discussed above, Plaintiffs do not allege with the required particularly under Rule 9(b) any aspects of the alleged scheme as to Carfax – the Complaint does not allege the dates, times, places or specific individuals involved. It does not

---

[6] In addition, Plaintiffs lack Article III standing, as they have not alleged that Carfax was the proximate, or direct, cause of any injury. *Titan*, 2012 U.S. Dist. LEXIS 171484, at *22 (citation omitted). However, the Court need not reach this issue in order to dismiss the RICO claim.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

allege with any specificity how or why Carfax would engage in a scheme "to fleece" customers "by selling defective vehicles at inflated prices."

Third, Plaintiffs do not allege a "pattern" of activity by Carfax. The Complaint references only one vehicle in relation to Plaintiffs' RICO claim – Subject Vehicle No. 1. Even if it were Plaintiffs intent to include the other two vehicles in this cause of action, they cannot allege that Carfax misled them in any way regarding Subject Vehicle No. 2, for which Plaintiffs did not even generate a VHR until some seven months after they purchased the vehicle. Nor do they identify any specific information in the VHR for Subject Vehicle No. 3 that they believe to be false.

For these reasons, the Court should dismiss Plaintiffs' Count 6 and Count 7 for lack of subject matter jurisdiction, failure to state a claim, and failure to plead with particularity.

## CONCLUSION

For all the foregoing reasons, Carfax's Motion to Dismiss should be granted in its entirety and Plaintiffs should not be granted leave to amend, as they cannot cure the defects in their pleadings.

Dated: September 24, 2021         TROUTMAN PEPPER HAMILTON
                                  SANDERS LLP


                          By: /s/ Monique M. Fuentes
                              Monique M. Fuentes
                              Ross Smith
                              Attorneys for Defendant
                              CARFAX, INC.