TROUTMAN PEPPER HAMILTON SANDERS LLP
Monique M. Fuentes, Bar No. 205501
monique.fuentes@troutman.com
Ross Smith, Bar No. 204018
ross.smith@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
CARFAX, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO, LLC, a Montana LLC dba SAN DIEGO MOTORWERKS; CHIDIEBERE AMADI, an individual, RICHARD JOHN HAGEN dba EUROMOTORWERKS; RICHARD JOHN HAGEN, an individual; and CARRIE SORRENTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MANHEIM RIVERSIDE aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC; MANHEIM NEVADA aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC CARFAX, INC.; NEXTGEAR CAPITAL; DANNY BRAUN, an individual; CESAR ESPINOSA, an individual; STEVE HARMON, an individual; JERRY SIDERMAN, an individual; BMW OF NORTH AMERICA, LLC; CENTER AUTOMOTIVE, INC dba CENTER BMW; and DOES 1 through 200,<br><br>Defendants. | Case No. 21-cv-1205-H-JLB<br><br>**DEFENDANT CARFAX, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Hon. Marilyn Huff<br><br>Date: December 13, 2021<br>Ctrm: TBD<br>Time: 10:30 a.m. |

Defendant Carfax, Inc. ("Carfax") files this reply brief in support of its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. 28; the "Motion").

## INTRODUCTION

The agreements between Carfax and the SD Motorwerks Plaintiffs are valid and enforceable under California law.  Despite their assertions to the contrary, EuroMotorwerks is a named Plaintiff in this action.  And Plaintiffs fail to show that the agreements lacked mutual assent, were adhesive, or were unconscionable.  Similarly, Plaintiffs fail to show substantial injustice.  And they do not make any argument against the applicable forum selection clause.

Additionally, Plaintiffs' Opposition makes clear that the court must dismiss Plaintiffs' first, second, third, and sixth causes of action.  With respect to Plaintiffs' remaining causes of action, Plaintiffs do not meaningfully or effectively dispute the merits of Carfax's legal arguments.  Faced with the inability to refute Carfax's arguments, Plaintiffs resort to arguing that Carfax is relying on extrinsic evidence, including the agreements between the SD Motorwerks Plaintiffs and Carfax.  Yet the Complaint expressly incorporated by reference the agreements with Carfax, allowing the Court to consider them as part of Carfax's Motion.  Compl. ¶ 24 ("All agreements, if any, related to venue outside this District are null and void due to their fraudulent nature.").  The Court is similarly entitled to consider the documents attached to Carfax's Motion in connection with its arguments regarding arbitration and venue.

## ARGUMENT

**A. The Mandatory Arbitration, Choice of Law, and Forum Selection Clauses in the Agreements Between SD Motorwerks and Carfax Are Valid and Enforceable**

The SD Motorwerks Plaintiffs previously agreed to mandatory arbitration, choice of law, and forum selection provisions with respect to all of the claims asserted in the Complaint.  They now try to evade those agreements by (1) claiming that SD Motorwerks was not a signatory, and therefore is not bound and (2) claiming that the contract was one of adhesion and therefore should not be enforced.  Neither of these arguments is credible.

**1. EuroMotorwerks Is A Named Plaintiff**

Plaintiffs' claim that EuroMotorwerks is not a party to the case and therefore any

1

information about it is "irrelevant" is belied by the Complaint itself: i) the caption lists one of the Plaintiffs as "Richard John Hagen dba EuroMotorwerks"; and ii) ("Plaintiff RICHARD JOHN HAGEN dba EUROMOTORWERKS . . . is a business that is now inactive."). Compl. ¶ 3. Moreover, the Complaint alleges that EuroMotorwerks was the entity that purchased Subject Vehicle No. 3. Compl. ¶ 79.

Plaintiffs do not dispute that EuroMotorwerks was the predecessor entity to SD Motorwerks (the dba of Dipito, LLC). As explained in Carfax's Motion, EuroMotorwerks notified Carfax in 2019 that it was changing its name to SD Motorwerks. SD Motorwerks assumed the EuroMotorwerks contract, agreeing to be bound by it, paying the required monthly fee and assuming the benefits of the contract, namely, accessing a Carfax Advantage account and generating a large number of Carfax VHRs using that account. Indeed, all of the VHRs at issue in the Complaint were generated using that account, which SD Motorwerks has made no effort to cancel. SD Motorwerks cannot now claim that it cannot be bound by the contract it assumed, paid for, and from which it derived significant benefit.

**2. The Carfax Agreements Are Valid and Enforceable**

Plaintiffs make vague arguments that the still-in-effect agreement between the SD Motorwerks Plaintiffs and Carfax lacked mutual assent, is one of adhesion and is unconscionable. These arguments are unavailing. The Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As part of its evaluation, a court may consider general contract defenses such as unconscionability, but "even generally applicable doctrines like . . . unconscionability cannot be applied in a way that disfavors and undermines arbitration." *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 719 (N.D. Cal. 2012) (citation omitted).

