Squire Patton Boggs (US) LLP
Petrina A. McDaniel (GA Bar # 141301)
(*admitted *pro hac vice*)
petrina.mcdaniel@squirepb.com
Eric J Knapp (State Bar # 214352)
eric.knapp@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:   +1 415 954 0200
Facsimile:   +1 415 393 9887

Hannah J. Makinde (State Bar # 307907)
hannah.makinde@squirepb.com
555 South Flower Street, Suite 3100
Los Angeles, California 90071
Telephone:   +1 213 624 2500
Facsimile:   +1 213 623 4581

*Attorneys for Defendants*
*Manheim Riverside, Manheim Nevada,*
*NextGear Capital, Danny Brawn, Steve*
*Harmon, and Cesar Espinosa*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO LLC, A MONTANA LLC DBA SAN DIEGO MOTORWERKS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MANHEIM RIVERSIDE AKA COX AUTO INC. AKA MANHEIM INVESTMENTS INC. AKA COX AUTO AUCTIONS, LLC, et al.,<br><br>Defendants. | Case No. 21-cv-1205-H-JLB<br><br>**MOTION TO COMPEL ARBITRATION BY DEFENDANTS MANHEIM RIVERSIDE, MANHEIM NEVADA, DANNY BRAWN, CESAR ESPINOSA, AND STEVE HARMON**<br><br>Judge: Hon. Marilyn Huff<br><br>Date:      December 13, 2021<br>Time:      10:30 a.m.<br>Dept:      15A<br><br>Trial Date:Not Set<br>Date Action Filed:      July 1, 2021 |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 13, 2021 at 10:30 a.m. or as soon thereafter as this matter may be heard before the Honorable Marilyn Huff, United States District Judge, in the above-entitled Court, located at 350 W. 1st Street, in Los Angeles, California, 90012, Defendants Manheim Investments, Inc. d/b/a Manheim Riverside ("Manheim Riverside"), Greater Nevada Auto Auctions, LLC d/b/a Manheim Nevada ("Manheim Nevada"), Danny Brawn, Cesar Espinosa, and Steve Harmon will and hereby do move the Court for an order transferring this case to the Northern District of Georgia. Defendants bring this motion pursuant to 29 U.S.C. § 1404 on the grounds that a valid, written arbitration agreement between the parties covers all disputes related to the agreement upon which Plaintiffs premise their claims, and the arbitration agreement contains a forum-selection clause designating Atlanta, Georgia as the mandatory forum for arbitration.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and upon such oral argument and other submissions that may be presented at or before the hearing on this Motion.

Dated: November 8, 2021                    Squire Patton Boggs (US) LLP


By: */s/ Petrina A. McDaniel*
    Petrina A. McDaniel
    Eric J. Knapp
    Hannah Makinde

*Attorneys for Defendants*
*Manheim Riverside, Manheim Nevada,*
*NextGear Capital, Danny Brawn, Steve*
*Harmon, and Cesar Espinosa*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................1

**I.**   **INTRODUCTION** ..................................................................................1

**II.**   **FACTUAL BACKGROUND** ..................................................................2

    **A.**   **Allegations of the Complaint**...............................................2

    **B.**   **The Arbitration Agreement** .................................................3

**III.**   **ARGUMENT** ..........................................................................................6

    **A.**   **The Court Should Enforce the Arbitration Agreement and Dismiss Plaintiffs' Claims Pursuant to the Federal Arbitration Act.**...........6

        **1.**   **The Federal Arbitration Act Governs the Parties' Arbitration Agreement.**.........................................................6

        **2.**   **Disputes Falling within the Scope of the FAA Must Be Arbitrated.**.............................................................8

        **3.**   **The Agreement is Enforceable against Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento.** .......11

        **4.**   **Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement.** ...................................................15

    **B.**   **The Court Should Dismiss Plaintiffs' Claims Against Manheim and the Employee Defendants in Accordance with the Terms of Arbitration Agreement.**.................................................16

    **C.**   **The Court Should Transfer this Case to the Northern District of Georgia So That Arbitration May Be Compelled According to the Terms of the Arbitration Agreement.**.............................18

    **D.**   **Alternatively, the Court Should Stay These Proceedings Pending the Outcome of Arbitration in Atlanta.** ...........................21

**IV.**   **CONCLUSION**.......................................................................................22

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- i -

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Cases**                                                                                     **Page(s)**

4
5

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995) ..........................................................................7, 8

6
7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..........................................................................1, 6

8
9

*AT&T Techs. v. Communs. Workers of Am.*,
  475 U.S. 643, 106 S. Ct. 1415 (1986) ................................................ 16

10

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  134 S. Ct. 568 (2013) ...........................................................18, 19, 21

11
12

*Autonation Fin. Servs. Corp. v. Arain*,
  264 Ga. App. 755, 592 S.E.2d 96 (2003) ......................................13, 14

13
14
15

*Barranco v. 3D Sys. Corp.*,
  No. CIVIL 13-00411 LEK-RLP, 2014 U.S. Dist. LEXIS 25935, at
  *32 (D. Haw. Feb. 28, 2014) ........................................................18, 19

16
17

*Blount v. Northrop Grumman Info. Tech. Overseas, Inc.*,
  No. 14-cv-498-CAB (WVG), 2014 U.S. Dist. LEXIS 190885 (S.D.
  Cal. July 23, 2014)............................................................................ 18

18
19

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)............................................................ 10

20
21
22

*Camarillo v. Balboa Thrift Loan & Ass'n*,
  No. 3:20-cv-00913, 2021 U.S. Dist. LEXIS 22351 (S.D. Cal. Feb.
  4, 2021).............................................................................................. 2

23

*Chappel v. Laboratory Corp. of America*,
  232 F.3d 719 (9th Cir. 2000) ............................................................... 6

24
25

*Cigirex, LLC v. Acosta, Inc.*,
  No. SACV 14-939 ..................................................................6, 16, 17

26
27
28

*Citi Cars, Inc. v. Cox Enters.*,
  No. 1:17-cv-22190-KMM, 2018 U.S. Dist. LEXIS 42544 (S.D. Fla.
  Jan. 22, 2018)..................................................................................... 8

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Comvest v. Corp. Secs. Grp.*,
  234 Ga. App. 277, 507 S.E.2d 21 (1998) ........................................................ 13

*Cont'l Grain Co. v. Dant & Russell*,
  118 F.2d 967 (9th Cir. 1941) ............................................................................. 1

*Cox v. Ocean View Hotel*,
  533 F.3d 1114 (9th Cir. 2008) .......................................................................... 11

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ........................................................................................... 8

*Dwyer v. Dynetech Corp.*,
  No. C 07-02309 JSW, 2007 U.S. Dist. LEXIS 71647 (N.D. Cal.
  Sept. 17, 2007) ................................................................................................. 17

*Escobal v. Celebration Cruise Operator, Inc.*,
  482 F. App'x 475 (11th Cir. 2012) ................................................................... 14

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ........................................................................................... 9