In California, the mutual assent of contracting parties is "to be ascertained solely from the contract that is reduced to writing, if possible." Cal. Civ. Code § 1639; *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) (citation omitted). The contract language controls if it is clear and explicit. Cal. Civ. Code § 1638; *Martinez*, 51 Cal. App. 5th at 967 (finding that the

2
21-CV-1205-H-JLB

language of the agreement established the parties' mutual assent to submit disputes to arbitration)

That a contractual clause is located in a separate document does not negate mutual assent or a valid contract. In *Wolschlager v. Fidelity National Title Ins. Co.*, 111 Cal. App. 4th 784 (2003), the plaintiff purchased a title insurance policy "on the basis of a preliminary report he received and approved." *Id.* at 787. The preliminary report did not itself state that the policy had an arbitration clause, but the actual policy did contain such a provision. *Id.* The court upheld the arbitration clause, holding that the preliminary report sufficiently incorporated the arbitration clause by reference. The court reasoned that "'[i]t is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document.'" *Id.* at 790. For another document to be sufficiently incorporated, the reference(s) to the other document must be "clear and unequivocal," the reference "must be called to the attention of the other party and he must consent thereto," and the terms of the incorporated document "must be known or easily available to the contracting parties." *Id.* (citation omitted). The court found that the preliminary report specifically identified the document incorporated as the policy and tells the recipient where to find the policy. Per the court, "[t]his incorporation was both clear and unequivocal." *Id.* "There is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid. All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." *Id.* Further, even if the plaintiff "did not know about the arbitration clause, the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it. Nothing further was needed to bind the plaintiff." *Id.*

Here, Plaintiffs admit that the agreements with Carfax all contain a section stating "I understand that this Application is subject to the CARFAX Services Terms and Conditions (available online at http://carfaxfordealers.com/service-terms-and-conditions/ or by calling 855-845-5733). I represent that I am duly authorized to execute this Application on behalf of Customer and bind Customer to the terms of this Application and the CARFAX Services Terms and Conditions." Opp. at ¶ 22. Given this clear, explicit language, Plaintiffs resort to arguing

that this single section of the agreement "does not contain a Mandatory Arbitration Clause" and "[t]here is no verification that ensures that any customer has read, understands and mutually assents to the arbitration clause." *Id.*

This is not the law in California. As the *Wolschlager* court explained, an agreement does not need to expressly state that an incorporated document contains an arbitration clause. *Wolschlager*, 111 Cal. App. 4th at 791. "All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." *Id.* By Plaintiffs' own admission, these elements were met here – the agreement clearly and unequivocally incorporated the Terms and Conditions, which were easily accessible online or by phone. *See* Opp. at ¶ 22. This was the only "verification" required - the signature section of the agreement itself tells the signatory that by signing, they are verifying they are binding the customer to the agreement, including the Terms and Conditions.

Plaintiffs also argue that the signatories to the agreements, including Richard Hagan, are "not legally astute" and did not read or remember the mandatory arbitration or choice-of-law clauses, which should therefore not be enforced. This argument is without merit – the agreement makes clear that the Terms and Conditions are incorporated into the agreement and that signing binds the dealership (*i.e.*, the signature is the verification that the signatory has read and agrees to the terms). The fact that a party to a contract is not "legally astute," even if this were true, does not absolve him or her from reviewing the contract, nor is it grounds to deem a contract unenforceable. The SD Motorwerks Plaintiffs entered into three contracts with the same language. They had multiple opportunities to review the agreements, consult an attorney if they felt it necessary, and/or ask questions if they needed to. Further, it is a cardinal rule of contract law that "a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement." *Desert Outdoor Adver. v. Superior Court*, 196 Cal. App. 4th 866, 872-73 (2011) (citations omitted). Similarly, courts routinely hold that a failure to recall accepting an agreement's terms is an insufficient basis to invalidate an agreement. *See Wolf v. Tsg Wealth Mgmt.*, No. 21-00100, 2021 U.S. Dist. LEXIS 163084, at *7 (C.D. Cal. Apr. 8, 2021).

For the reasons discussed above, Plaintiffs have not met their burden of showing a lack of

mutual assent, and the contractual agreements must be upheld.