*Fraher v. Verizon Wireless Servs., Ltd. Liab. Co.*,
  No. 21-cv-00763-H-JLB, 2021 U.S. Dist. LEXIS 115380 (S.D. Cal.
  June 21, 2021) ............................................................................................ 8, 11

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003) ......................................................................................... 11

*Haas v. J.A. Cambece Law Office, P.C.*,
  No. 05cv2039 DMS (RBB), 2006 U.S. Dist. LEXIS 104295 (S.D.
  Cal. Apr. 4, 2006) ...................................................................................... 15, 16

*Hoffman v. Citibank (S. Dakota), N.A.*,
  546 F.3d 1078 (9th Cir. 2008) ..................................................................... 11, 13

*Homestake Lead Co. v. Doe Run Res. Corp.*,
  282 F. Supp. 2d 1131 (N.D. Cal. 2003) ........................................................... 16

*Ivy v. Ecolab, Inc.*,
  No. 1:19-CV-5476-JPB-JSA, 2020 U.S. Dist. LEXIS 256054 (N.D.
  Ga. Apr. 20, 2020) ........................................................................................... 12

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Jackson v. Cintas Corp.*,
  No. 1:03-CV-3104-JOF, 2004 U.S. Dist. LEXIS 30850 (N.D. Ga.
  Sept. 29, 2004).................................................................................. 13

*Jialu Wu v. iTalk Glob. Communs., Inc.*,
  No. CV 20-7150 PSG, 2020 U.S. Dist. LEXIS 250121 (C.D. Cal.
  Oct. 21, 2020) ................................................................................... 12

*Johnston v. Beazer Homes Tex., L.P.*,
  No. C 06-05382 SI, 2007 U.S. Dist. LEXIS 20519 (N.D. Cal. Mar.
  2, 2007)............................................................................................. 17

*Krause v. Expedia Grp., Inc.*,
  No. 2:19-cv-00123-BJR, 2019 U.S. Dist. LEXIS 161261 (W.D.
  Wash. Sept. 17, 2019)........................................................................ 20

*Letizia v. Prudential Bache Secur., Inc.*,
  802 F.2d 1185 (9th Cir. 1986)............................................................ 13

*Lexington Ins. Co. v. Centex Homes*,
  795 F. Supp. 2d 1084 (D. Haw. 2011) ............................17, 18, 19, 20

*Luckert v. Tesla Energy Operations, Inc.*,
  No. 21-cv-03027-VC, 2021 U.S. Dist. LEXIS 147167 (N.D. Cal.
  Aug. 5, 2021)....................................................................................... 9

*Luna v. Kemira Specialty, Inc.*,
  575 F. Supp. 2d 1166 (C.D. Cal. 2008) ........................................... 2, 6

*McLellan v. Fitbit Inc.*,
  No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370, at *15
  (N.D. Cal. Oct. 11, 2017) .................................................................. 10

*Merrill Lync, Pierce, Fenner & Smith v. Landau-Taylor*,
  357 Ga. App. 818, 849 S.E.2d 504 (2020) ........................................ 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1985) ............................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................ 8

- iii -

*Moss v. McLucas*,
   No. 12-cv-2368 BEN (KSC), 2013 U.S. Dist. LEXIS 55391 (S.D.
   Cal. Apr. 15, 2013) ........................................................................................ 13

*NCR Corp. v. Manno*,
   No. 3:12-cv-121-TCB, 2012 U.S. Dist. LEXIS 196750 (N.D. Ga.
   Oct. 26, 2012) ............................................................................................... 12

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   862 F.3d 981 (9th Cir. 2017) ........................................................................ 10

*Powell v. United Rentals (N. Am.), Inc.*,
   No. C17-1573JLR, 2019 U.S. Dist. LEXIS 57722 (W.D. Wash.
   Apr. 3, 2019) ................................................................................................. 18

*Ramirez v. Cintas Corp.*,
   No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531 (N.D. Cal.
   Nov. 2, 2005) ................................................................................................. 11

*Randhawa v. Skylux, Inc.*,
   No. Civ. 2:09-2304 WBS/KJN,2010 U.S. Dist. LEXIS 113131, at
   *4 (E.D. Cal. Oct. 15, 2010) .................................................................. 19, 21

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ..................................................................................... 8, 17

*Retina Consultants P.C. v. Benjamin*,
   No. CV 119-037, 2020 U.S. Dist. LEXIS 48820 (S.D. Ga. Mar. 19,
   2020) ....................................................................................................... 11, 14

*Smith v. First Equity Card Corp.*,
   No. 4:08-CV-08(CDL), 2008 U.S. Dist. LEXIS 80217 (M.D. Ga.
   Oct. 9, 2008) ................................................................................................. 13

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) .......................................................................................... 16

*United States ex rel. Turnkey Constr. Servs. v. Alacran Contracting,
   Ltd. Liab. Co.*,
   No. 13-cv-01654 TLN-CMK, 2013 U.S. Dist. LEXIS 173536, at
   *8-9 (E.D. Cal. Dec. 10, 2013) ............................................................... 20, 22

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- iv -

*Valley Power Sys. v. GE*,
No. CV 11-10726 CAS, 2012 U.S. Dist. LEXIS 26228 (C.D. Cal.
Feb. 27, 2012) ................................................................................... 9, 10

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*,
No. CV 19-10337-DSF, 2020 U.S. Dist. LEXIS 92837 (C.D. Cal.
Mar. 13, 2020) ...................................................................................... 9

**Statutes**

9 U.S.C. § 2 ............................................................................... 7, 8, 11

9 U.S.C. § 3 ..................................................................................... 21

18 U.S.C. § 1343 ............................................................................... 3

29 U.S.C. ..................................................................................... 2, 18

Beverly Consumer Warranty Act ...................................................... 3

California Business and Professions Code § 17200 ............................ 3

California Consumer Legal Remedies Act .......................................... 3

Federal Arbitration Act ............................................................. *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §
1962(c) ............................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..................................................................... 2

Rule 12(b)(6) ................................................................................... 6

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

<div style="text-align: right; writing-mode: vertical-rl;">SQUIRE PATTON BOGGS (US) LLP<br>555 South Flower Street, 31st Floor<br>Los Angeles, California 90071</div>

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Over the course of three years, Plaintiffs SD Motorwerks ("SD Motorwerks"), Richard John Hagen dba EuroMotorwerks ("EuroMotorwerks"), Richard John Hagen ("Hagen"), and Carrie Elin Sorrento ("Sorrento") (collectively, "Plaintiffs") agreed to arbitrate all "disputes or claims" against Defendant Manheim[1] that "arise out of or relate in any way" to "any purchase, sale, or other auction or credit transaction with Manheim" (the "Arbitration Agreement"). Plaintiffs Hagen and Sorrento, as representatives of SD Motorwerks and EuroMotorwerks, respectively, affirmatively accepted on multiple occasions Manheim's Terms and Conditions as a condition to using Manheim's services, including participating in Manheim's auctions through which Plaintiffs purchased the vehicles at issue in this dispute. In other words, Plaintiffs agreed to arbitrate their dispute with Manheim.