### 3. **Plaintiffs Fail to Show Adhesion or Unconscionability**

Carfax disagrees that the agreements at issue were adhesive. But even assuming, *arguendo*, that they were, contracts of adhesion are "indispensable facts of modern life that are generally enforced." *Baltazar v. Forever 21, Inc.*, 62 Cal. 1237, 1244 (2016). Where a party seeks to invalidate an agreement on the basis that it is unconscionable, they bear the burden of establishing that the agreement is unconscionable. *Jialu Wu v. iTalk Glob. Communs., Inc.*, No. CV 20-7150, 2020 U.S. Dist. LEXIS 250121, at *19 (C.D. Cal. Oct. 21, 2020). A "contract is not unconscionable merely because the transaction involved a standardized legal form and the complaining party has less bargaining strength." *Connick v. Teachers Ins. & Annuity Ass'n of Am.*, 784 F.2d 1018, 1021 (9th Cir. 1986).

To show unconscionability, a plaintiff must show that the agreement was both procedurally and substantively unconscionable. *Appel v. Concierge Auctions, LLC*, No. 17-cv-02263, 2018 U.S. Dist. LEXIS 63046, at *19 (S.D. Cal. Apr. 13, 2018). Procedural unconscionability concerns the "manner in which the contract was negotiated and the respective circumstances at that time, focusing on the level of oppression and surprise involved in the agreement." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 955 (N.D. Cal. 2015). Oppression "addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.' *Id.* "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* Where a contract is adhesive, this may be sufficient to establish some degree of procedural unconscionability, but this does not mean the contract cannot be enforced, but rather that a court will consider the "substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.*

Substantive unconscionability has been defined as whether the terms of the agreement are so one-sided as to "shock the conscience." *Id.* at 959 (citations omitted). Not all one-sided contract provisions are unconscionabale. *Id.* Unconscionability "requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain.'" *Id.* (citation omitted). An arbitration

provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Id.* (citations omitted).

Plaintiffs make no showing of adhesion or procedural or substantive unconscionability. They do not effectively allege an imbalance of power between the Plaintiffs and Carfax. Indeed, Plaintiff SD Motorwerks is not an inexperienced or unsaavy consumer – it is a business entity with extensive experience in large financial transactions, vehicle purchases, and contracting. *See Appel*, 2018 U.S. Dist. LEXIS at *22-23 ("Plaintiffs fail to demonstrate they were the weaker party considering their level of business sophistication and past experiences with similar . . . transactions). Plaintiffs do not assert that they attempted to negotiate and were refused. They do not allege they were given a "take it or leave it" ultimatum, nor could they. Similarly, they do not explain how the agreement oppressed them, or what about it surprised them. Again, the Terms and Conditions were specifically referenced just above the signature line – there can be no dispute that the signatories understood they were agreeing to the Terms and Conditions (whether or not they read them). *See Jialu Wu*, 2020 U.S. Dist. LEXIS 250121 at *20 ("[t]hese contentions do not support procedural unconscionability because Plaintiff easily could have, and would have, known of the arbitration provision if [Plaintiff] had read the Agreement . . ."). And Plaintiffs point to nothing in the agreement or the arbitration, choice of law, or forum selection provisions themselves that is so one-sided as to "shock the conscience." *Loewen*, 129 F. Supp. 3d at 959.

For the reasons discussed above, Plaintiffs have not met their burden of showing unconscionability, and the contractual agreements must be upheld.

### 4. **Plaintiffs Fail to Show Substantial Injustice**

California strongly favors enforcement of choice-of-law provisions and "has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 917 (2001) (citations omitted). Under California law, a party claiming adhesion can avoid enforcement of a choice-of-law provision where enforcement would result in substantial injustice. *Id.* The Ninth Circuit held a company's location in another state is a sufficient nexus to a

contract to enforce a choice-of-law provision. *Tompkins v. 23andMe, Inc.*, 834 F.3d 1019, 1032 (9th Cir. 2016) (company's principal place of business was "sufficient nexus to the contract.").

Here, Plaintiffs argue only that they would suffer "substantial injustice by being forced to Arbitrate or transfer venue to Virginia . . . a state that is not substantially connected to any of the allegations of the complaint." Opp. at ¶ 26. This conclusory statement is insufficient to show substantial injustice. Choice-of-law provisions and forum selection clauses are generally upheld, even where they require a party to litigate in another state. And it is untrue that Virginia has no connection to the Complaint – Carfax is located in Virginia. Plaintiffs allege that Carfax participated in a scheme to defraud them from the state of Virginia.

For the reasons discussed above, Plaintiffs have not met their burden of showing substantial injustice, and the choice-of-law provision must therefore be upheld.

### 5. **Plaintiffs Fail to Contest The Contracts' Forum Selection Clause**

Plaintiffs, while disputing the arbitration and choice-of-law provisions, do not mention or dispute the validity of the forum selection clause. "A forum selection clause within an adhesion contract will be enforced as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract." *Tompkins*, 834 F.3d at 1030 (citations omitted). For all of the reasons discussed above, Plaintiffs were given ample notice of the Terms and Conditions and the fact that they were incorporated into the agreement. Plaintiffs point to nothing about the clause suggesting it did not provide adequate notice that Plaintiffs were agreeing to jurisdiction in Virginia. Accordingly, the forum selection clause must be upheld.