As explained below, Plaintiffs' claims all arise out of allegedly concealed defects of vehicles that Plaintiffs purchased from various sellers at Manheim's auctions, and therefore, plainly "arise out of or relate" to a purchase or sale at a Manheim auction. Thus, pursuant to the "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), the Court should enforce the parties' Arbitration Agreement and dismiss Plaintiffs' Complaint.  While controlling Ninth Circuit precedent precludes the Court from compelling arbitration outside of this District, *see Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967, 969 (9th Cir. 1941), it does not require the Court to ignore the terms of the parties' bargained-for Arbitration Agreement. And because the parties agreed to arbitrate their disputes in Atlanta, Georgia pursuant to a forum selection clause, the Court may

---

[1] "Manheim" refers to Defendants Manheim Investments Inc. d/b/a Manheim Riverside ("Manheim Riverside"), Greater Nevada Auto Auctions, LLC d/b/a Manheim Nevada ("Manheim Nevada," and together with Danny Brawn ("Brawn"), Cesar Espinosa ("Espinosa") and Steve Harmon ("Harmon") (together, the "Employee Defendants") (collectively, "Defendants").

also transfer this case "in the interest of justice" pursuant to 29 U.S.C. § 1404 to the Northern District of Georgia so that a district court there may compel the parties to arbitration without contravening the Arbitration Agreement. Should the Court decline to dismiss Plaintiffs' claims or transfer the case to the Northern District of Georgia, the Court should exercise its discretion under the FAA to nevertheless stay these proceedings to permit Plaintiffs to submit their disputes to arbitration in Atlanta.[2]

## II.    FACTUAL BACKGROUND

### A.    Allegations of the Complaint

Plaintiffs assert seven causes of action against Defendants arising out of the purchase of three used vehicles (the "Vehicles") from various sellers at auctions hosted by Manheim. *See generally* Compl.

SD Motorwerks is a limited liability company owned by "Dipito LLC Series A (sic) Delaware LLC," and is operated as a "San Diego Business Trust." Compl. ¶ 1. Sorrento is the "Co-Trustee" of SD Motorwerks, and "[a]t all times material thereto . . . is and was the operator of" SD Motorwerks. *Id*. EuroMotorwerks is an inactive

---

[2] By order dated October 22, 2021 the Court ordered the defendants seeking dismissal on the basis of arbitration agreements to file respective motions to compel arbitration. [ECF No. 40]. Accordingly, Defendants submit this Motion to Compel as its response to the Complaint, and incorporate by reference its previously-filed Motion to Dismiss pursuant to 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1404 relating to the claims of Plaintiffs SD Motorwerks Richard John Hagen dba EuroMotorwerks, Richard John Hagen, and Carrie Elin Sorrento. (Dkt. 23, 23-1.) *Luna v. Kemira Specialty, Inc*., 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) ("[w]here a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)"); *Camarillo v. Balboa Thrift Loan & Ass'n*, No. 3:20-cv-00913, 2021 U.S. Dist. LEXIS 22351, at *36-44 (S.D. Cal. Feb. 4, 2021) (dismissing lawsuit subject to arbitration under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction). Defendants expressly reserve their right to respond to the substantive allegations and claims in Plaintiffs' Complaint in the event the Court does not transfer this action to the Northern District of Georgia so that the court there may compel arbitration or stay these proceedings.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

business with which Hagen is affiliated. *See* Compl. ¶¶ 3-4. Hagen is additionally Sorrento's spouse and an employee of SD Motorwerks. Compl. ¶ 52.

Manheim hosts automobile auctions in different states, and some of the vehicles are sold online. Compl. ¶¶ 26, 31. The Employee Defendants are, or were, employees of Manheim Riverside. *Id*. ¶¶ 10-12.

Plaintiffs allege that from June 7, 2019 through February 28, 2020, SD Motorwerks purchased the three Vehicles from various sellers at auctions hosted by Manheim Nevada and Manheim Riverside. *See id*. Plaintiffs essentially allege that these Vehicles contained various, material defects that were concealed at the time of purchase. *See id*.

Based on these allegations, Plaintiffs assert "[a]gainst All Defendants"[3] violations of (1) California Consumer Legal Remedies Act; (2) Song Beverly Consumer Warranty Act; (3) Magnuson-Moss Consumer Warranty Act; (4) Quasi-Contract/Restitution; (5) California Business and Professions Code § 17200; (6) Wire Fraud under § 18 U.S.C. § 1343, Deceit, and/or Misrepresentation; and (7) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

### B.    The Arbitration Agreement

Manheim operates wholesale auto auctions online and in various locations, including in Nevada, Riverside, California, and online platforms through which licensed and registered motor vehicle dealers may buy and sell motor vehicles in direct transactions with other motor vehicle dealers. *See* Declaration of Veronica Tai, ("Tai Decl."), ¶ 5, Exhibit 1 to Defendants' Motion to Dismiss, or Alternatively, to Transfer Venue ("Defs.' Mot. to Dismiss") [ECF No. 23-2]. Manheim's role is to

---

[3] Plaintiffs allege, in conclusory fashion and without any supporting factual allegations, that numerous individuals and entities are all involved with Defendants in the alleged unlawful enterprise of "enriching themselves in a pattern and practice of fraudulent activities," including, Defendants Jerry Siderman who was allegedly the lessee of the BMW before Plaintiffs purchased it; BMW Financial Services NA, LLA who allegedly sold Plaintiffs the BMW; and Carfax, Inc. *See* Compl. ¶¶ 25, 32-33, 155.

provide a marketplace to facilitate the purchase and sale of motor vehicles between wholesale buyers and sellers. *See id*.

Manheim's dealer customers must review its written Terms and Conditions ("Ts&Cs") for conducting business at its auction, and are ***required*** to affirmatively accept and agree to these Terms and Conditions as a prerequisite to purchasing vehicles. *See* Tai Decl., ¶¶ 10-11 (emphasis added). When the Ts&Cs are modified, Manheim's dealer customers must accept the new Ts&Cs when logging into their account before they are able utilize Manheim's services or participate in its auctions. *Id*. ¶ 12.

At all relevant times, Manheim's Ts&Cs contained a section titled "Dispute Resolution and Class Action Waiver" that reads:

> **ABTRATION AGREEMENT.** YOU AGREE TO ARBITRATE ANY DISUPTE OR CLAIM THAT YOU MAY HAVE WITH MANHEIM THAT <u>ARISES OUT OF OR RELATES IN ANY WAY</u> TO THESE TERMS AND CONDITIONS; <u>ANY PURCHASE, SALE, OR OTHER AUCTION</u> OR CREDIT TRANSACTION WITH MANHEIM; YOUR USE OF ANY MANHEIM WEBSITE, ONLINE PORTAL, OR ANY MANHEIM PRODUCT OR SERVICE; OR ANY OTHER AGREEMENT BETWEEN YOU AND MANHEIM. ARBITRATION CONDUCTED HEREUNDER WILL BE FINAL AND BINDING. THIS ARBITRATION PROVISION MEANS THAT YOUR CLAIMS AGAINST MANHEIM WILL BE RESOLVED THROUGH ARBITRATION RATHER THAN LITIGATION IN COURT. YOU ACKNOWLEDGE THAT MANHEIM MAY (BUT WILL NOT BE REQUIRED TO) SUBMIT TO ARBITRATION ANY DISPUTE OR CLAIM THAT IT MAY HAVE AGAINST YOU, WITH ANY SUCH ARBITRATION BEING GOVERNED BY THE PROVISIONS OF THIS SECTION 26.