### B. **The Plaintiffs Have Not Plead A Claim Against Carfax**

Plaintiffs' Opposition makes clear that the court must dismiss Plaintiffs' first, second, third, and sixth causes of action. Plaintiffs concede that "[o]nly individual consumers can sue under the CLRA." Opp. at ¶ 30. Accordingly, Plaintiffs concede that the SD Motorwerks Plaintiffs cannot bring a CLRA claim against Carfax, and the first cause of action under the CLRA claim must therefore be dismissed as to the SD Motorwerks Plaintiffs. Similarly, Plaintiffs concede that Carfax is not liable under the Song-Beverly Act or the Magnuson-Moss

Warranty Act. Opp. at ¶¶ 31, 41.[1]  Accordingly, Plaintiffs' second cause of action pursuant to the Song-Beverly Consumer Warranty Act and third cause of action pursuant to the Magnuson-Moss Warranty Act must be dismissed as to Carfax for all plaintiffs.  Finally, Plaintiffs do not dispute there is no private cause of action for "wire fraud," requiring dismissal of the sixth cause of action as to Carfax for all Plaintiffs.

With respect to Plaintiffs' three remaining causes of action (quasi-contract/restitution, Section 17200, and RICO) Plaintiffs do not meaningfully or effectively dispute the merits of any of Carfax's arguments with respect to any of the Plaintiffs.

Plaintiffs' Opposition argues that Plaintiff Amadi is a "business associate and third-party beneficiary" of the SD Motorwerks Plaintiffs, Opp. at ¶ 27, and cites to California Civil Code § 1559, which states that a contract "made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it."  However, the relevance of this argument is unclear.  Plaintiffs do not identify a contract with Carfax to which they believe Amadi to be a third-party beneficiary.  Moreover, if he is a third-party beneficiary of the contracts between SD Motorwerks and Carfax and is seeking to enforce them, then he should be bound by the arbitration, choice-of-law, and forum selection clauses for the reasons discussed above.

Lacking viable arguments against Carfax's Motion, Plaintiffs resort to arguing that Carfax is relying on extrinsic evidence, including the agreements between the SD Motorwerks Plaintiffs and Carfax.  Yet the Complaint expressly referenced the agreements with Carfax, allowing the Court to consider them as part of Carfax's Motion. Compl. ¶ 24 ("All agreements, if any, related to venue outside this District are null and void due to their fraudulent nature."); *see also Gulaid v. CH2M Hill, Inc.*, No. 15-cv-04824-JST, 2016 U.S. Dist. LEXIS 137227, at *6 (N.D. Cal. Oct. 3, 2016) (a court may consider extrinsic evidence not attached to the complaint if the document's

---

[1] While admitting that Carfax has no warranty liability, Plaintiffs suggest that the CARFAX BuyBack Guarantee imposes liability here.  However, there is no cause of action that invokes the enforcement of the BuyBack Guarantee, which is not a warranty and does not apply here.  The Terms and Conditions of the BuyBack Guarantee, which are publicly available at https://www.carfax.com/company/carfax-buyback-guarantee-terms-and-conditions, make clear it would not apply to this situation for multiple reasons, including the fact that Plaintiffs never submitted a claim under the Buyback Guarantee, which has now expired for Subject Vehicle No. 1, as it is only valid for a year.  Moreover, the Terms and Conditions of the BuyBack Guarantee contain provisions limiting Carfax's liability, vesting jurisdiction in Virginia, and designating choice-of-law as Virginia law.

authenticity is not contested and the plaintiff's complaint necessarily relies on it).

The Court is also entitled to consider the documents attached to Carfax's Motion in connection with its arguments regarding arbitration and venue. *Fraher v. Verizon Wireless Servs., LLC*, No. 21-cv-00763, 2021 U.S. Dist. LEXIS 115380, at *5 (S.D. Cal. June 21, 2021) (A court may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party when a party attempts to enforce an arbitration agreement).

While Plaintiffs claim that any alleged deficiencies can be cured by amending the Complaint, they fail to identify how they can cure the deficiencies, or even what deficiencies they claim to be able to cure. Moreover, given Carfax's arguments, it is not possible for Plaintiffs to cure the defects in the Complaint. Accordingly, the Court should reject this attempt to drag out this litigation and dismiss the claims against Carfax as to all Plaintiffs.

## CONCLUSION

For all the foregoing reasons, Carfax's Motion to Dismiss should be granted in its entirety without leave to amend.

Dated: October 25, 2021                TROUTMAN PEPPER HAMILTON
                                       SANDERS LLP


                                       By:/s/ Monique M. Fuentes
                                           Monique M. Fuentes
                                           Ross Smith
                                           Attorneys for Defendant
                                           CARFAX, INC.