Tai Decl., Exs. C & D ("Arb. Agreement"), ¶ 26(a) (emphasis added) (the "Arbitration Agreement"). The Ts&Cs further notify Manheim's customers of their rights and ability to opt out of the arbitration provision:

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**ABILITY TO OPT OUT.** YOU MAY OPT OUT OF THIS ARBITRATION AGREEMENT (SECTION 26 ONLY) FOR ANY FUTURE BUSINESS WITH MANHEIM AND DOING SO WILL NOT IN ANY WAY PREJUDICE OR AFFECT YOUR DEALINGS WITH MANHEIM. TO EXERCISE THIS OPT OUT RIGHT, YOU MUST EMAIL MANHEIM WRITTEN NOTICE OF YOUR ELECTION TO OPT OUT AT EMAILNOTICES@COXAUTOINC.COM NO LATER THAN 30 DAYS AFTER YOUR INITIAL ACCEPTANCE OF THESE TERMS AND CONDITIONS AS SET FORTH IN THE FIRST PARAGRAPH HEREOF. THE PROCEDURE SPELLED OUT HEREIN IS THE ONLY WAY TO OPT OUT OF THIS ARBITRATION AGREEMENT, AND ANY ATTEMPTS TO OPT OUT AFTER THE DEADLINE SET FORTH HEREIN WILL BE INEFFECTIVE.

*Id.* ¶ 26(b).

The Arbitration Agreement contains a mandatory forum-selection clause that provides that "[t]he laws of the State of Georgia will apply to any claims or disputes between us. <u>Any arbitration will be held in Atlanta, Georgia</u>, unless otherwise agreed upon by the parties in writing." *Id.* ¶ 26(d) (emphasis added).

"Manheim" is defined as "Manheim Remarketing, Inc. and its various subsidiaries and affiliates, including, but not limited to, the various Manheim auto auctions and Cox Automotive, Inc." *Id.* ¶ 1. Moreover, the Ts&Cs provide that "[b]y attending any of Manheim's private auctions or using any of Manheim's services (including, for the avoidance of doubt, private store sites powered by Manheim), **whether at a Manheim location or online, you agree, for yourself, your dealership, your company, and your representatives (collectively, 'you'), to abide by the following terms and conditions, as amended from time to time by Manheim."** *Id.*, at Introductory Paragraph (emphasis added).

Plaintiff Sorrento, who is listed as a representative of SD Motorwerks in Manheim records, logged onto SD Motorwerks' Manheim account on three separate dates—November 29, 2019, February 7, 2020, and September 26, 2020—and

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

affirmatively accepted Versions 1.7, 1.8, and 2.0 of Manheim's Ts&Cs on behalf of SD Motorwerks. *See* Tai Decl., Ex. B, PPN Portal Screenshot of SD Motorwerks' Account. Likewise, Plaintiff Hagen, who EuroMotorwerks listed as its representative in Manheim's records, logged onto EuroMotorwerks' Manheim account on August 4, 2018, and affirmatively accepted Version 1.7 of Manheim's Ts&Cs on behalf of EuroMotorwerks. *See id.*, Ex. A, PPN Portal Screenshot of EuroMotorwerks' Account. Neither SD Motorwerks nor EuroMotorwerks opted out of the Arbitration Agreement. Ex. 1, ¶ 21.

## III. ARGUMENT

### A. The Court Should Enforce the Arbitration Agreement and Dismiss Plaintiffs' Claims Pursuant to the Federal Arbitration Act.

The Court can easily dispense with the claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants by applying the "liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339. Plaintiffs agreed to arbitrate all claims against Manheim when they agreed to the Ts&Cs and did not opt-out of the arbitration provision. And although Plaintiffs attempt to avoid arbitration by claiming, "[a]ll agreements, if any, related to venue outside this District are null and void due to their fraudulent nature," Compl. ¶ 24, such argument falls flat, as Supreme Court and Ninth Circuit precedent mandate that issues of arbitrability must be delegated to the arbitrator in the first instance.

#### 1. The Federal Arbitration Act Governs the Parties' Arbitration Agreement.

In the context of a motion to compel arbitration, Ninth Circuit law mandates dismissal under 12(b)(6) where all claims in the action are barred by an arbitration provision. *See Luna*, 575 F. Supp. 2d at 1176, ("Where a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)") (citing *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000); *Cigirex,*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*LLC v. Acosta, Inc*., No. SACV 14-939 AG (DFMx), 2014 U.S. Dist. LEXIS 195377, at \*8-9 (C.D. Cal. Oct. 6, 2014) (dismissing claims under arbitration provision that mandated arbitration outside of the District, stating that "[i]n these circumstances, the Court has discretion to simply dismiss claims that are subject to arbitration without also ordering them to arbitration").

Section 4 of the Federal Arbitration Act, 9 U.S.C. § 2 et seq. ("FAA") empowers "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." In particular, the FAA governs a written arbitration provision in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" is the functional equivalent of "affecting commerce" and signals "an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Here, both requirements are satisfied.

The Arbitration Agreement here is a written agreement relating to vehicles in interstate commerce. *See* Arb. Agreement. Specifically, Manheim hosts auctions to facilitate the purchase and sale of vehicles between licensed and registered motor vehicle dealers. Tai Decl., ¶ 5. And as Plaintiffs allege in the Complaint, these transactions often occur across state lines. Compl. ¶ 31. Further, the parties expressly agreed that the FAA would govern the interpretation and enforcement of the Arbitration Agreement: "You agree that your transactions with Manheim evidence transactions in interstate commerce, and thus, the Federal Arbitration governs the interpretation and enforcement of this [Arbitration Agreement]. . ."). Arb. Agreement, ¶ 26(e). The allegations in Plaintiff's Complaint likewise acknowledge that the transactions underlying the parties' dispute "affect[s] interstate commerce[.]" Compl. ¶¶ 31, 155.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Thus, the FAA governs the parties' Arbitration Agreement. *See Citi Cars, Inc. v. Cox Enters.*, No. 1:17-cv-22190-KMM, 2018 U.S. Dist. LEXIS 42544, at *18 (S.D. Fla. Jan. 22, 2018) ("[T]he transactions here—purchasing used vehicles at auction and receiving financing in order to do so—implicate interstate commerce on the face of the Complaint").

### 2. Disputes Falling within the Scope of the FAA Must Be Arbitrated.

The FAA creates a body of federal substantive law governing "the duty to honor an agreement to arbitrate." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *see also Fraher v. Verizon Wireless Servs., Ltd. Liab. Co.*, No. 21-cv-00763-H-JLB, 2021 U.S. Dist. LEXIS 115380, at *5 (S.D. Cal. June 21, 2021). When there is a valid arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Any doubts as to arbitrability "should be resolved in favor of arbitration, whether the problem [is] an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 (1983).

When, as here, a party invokes an arbitration agreement, a court's role is limited to two questions: (1) does a valid arbitration agreement exist between the parties, and (2) does the dispute at issue fall within the scope of the agreement. *See* 9 U.S.C. § 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626-28 (1985); *Allied-Bruce Terminix*, 513 U.S. at 273-77 (1995). In answering these questions, a court may not review the merits of the underlying case, but "may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party." *Fraher*, 2021 U.S. Dist. LEXIS 115380, at *5-6.

When the parties have clearly and unmistakably delegated questions about arbitrability to the arbitrator, however, the Court need not reach the second inquiry regarding the scope of the agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

63, 68–70 (2010); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Valley Power Sys. v. GE*, No. CV 11-10726 CAS (JCx), 2012 U.S. Dist. LEXIS 26228, at *11 (C.D. Cal. Feb. 27, 2012) (holding that "[w]hen an arbitration agreement demonstrates a clear intent to delegate arbitrability to the arbitrators, a court will decide arbitrability only if the party opposing arbitration successfully challenges the delegation provision itself.)." All other challenges are exclusively for the arbitrator to decide.

The Arbitration Agreement relevant here provides:

> **Arbitration Procedures/Arbitrator Authority:** Any dispute or claim subject to arbitration pursuant to this Section 26 shall be submitted to binding arbitration administered by the Judicial Arbitration and Mediation Service ("JAMS") pursuant to its Streamlined Arbitration Rules and Procedures in effect at the time of the submission of such dispute or claim (the "JAMS Streamlined Rules").

Arb. Agreement, ¶ 26(d). The JAMS Streamlined Rules state that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, No. CV 19-10337-DSF (JPRx), 2020 U.S. Dist. LEXIS 92837, at *5-6 (C.D. Cal. Mar. 13, 2020) (quoting JAMS's Comprehensive Arbitration Rules and Procedures). Thus, courts in the Ninth Circuit have held that where an agreement expressly incorporates the JAMS Streamlined Rules, parties have "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator. *See id.*, at *6-7 (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)) (holding that where an arbitration agreement stated that the "arbitration shall be administered by JAMS pursuant to its JAMS' Comprehensive Arbitration Rules and Procedures," there was "clear and unmistakable evidence of an agreement to arbitrate arbitrability"); *Luckert v. Tesla Energy Operations, Inc.*, No. 21-cv-03027-VC, 2021 U.S. Dist. LEXIS 147167, at *1 (N.D. Cal. Aug. 5, 2021) (parties clearly and unmistakably delegated the question

of arbitrability to the arbitrator where the agreement "incorporate[d] the JAMS Streamlined Arbitration Rule into its arbitration provision").

It therefore follows that when the parties delegate threshold issues to the arbitrator, the arbitrator, not a court, determines in the first instance the scope of the agreement to arbitrate. For example, in *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co*., 862 F.3d 981, 986 (9th Cir. 2017), as amended (Aug. 28, 2017), the Ninth Circuit held that, as the parties had clearly and unmistakably delegated questions of arbitrability, the question whether a non-party to an arbitration agreement could be obligated to arbitrate its dispute should be determined by the arbitrator. *Id.*

Applying these governing principles, "clear and unmistakable" evidence exists establishing the parties intended to arbitrate issues of arbitrability. First, the Arbitration Agreement expressly incorporates the JAMS Streamlined Rules, which the Ninth Circuit has found to be dispositive on the delegation clause. *Brennan, supra.* Second, Plaintiffs do not and cannot contest the validity of the Arbitration Agreement's delegation provision, which is the only matter this Court may properly consider. *Valley Power Sys*., 2012 U.S. Dist. LEXIS 26228, at *11. Rather, Plaintiffs' own allegations assume that a facially valid agreement to arbitrate exists but argue that it should not be applied here for other reasons. Compl. ¶ 24 ("All agreements, if any, related to venue outside this District are null and void due to their fraudulent nature.") And despite Plaintiffs' attempted end-run, courts have held that contesting the validity of arbitration agreements based on fraud is a delegable issue for arbitrators to decide. *McLellan v. Fitbit Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370, at *15 (N.D. Cal. Oct. 11, 2017) (holding that contract defenses to the validity of the arbitration provision, including that the provision was procured by fraud, "must be considered by the AAA arbitrator in the first instance" due to the arbitration provision's delegation clause).

In short, because the parties have clearly and unmistakably delegated arbitrability issues to the arbitrator, the Court should compel Plaintiffs SD

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Motorwerks, EuroMotorwerks, Hagen, and Sorrento to arbitrate their claims against Manheim Riverside, Manheim Nevada, and the Employee Defendants, including any issues regarding arbitrability.

### 3. The Agreement is Enforceable against Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento.

Even if the Court ruled that the delegation clause did not delegate all threshold questions to the arbitrator, the Complaint must still be dismissed because the arbitration agreement covers this dispute. *See Cox v. Ocean View Hotel*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation omitted); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (citation omitted).

As noted above, an arbitration agreement governed by the FAA is presumed valid and enforceable. 9 U.S.C. § 2; *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). In determining whether an arbitration agreement is enforceable under the FAA, courts look to the state contract law governing the agreement, "while giving due regard to the federal policy in favor of arbitration." *Fraher*, 2021 U.S. Dist. LEXIS 115380, at *6 (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)).

### a. The Arbitration Agreement is Valid and Enforceable.

In this case, Plaintiffs agreed pursuant to the Manheim Terms and Conditions that Georgia law applies. *See* Arb. Agreement, ¶ 25 ("These terms and conditions will be governed by the internal laws of the State of Georgia. . ."); *see also Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531, at *11-12 (N.D. Cal. Nov. 2, 2005) (holding that "California law generally favors enforcement of bargained for choice-of-law provisions" and applying Ohio law to determine validity of an arbitration agreement pursuant to choice-of-law provision); *Retina Consultants P.C. v. Benjamin*, No. CV 119-037, 2020 U.S. Dist. LEXIS 48820, at *15 (S.D. Ga. Mar. 19, 2020) (holding a binding contract includes "[a] definite offer and complete acceptance for consideration").

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

A valid agreement to arbitrate exists here. Plaintiffs expressly agreed to "arbitrate any dispute or claim that you may have with Manheim that arises out of or relate in any way" to "any purchase, sale, or other auction or credit transaction with Manheim." Arb. Agreement, at ¶ 26(a). Additionally, Hagen and Sorrento, acting on behalf of SD Motorwerks and EuroMotorwerks, affirmatively accepted Manheim's Ts&Cs online at Manheim.com, which incorporate the Arbitration Agreement, as a condition of using Manheim's auctions and other services, including transacting through Manheim's online portals. The electronic receipt of Plaintiffs' acceptance is evidence of this. Tai Decl., ¶¶ 15-16. After accepting these terms online, SD Motorwerks and EuroMotorwerks then began purchasing vehicles from other dealers through Manheim's auctions and continued to do so through the relevant period in the Complaint. *See generally* Compl.

Courts in Georgia and California routinely recognize that agreements similar to Manheim's Ts&Cs are valid and enforceable. *See Ivy v. Ecolab, Inc.*, No. 1:19-CV-5476-JPB-JSA, 2020 U.S. Dist. LEXIS 256054, at *4 (N.D. Ga. Apr. 20, 2020) (finding that arbitration agreement which plaintiff accepted by clicking the "AGREE" button was valid and enforceable); *NCR Corp. v. Manno*, No. 3:12-cv-121-TCB, 2012 U.S. Dist. LEXIS 196750, at *13 (N.D. Ga. Oct. 26, 2012) (enforcing online agreement where the recipient clicked a button acknowledging his assent to the terms of the agreement); *Jialu Wu v. iTalk Glob. Communs., Inc.*, No. CV 20-7150 PSG (PJWx), 2020 U.S. Dist. LEXIS 250121, at *9-10 (C.D. Cal. Oct. 21, 2020) ("[T]he Agreement is clearly a clickwrap agreement, and Plaintiff's assent to the clickwrap agreement is valid regardless of his actual notice of the Agreement's terms"). Thus, the Ts&Cs and the Arbitration Agreement contained therein constitute a valid and enforceable contract.

### b. The Arbitration Agreement Applies to Claims against Manheim and the Employee Defendants.

Because the Arbitration Agreement is valid and enforceable, Manheim Riverside and Manheim Nevada may enforce its terms against Plaintiffs, as Plaintiffs

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

expressly agreed to arbitrate any and all claims against "**Manheim Remarketing, Inc. and its various subsidiaries and affiliates, including the various Manheim auto auctions,** Cox Automotive, Inc." Arb. Agreement, ¶ 1 (emphasis added); *Hoffman, supra.*

The Arbitration Agreement is likewise enforceable by the Employee Defendants though they are not signatories to the Agreement. Both Georgia and California law holds that an employee may rely on arbitration agreements entered into by its employers in disputes involving their role for the employer. *See Comvest v. Corp. Secs. Grp.*, 234 Ga. App. 277, 281, 507 S.E.2d 21, 25 (1998) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements"); *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (holding that non-signatory employee defendants could invoke arbitration agreement between their employer and plaintiff); *Moss v. McLucas*, No. 12-cv-2368 BEN (KSC), 2013 U.S. Dist. LEXIS 55391, at *10 (S.D. Cal. Apr. 15, 2013) (same). Thus, the Employee Defendants are "also covered under the terms of [the Arbitration Agreement]." *Comvest*, 234 Ga. App. at 281.

Further, where a party asserts claims against a signatory and a non-signatory that "are based on the same facts and are inherently inseparable," the claims against the non-signatory are subject to arbitration under equitable estoppel. *Autonation Fin. Servs. Corp. v. Arain*, 264 Ga. App. 755, 761, 592 S.E.2d 96, 101 (2003); *Jackson v. Cintas Corp.*, No. 1:03-CV-3104-JOF, 2004 U.S. Dist. LEXIS 30850, at *27-28 (N.D. Ga. Sept. 29, 2004) (finding that trial court did not err in dismissing claims against an individual defendant who was not a signatory to the arbitration agreement, reasoning that the claims against the non-signatory and signatory arose out of "substantially interdependent and concerted misconduct"); *Smith v. First Equity Card Corp.*, No. 4:08-CV-08(CDL), 2008 U.S. Dist. LEXIS 80217, at *5 (M.D. Ga. Oct. 9, 2008) (authorizing a non-signatory to invoke an arbitration provision and

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

dismissing the action "so that the parties may resolve this dispute through arbitration).

Here, Plaintiffs assert the same seven causes of action against "[a]ll Defendants," premised on the same underlying allegations: that Manheim Riverside, Manheim Nevada, and the Employee Defendants did not disclose the Vehicles' material defects before SD Motorwerks and/or EuroMotorwerks purchased the Vehicles from the sellers. *See* Compl. The Complaint also alleges that each of the Employee Defendants is "a management employee and authorized agent of MANHEIM," (Compl. ¶¶ 10-12), and that the allegedly unlawful conduct at issue was the product of a carefully orchestrated "enterprise" by Manheim. Compl. ¶ 31. In other words, the claims against both the non-parties to the Arbitration Agreement (the Employee Defendants) "are based on the same facts and are inherently inseparable," from the claims against the parties to the Agreement (Manheim), and should therefore be dismissed under the doctrine of equitable estoppel. *Autonation Fin. Servs. Corp.*, 264 Ga. App. at 761. Otherwise, the Arbitration Agreement would be meaningless, as Plaintiffs could avoid their obligation to arbitrate all disputes against Manheim by proceeding against the Employee Defendants individually. *Retina Consultants, P.C.*, 2020 U.S. Dist. LEXIS 48820, at *28.

### c.   The Arbitration Agreement is Enforceable against Plaintiffs Hagen and Sorrento.

Plaintiffs Sorrento's and Hagen's claims against Defendants must be dismissed and arbitrated for similar reasons. State law governs whether an arbitration clause is enforceable against a non-signatory under the FAA. *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (applying Georgia law). The Ts&Cs expressly state that its terms apply not only to SD Motorwerks and EuroMotorwerks, but also to their "dealership," "company," and "representatives." Arb. Agreement, Introductory Paragraph. Plaintiffs have clearly pled that Plaintiffs Hagen and Sorrento are representatives of SD Motorwerks and EuroMotorwerks,

which binds them to the Ts&Cs' terms, including the Arbitration Agreement. *See* Compl. ¶¶ 1, 3-4, 52; *see also* Tai Decl., ¶¶ 15-16.

For example, EuroMotorwerks listed Hagen as its representative in registering its Manheim account, and Hagen accepted Manheim's Ts&Cs' on its behalf. Tai Decl., ¶ 15. In fact, the allegations in the Complaint conflate the actions of Hagen with those of SD Motorwerks and EuroMotorwerks, further demonstrating the existence of an agency relationship. *See* Compl. ¶ 35 ("HAGEN/SD Motorwerks contacted MANHEIM to express his concerns"); *id.* ¶ 3 ("RICHARD JOHN HAGEN dba EUROMOTORWERKS"). Plaintiffs' allegations likewise establish that Sorrento was SD Motorwerks' agent. Notably, the Complaint alleges that SD Motorwerks is organized as a "San Diego Business Trust" which is "operated by the Co-Trustee, Carrie Elin Sorrento." *Id.* ¶ 1. Plaintiffs further allege that, "[a]t all times material thereto, the Co-Trustee is and was the operator of the business." *Id.* Plainly, as SD Motorwerks' "operator" and "Co-Trustee," Sorrento was authorized to act on its behalf, giving rise to an agency relationship.

Simply put, Plaintiffs' allegations and the undisputed evidence show that Hagen and Sorrento were agents of SD Motorwerks and EuroMotorwerks. *See Merrill Lync, Pierce, Fenner & Smith v. Landau-Taylor*, 357 Ga. App. 818, 822, 849 S.E.2d 504, 507 (2020). As such, a valid and enforceable arbitration agreement exists between Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento, on one hand, and Manheim Riverside, Manheim Nevada, and the Employee Defendants on the other.

### 4. Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement.

Plaintiffs' claims fit squarely within the Arbitration Agreement given its all-encompassing language covering "any dispute or claim" "aris[ing] out of or relat[ing] in any way" to "any purchase, sale, or other auction or credit transaction with Manheim." Arb. Agreement, ¶ 26(a). Courts hold that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Haas v. J.A.*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Cambece Law Office, P.C.*, No. 05cv2039 DMS (RBB), 2006 U.S. Dist. LEXIS 104295, at *10 (S.D. Cal. Apr. 4, 2006). "[T]he general rule is that arbitration will be ordered 'unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. at *10-11 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986)).

The preference for arbitration is particularly strong where, as here, there is a broad arbitration clause at issue. *AT&T Techs.*, 475 U.S. at 650. "Clauses requiring arbitration of claims 'arising out of or relating to' a contract are considered broad. *Homestake Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003); *see also Southland Corp. v. Keating*, 465 U.S. 1, 15 n.7 (1984) (noting that an arbitration clause was "broad" where it contained "arising out of or relating to" language).

Given these considerations and the strong presumption in favor of arbitration, Plaintiffs' claims plainly fall directly within the scope of the Arbitration Agreement. Fundamentally, Plaintiffs' claims are predicated on Manheim's alleged failure to disclose defects in the three Vehicles they purchased from sellers at Manheim auctions. *See* Compl. Plaintiffs' claims therefore "arise[] out of or relate" to their "purchase, sale, or other auction or credit transaction with Manheim." Arb. Agreement, ¶ 26(a). Thus, even if this Court were authorized to address the scope of the Arbitration Agreement, it must find all of Plaintiffs' claims arbitrable.

**B.    The Court Should Dismiss Plaintiffs' Claims Against Manheim and the Employee Defendants in Accordance with the Terms of Arbitration Agreement.**

Plaintiffs' Claims against Defendants must be arbitrated, and arbitration must occur in Atlanta, Georgia, as required by the bargained-for terms of the parties' Arbitration Agreement. *See* Arb. Agreement, ¶ 26(d). Although Ninth Circuit precedent precludes this Court from compelling arbitration outside of this District— *see, e.g.*, *Cigirex*, 2014 U.S. Dist. LEXIS 195377, at *8 ("The Ninth Circuit has

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

interpreted the FAA as permitting a district court to order arbitration only within its district"); *Lexington Ins. Co. v. Centex Homes,* 795 F. Supp. 2d 1084, 1091 (D. Haw. 2011) (citing *Cont'l Grain Co.*, 118 F.2d at 969) (holding [the FAA's remedial provision] prohibits a district court from ordering parties to arbitrate outside of the district in which a motion to compel is filed")—the Ninth Circuit's holding in *Continental Grain* and its progeny do *not* require the Court to disregard the parties' designated choice of forum. Indeed, the Supreme Court specifically noted that the FAA "places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them *according to their terms*[.]" *Rent-A-Center*, 561 U.S. at 67-68 (citations omitted) (emphasis added).

Where a valid and enforceable forum-selection clause mandates that arbitration must take place in a venue outside of the district, a court may nevertheless dismiss the arbitrable claims without compelling arbitration. *See Cigirex*, 2014 U.S. Dist. LEXIS 195377, at *8-9; *Dwyer v. Dynetech Corp.*, No. C 07-02309 JSW, 2007 U.S. Dist. LEXIS 71647, at *17 (N.D. Cal. Sept. 17, 2007) (dismissing claims subject to arbitration in Florida without compelling arbitration); *Johnston v. Beazer Homes Tex., L.P.*, No. C 06-05382 SI, 2007 U.S. Dist. LEXIS 20519, at *4 (N.D. Cal. Mar. 2, 2007) (granting motion to dismiss without compelling arbitration pursuant to a mandatory arbitration agreement). The court in *Cigirex* did just that, noting that "[i]n these circumstances, the Court has discretion to simply dismiss claims that are subject to arbitration without also ordering them to arbitration." *Cigirex*, 2014 U.S. Dist. LEXIS 195377, at *8-9. In so doing, the court reasoned that "compelling arbitration in California simply because the party resisting arbitration filed a lawsuit in California, contrary to the parties' contractual agreement to arbitrate in Florida, would be contrary to the FAA's command to order arbitration 'in accordance with the terms of the agreement.'" *Id*. at *8 (quoting 9 U.S.C. § 4).

Here, Plaintiffs' claims are subject to the Arbitration Agreement, and therefore must be arbitrated. While the Court may not compel the parties to arbitrate in Atlanta,

- 17 -

as required under the express terms of the Arbitration Agreement, it should nevertheless dismiss Plaintiffs' claims.

### C. The Court Should Transfer this Case to the Northern District of Georgia So That Arbitration May Be Compelled According to the Terms of the Arbitration Agreement.

Alternatively, the Court may transfer this matter to the Northern District of Georgia pursuant to 29 U.S.C. § 1404, where a district court may compel arbitration according to the terms of the Arbitration Agreement (*i.e.*, in Atlanta, Georgia). *See Lexington Ins. Co.*, 795 F. Supp. 2d at 1092-93 (transferring the case to the Northern District of Texas so that the district court there could compel arbitration to honor the "parties' agreed-upon forum selection"); *Blount v. Northrop Grumman Info. Tech. Overseas, Inc.*, No. 14-cv-498-CAB (WVG), 2014 U.S. Dist. LEXIS 190885, at *6 (S.D. Cal. July 23, 2014) (transferring case where the defendant moved to compel, or, in the alternative, transfer venue pursuant to a forum-selection clause); *Powell v. United Rentals (N. Am.), Inc.*, No. C17-1573JLR, 2019 U.S. Dist. LEXIS 57722, at *22 (W.D. Wash. Apr. 3, 2019) (same); *Barranco v. 3D Sys. Corp.*, No. CIVIL 13-00411 LEK-RLP, 2014 U.S. Dist. LEXIS 25935, at *32 (D. Haw. Feb. 28, 2014) (same).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 29 U.S.C. § 1404(a). Where a motion to transfer venue is premised upon a contract's valid forum-selection clause, the Supreme Court has instructed that such clause should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). On a motion to transfer venue under Section 1404(a), there is a presumption that the case should be transferred to the venue identified in the parties' forum selection clause. *See id.* More precisely, [i]n all but

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id*. at 582.

Moreover, in evaluating a motion to transfer venue premised on a valid forum-selection clause, a plaintiff's chosen forum is not entitled to any deference. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 581 (noting that as the party resisting application of the forum-selection clause, the plaintiff bore the burden of establishing that transfer to the contractually designated forum was unwarranted). Thus, the sole factor that the court should consider is whether any public interest considerations militate against a transfer. *Id*. at 581-82 (holding that where a valid forum-selection clause exists, courts must deem private-interest factors to weigh entirely in favor of the designated forum).

Here, the Court should transfer venue because the parties agreed to a valid forum-selection clause in the Arbitration Agreement, designating Atlanta, Georgia as the situs of arbitration. *See* Arb. Agreement, ¶ 26(d). In other words, Atlanta "has been deemed a convenient forum for arbitration by the parties." *Lexington Ins. Co.*, 795 F. Supp. 2d at 1093. In designating Atlanta as a convenient forum for arbitration, "[t]he parties did not simply agree to arbitrate; they agreed to arbitrate in [Atlanta]." *Randhawa v. Skylux, Inc.*, No. Civ. 2:09-2304 WBS/KJN,2010 U.S. Dist. LEXIS 113131, at *4 (E.D. Cal. Oct. 15, 2010) (finding that plaintiffs' claims were subject to a valid and enforceable arbitration agreement, but refusing to compel arbitration in California, as "that would be inconsistent with the very agreement the court was trying to enforce"). "The agreed upon forum is not severable from the agreement to arbitrate. Each is just as much a part of the agreement as the other." *Id*. at *5. Requiring the parties to arbitrate in this District would thus frustrate the primary purpose to "ensure that private agreements to arbitrate are enforced according to their terms." *Lexington Ins. Co*., 795 F. Supp. 3d at 1092 (internal quotation marks and citations omitted); *see also Barranco*, 2014 U.S. Dist. LEXIS 25935, at *32 ("[I]f this Court entered an order compelling the parties to arbitrate [in a forum other than

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

the contractually designated forum], it would run afoul of the FAA because the order would contradict the terms of the Arbitration Clause").

Moreover, transferring this case to the Northern District of Georgia would serve "the interest of justice," as "it would be unjust to allow Plaintiff[s] to subvert the agreed upon venue for arbitration by filing [their] case in a district other than the other in which [they] agreed arbitration would take place." *Krause v. Expedia Grp., Inc.*, No. 2:19-cv-00123-BJR, 2019 U.S. Dist. LEXIS 161261, at *22 (W.D. Wash. Sept. 17, 2019) (compelling arbitration in Dallas, Texas pursuant to the arbitration provision's forum-selection clause and noting that "[s]uch a result prevents a party [from] sidestep[ping] a forum selection clause by filing in a district other than that specified in the agreement") (citation and internal quotation marks omitted); *see also Lexington Ins. Co.*, 795 F. Supp. 3d at 1093 ("[G]iven the freely negotiated forum selection clause in the insurance agreement, transferring the case to the agreed-upon location would be in the interest of justice."). Indeed, by not allowing Plaintiffs to circumvent the Arbitration Agreement's bargained-for terms, the Court would "prevent[] forum shopping and advanc[e] the strong public policy in favor of enforcing arbitration agreements." *Krause*, 2019 U.S. Dist. LEXIS 161261, at *22 (citation and internal quotation marks omitted).

Otherwise, "any party to a negotiated arbitration agreement containing a venue provision could . . . file suit [in] the district most favorable to it and subsequently agree to arbitrate in order to avoid the agreed upon location specified in the forum selection clause." *United States ex rel. Turnkey Constr. Servs. v. Alacran Contracting, Ltd. Liab. Co.*, No. 13-cv-01654 TLN-CMK, 2013 U.S. Dist. LEXIS 173536, at *8-9 (E.D. Cal. Dec. 10, 2013) (compelling arbitration outside of the district pursuant to a forum-selection clause). "Such an interpretation of the FAA would seriously undermine the strong public policy in favor of enforcing arbitration agreements." *Id.* (citations omitted). Further, any private interest considerations

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

likewise, as a matter of law, weigh entirely in favor of arbitrating this case in Georgia, as that is what the parties agreed. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 581-82.

Simply put, the parties agreed to arbitrate the claims at issue here and agreed that any arbitration would take place in Atlanta, Georgia. The Court should therefore enforce the parties' agreement according to its terms, and transfer the case to the Northern District of Georgia so that a district court there may compel the parties to arbitration. And given the extensive overlap between the arbitrable claims and the few non-arbitrable claims, the Court should stay the non-arbitrable claims pending the resolution of the parties' arbitration proceedings if the Court does not dismiss them in order to avoid wasting time and resources addressing duplicative issues and the risk of inconsistent rulings. *See Randhawa*, 2010 U.S. Dist. LEXIS 113131, at *8-10 (staying both arbitrable and non-arbitrable claims pending the resolution of arbitration proceedings).[4]

### D. Alternatively, the Court Should Stay These Proceedings Pending the Outcome of Arbitration in Atlanta.

Should the Court decline to dismiss Plaintiffs' claims or transfer the case to the Northern District of Georgia, the Court should exercise its discretion under the FAA to nevertheless stay these proceedings to permit Plaintiffs to submit their disputes to arbitration in Atlanta. *See* 9 U.S.C. § 3 (authorizing courts to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"). Doing so would accomplish the same result as transferring the case to the Northern District of Georgia—namely, that the Court would be able to enforce the Arbitration Agreement according to its terms, including the non-severable, forum-selection clause designating Atlanta as the proper venue for arbitration. *See Randhawa*, 2010 U.S. Dist. LEXIS 113131, at *10 (staying case, but

---

[4] Neither Plaintiff's Amadi's claims, nor the claims against NextGear Capital are subject to the Arbitration Agreement, but should nevertheless be dismissed for the reasons set forth in Defendants' Motion to Dismiss, [ECF No. 23], and Reply in Support thereof [ECF No. 36].

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

not compelling the parties to arbitration, pursuant to an arbitration agreement containing a forum-selection clause pending the outcome of the parties' out-of-district arbitration); *Turnkey*, 2013 U.S. Dist. LEXIS 173536, at *10 (same).

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court compel Plaintiffs SD Motorwerks, EuroMotorwerks, Hagen, and Sorrento to arbitrate their claims in accordance to the terms of the Arbitration Agreement by dismissing this case and transferring the action to the Northern District of Georgia, or, in the alternative, staying the action pending the outcome of the parties' arbitration proceedings.

Dated: November 8, 2021                         Squire Patton Boggs (US) LLP


                                                By: */s/ Petrina A. McDaniel*
                                                Petrina A. McDaniel
                                                Eric J. Knapp
                                                Hannah Makinde

                                                *Attorneys for Defendants*
                                                *Manheim Riverside, Manheim Nevada,*
                                                *NextGear Capital, Danny Brawn, Steve*
                                                *Harmon, and Cesar Espinosa*