TROUTMAN PEPPER HAMILTON SANDERS LLP
Monique M. Fuentes, Bar No. 205501
monique.fuentes@troutman.com
Ross Smith, Bar No. 204018
ross.smith@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA  92614-2545
Telephone:    949.622.2700
Facsimile:     949.622.2739

Attorneys for Defendant
CARFAX, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO, LLC, a Montana LLC dba SAN DIEGO MOTORWERKS; CHIDIEBERE AMADI, an individual, RICHARD JOHN HAGEN dba EUROMOTORWERKS; RICHARD JOHN HAGEN, an individual; and CARRIE SORRENTO, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MANHEIM RIVERSIDE aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC; MANHEIM NEVADA aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC CARFAX, INC.; NEXTGEAR CAPITAL; DANNY BRAUN, an individual; CESAR ESPINOSA, an individual; STEVE HARMON, an individual; JERRY SIDERMAN, an individual; BMW OF NORTH AMERICA, LLC; CENTER AUTOMOTIVE, INC dba CENTER BMW; and DOES 1 through 200, <br><br> Defendants. | Case No.  21-cv-1205-H-JLB <br><br> **DEFENDANT CARFAX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** <br><br> Judge: Hon. Marilyn Huff <br> Date:      December 13, 2021 <br> Time;      10:30 A.M. <br> Ctrm:     TBD <br><br> Trial Date:          Not Set <br> Action Filed:     July 1, 2021 |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................... 1

    A.  The Plaintiffs ............................................................................................ 1

    B.  Carfax and its Vehicle History Reports ................................................... 2

    C.  The Contractual Relationship Between the Parties .................................. 2

    D.  The Complaint's Allegations ................................................................... 4

III. ARGUMENT ...................................................................................................... 5

    A.  Dismissal or Transfer Is Appropriate, As The Parties' Arbitration
        Agreement Must Be Enforced .................................................................. 5

        1.  The Parties' Have a Valid Arbitration Agreement ....................... 8

        2.  Plaintiffs' Claims Fall Within the Scope of The Arbitration
            Agreement .................................................................................. 10

IV. CONCLUSION .................................................................................................. 11

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

CARFAX, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES ISO MTC
21-CV-1205-H-JLB

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)..................................................................................6

*Clarium Capital Mgmt. LLC v. Choudhury*,
No C 08-5157SBA, 2009 U.S. Dist. LEXIS 14805 (N.D. Cal. Feb. 11, 2009)..................7, 11

*Cont'l Grain Co. v. Dant & Russell*,
118 F.2d 967 (9th Cir. 1941)....................................................................................7

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................6

*Fraher v. Verizon Wireless Servs., LLC*,
No. 21-cv-00763, 2021 U.S. Dist. LEXIS 115380 (S.D. Cal. June 21, 2021).........................6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)..................................................................................................7

*Luna v. Kemira Specialty, Inc.*,
575 F. Supp. 2d 1166 (C.D. Cal. 2008)......................................................................7

*Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.*,
473 U.S. 614 (1985)................................................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................................................................................................6

*Qualcomm Inc. v. Nokia Corp.*,
466 F.3d 1366 (Fed. Cir. 2006)...........................................................................7, 10

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)..................................................................................................7

*Shearson Express v. McMahon*,
482 U.S. 220 (1987)................................................................................................6

*Valley Power Sys. v. GE*,
No. 11-10726, 2012 U.S. Dist. LEXIS 26228 (C.D. Cal. Feb. 27, 2012)................................7

**Statutes**

9 U.S.C. § 1 (2009)................................................................................................6

9 U.S.C. § 2...........................................................................................................6

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

CARFAX, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES ISO MTC
21-CV-1205-H-JLB

**TABLE OF AUTHORITIES**
**(continued)**

Page

9 U.S.C. § 4 ..................................................................................................................6

29 U.S.C. § 1404 .........................................................................................................1

Federal Arbitration Act (9 U.S.C. § 1 et seq.)..............................................3, 5, 6, 9, 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 7

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

iii

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Carfax, Inc. ("Carfax") moves this Court to transfer the claims of Plaintiffs Dipito, LLC dba SD Motorwerks, Richard Hagan dba Euromotorwerks, Richard Hagan, and Carrie Sorrento to the Eastern District of Virginia pursuant to 29 U.S.C. § 1404 on the basis that the valid, enforceable arbitration agreement between the SD Motorwerks Plaintiffs and Carfax applies to all of the claims raised in the Complaint, and a governing forum selection clause vests exclusive jurisdiction in the Eastern District of Virginia, Alexandria Division.  The parties' agreement also requires that any arbitration hearing take place in Washington, DC.  Accordingly, the case should be transferred to allow the Eastern District of Virginia to compel Plaintiffs Dipito, LLC dba SD Motorwerks, Richard John Hagan dba Euromotorwerks, John Hagan, and Carrie Sorrento, to arbitrate their claims against Carfax.  Alternatively, the Court should dismiss the claims against Carfax pursuant to Rule 12(b)(6).[1]

## II.   FACTUAL BACKGROUND

### A.   The Plaintiffs

Plaintiffs San Diego Motorwerks ("SD Motorworks"), Richard John Hagen dba EuroMotorwerks ("EuroMotorwerks"), Richard Hagen ("Hagen"), and Carrie Sorrento ("Sorrento) (collectively, the "SD Motorwerks Plaintiffs") are all affiliated with SD Motorwerks. EuroMotorwerks was the prior business name of SD Motorwerks.  Both Hagen and Sorrento are owners, representatives and agents of SD Motorwerks and EuroMotorwerks who, at all relevant times, were acting as such.  Sorrento is also, according to the Complaint, the Co-Trustee and operator of SD Motorwerks.  Compl. ¶ 1.  Hagen was affiliated with EuroMotorwerks before its name was changed to SD Motorwerks, and is currently affiliated with SD Motorwerks.  Compl. ¶¶ 3-4, 52.

---

[1] On October 22, 2021, the Court ordered the Defendants who filed motions to dismiss raising arbitration agreements as a basis for the dismissal to also file motions to compel arbitration to fully develop the record. As such, Carfax submits this Motion to Compel in response to the Complaint, and incorporates by reference its Motion to Dismiss pursuant to 12(b) (ECF No. 28).

**B.** **Carfax and its Vehicle History Reports**

Carfax provides vehicle history information for buyers and sellers of used cars and light trucks. A Vehicle History Report ("VHR") contains vehicle information that is reported to Carfax from its data sources. Such information may include the vehicle's title information, flood damage history, total loss, accident history, odometer readings, number of owners, and accident indicators, among other information. The Carfax vehicle history database is a live, constantly evolving database of VIN-specific vehicle history data that has been electronically submitted from over 113,000 data sources, including motor vehicle agencies, rental and fleet vehicle companies, state inspection stations, fire and police departments, manufacturers, inspection companies and service and repair facilities. Some sources of data may include historical events dating back several years in a vehicle's history, and newly acquired sources may provide data that updates prior events on the VHR.

**C.** **The Contractual Relationship Between the Parties**

EuroMotorwerks first entered into a contractual relationship with Carfax on or about April 6, 2015, when Hagen signed an agreement on behalf of EuroMotorwerks to subscribe to Carfax's Advantage Program ("Advantage Agreement"). Advantage Agreement (attached hereto as Ex. 1); *see also* Decl. of M. Genovese at ¶ 4. Under the Advantage Program, dealers pay a flat monthly fee for unlimited access to VHRs. On March 8, 2017, Euromotorwerks also entered into an agreement with Carfax for Carfax's Enhanced Used Car Listings and Retargeting programs ("Retargeting Agreement"). Retargeting Agreement (attached hereto as Ex. 2); *see also* Decl. of M. Genovese at ¶ 5. The Retargeting Agreement specified that leads should be sent directly to Hagen. On October 10, 2018, Hagen signed another agreement with Carfax for Enhanced Used Car Listings ("UCL Agreement"). UCL Agreement (attached hereto as Ex. 3); *see also* Decl. of M. Genovese at ¶ 6.

On or about November 26, 2019, Hagen contacted Carfax to inform Carfax that EuroMotorwerks was changing its name to SD Motorwerks, and Carfax updated its records accordingly. Decl. of M. Genovese at ¶ 8. SD Motorwerks assumed the EuroMotorwerks contracts, including the Advantage Agreement, agreeing to be bound by it, paying the required

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CARFAX, INC.'S NOTICE AND
MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

monthly fee and assuming the benefits of the contract, namely, accessing a Carfax Advantage account and generating a large number of Carfax VHRs using that account. Indeed, all of the VHRs at issue in the Complaint were generated using that account, which SD Motorwerks has made no effort to cancel. Decl. of M. Genovese at ¶ 9.

When the SD Motorwerks Plaintiffs entered into the Advantage Agreement with Carfax, they agreed to be bound by the CARFAX Services Terms and Conditions.[2] Terms & Conditions ("T&C") (attached hereto as Ex. 4); *see* also Decl. of M. Genovese at ¶ 7. These Terms and Conditions contain several provisions applicable to this case.

First, the SD Motorwerks Plaintiffs expressly agreed to a forum selection clause that vests exclusive jurisdiction over disputes between the parties in the state courts of Fairfax County, Virginia or the U.S. District Court for the Eastern District of Virginia, Alexandria Division. T&C at ¶ 52(c).

Second, the SD Motorwerks Plaintiffs expressly agreed to mandatory arbitration with respect to "any claim, controversy, dispute, action, cause of action, issue, or request for relief arising out of or relating in any way to CARFAX products or services, or from any advertising for any such products or services . . ." T&C at ¶ 52(a). Specifically, the SD Motorwerks Plaintiffs agreed that "any Dispute will be resolved by binding arbitration, rather than in court, except that Customer may assert claims in small claims court if the claims qualify and CARFAX may pursue a collection action against Customer in court. Customer and CARFAX agree to give up any right to litigate a Dispute in a court or before a jury or to participate in a class action or representative action with respect to a Dispute." *Id.* at ¶ 52(a)(i). The parties agreed that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and federal arbitration law would apply. *Id.*

Third, the SD Motorwerks Plaintiffs agreed to a provision providing for limited liability:

> Customer acknowledges that CARFAX is collecting data from public records and other sources for use in the VHS and that this data may contain errors and omissions. CARFAX does not guarantee the correctness or completeness of the VHS or the CARFAX Reports and CARFAX will not be liable for any loss or

---

[2] All three agreements state that they are subject to the CARFAX Services Terms and Conditions, available online at http://www.carfaxfordealers.com/service-terms-and-conditions/.

DEFENDANT CARFAX, INC.'S NOTICE AND
MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

injury caused, in whole or part, either by its procuring, compiling, collecting, interpreting or making available the VHS. Customer understands that not all information is available for all states and that CARFAX does not have access to some information that may be available to other parties. Customer also understands there may be a period of time between receipt of certain information by CARFAX and its inclusion of such information into the VHS. Customer acknowledges that the VHS does not provide any conclusions regarding the condition of any vehicle, and Customer assumes full responsibility with respect to its decisions and transactions using the VHS. Customer recognizes that CARFAX's sole obligation in the case of erroneous data, when notified in writing by Customer of such erroneous data, is correction of the record in question. CARFAX MAKES AND CUSTOMER RECEIVES NO WARRANTIES, EXPRESS OR IMPLIED, AND CARFAX EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Customer agrees that CARFAX's liability for damages, regardless of the form of action, shall not exceed the amount paid by Customer for the individual CARFAX Report from the VHS in question (or, in the case of Customers in the CARFAX Advantage Program, the monthly fee paid by the affected Location for the month in which the individual CARFAX Report in question was run).

*Id.* at ¶ 12.

### D.    The Complaint's Allegations

Plaintiffs' Complaint asserts seven separate causes of action against Carfax relating to the purchase of three used vehicles by the SD Motorwerks Plaintiffs at auctions.  Plaintiffs allege that after purchasing the vehicles, they discovered problems that were not previously disclosed.  The majority of the allegations in the Complaint relate to Defendants other than Carfax.  The only alleged involvement by Carfax was SD Motorwerks' alleged review of a Carfax VHR prior to purchase for two of the three vehicles.

Plaintiffs allege that on or about June 7, 2019, SD Motorwerks purchased a 2009 Chevrolet Corvette Z06 with Vehicle Identification Number ("VIN") 1G1YZ26E295110239 ("Subject Vehicle No. 3").  Compl. ¶ 73.  Plaintiffs allege that on June 6, 2019,[3] SD Motorwerks generated a Carfax Vehicle History Report ("VHR") for Subject Vehicle No. 3 that showed the Vehicle had been through auctions in several states.  *Id.* ¶ 75.  Plaintiffs allege that prior to purchase, SD Motorwerks obtained an Insight Condition Report from Manheim that failed to

---

[3] The date on the VHR itself shows the VHR was generated on June 7, 2019, not June 6.  *See* Compl., Ex. Z.

DEFENDANT CARFAX, INC.'S NOTICE AND
MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

disclose damage to the vehicle.  *Id.* ¶¶ 74, 78.  Plaintiffs do not identify what, if any, information they believe should have been included in the Carfax VHR.  Notably, the VHR does not state that the vehicle was never damaged.  Instead, Complaint Exhibit Z is clear that no accidents or damage were <u>reported</u> to Carfax.

Plaintiffs next allege that on January 28, 2020, SD Motorwerks purchased a 2016 BMW M6 with VIN WBS6J9C53GD934586 ("Subject Vehicle No. 1").  Plaintiffs allege that on the same day, SD Motorwerks generated a VHR for the vehicle.  Plaintiffs admit that the VHR (Complaint, Ex. B) reported that the vehicle had sustained damage on at least three occasions. Compl. ¶ 51.  However, Plaintiff misrepresents the VHR as stating these damage events were "minor."  The VHR (Complaint, Ex. B) does not use that term, nor any other description, to describe the severity of the damage.  Plaintiffs allege that after purchasing the vehicle, they learned it had issues not disclosed by Manheim prior to sale.  Compl. ¶¶ 35-50.  Plaintiffs allege that Complaint Exhibit B "failed to adequately report certain damages which Plaintiff relied upon . . ." *Id.* ¶ 59.  Plaintiffs also allege that a VHR generated nearly a year after the purchase of the vehicle, on January 13, 2021, was "revised . . . to disclose 'moderate' damages not previously reported."  *Id.*  However, nowhere in the Complaint do Plaintiffs specify what damages they believe were not adequately reported or what changes to the VHR they consider problematic.

Plaintiffs' final allegations relate to SD Motorwerk's February 28, 2020 purchase of a 2008 Bentley Continental GT Speed with VIN SCBCP73W38C057291 ("Subject Vehicle No. 2").  Plaintiff makes no specific allegations as to Carfax with respect to Subject Vehicle No. 2. Rather, Plaintiffs allege that after purchasing the vehicle at auction, they discovered water and other damage.  However, they admit that they did not generate a VHR for the vehicle until nearly seven months after purchase, on September 15, 2020, and therefore could not have relied upon it.

## III.  <u>ARGUMENT</u>

### A.  **Dismissal or Transfer Is Appropriate, As The Parties' Arbitration Agreement Must Be Enforced**

This is a straightforward motion to enforce the contract between the SD Motorwerks Plaintiffs and Carfax.  The Federal Arbitration Act ("FAA") governs the enforceability of

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

DEFENDANT CARFAX, INC.'S NOTICE AND MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

arbitration agreements in contracts involving interstate commerce.  *See* 9 U.S.C. § 1 (2009).  Section 2 of the FAA provides that a written contractual arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court...for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement."  *Id.* at § 4.  Further, given the liberal federal policy favoring arbitration, the FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Arbitration agreements are generally presumed to be valid and enforceable, and arbitration must be compelled where there is a valid agreement to arbitrate and the agreement encompasses the claims at issue.  *Chiron Corp.*, 207 F. 3d at 1130; *Shearson Express v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.,* 473 U.S. 614, 626-27 (1985).

Where a party attempts to enforce an arbitration agreement, a court should consider only two issues: (1) does a valid arbitration agreement exist between the parties and (2) does the dispute at issue fall within the scope of the agreement."  *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  A court may not consider the merits of the underlying case, but "may consider the pleadings, the documents of uncontested validity, and affidavits submitted by either party."  *Fraher v. Verizon Wireless Servs., LLC*, No. 21-cv-00763, 2021 U.S. Dist. LEXIS 115380, at *5 (S.D. Cal. June 21, 2021).  Because of the strong policy favoring arbitration, any doubts are to be resolved in favor of the party moving to compel arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).

Where the parties have delegated questions about arbitrability to the arbitrator, the Court need not reach the second inquiry regarding the scope of the agreement.  Where a contract explicitly incorporates rules that empower an arbitrator to decide issues of arbitrability, this serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

6

arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *Valley Power Sys. v. GE*, No. 11-10726, 2012 U.S. Dist. LEXIS 26228, at \*11 (C.D. Cal. Feb. 27, 2012) ("[w]hen an arbitration agreement demonstrates a clear intent to delegate arbitrability to the arbitrators, a court will decide arbitrability only if the party opposing arbitration successfully challenges the delegation provision itself."). Where the parties to an arbitration agreement have agreed that they will arbitrate under American Arbitration Association ("AAA") rules, this evidences an "unmistakable intent" to delegate the issue of determining arbitrability to the arbitrator rather than a court. *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (by agreeing to arbitrate under AAA rules, parties evidenced their unmistakable intent to delegate the issue of determining arbitrability to an arbitrator); *Clarium Capital Mgmt. LLC v. Choudhury*, No C 08-5157SBA, 2009 U.S. Dist. LEXIS 14805, \*13 (N.D. Cal. Feb. 11, 2009) (incorporation of AAA rules "is clear and unmistakable" "intent to delegate the issue of arbitrability to the arbitrator").

The party seeking to avoid arbitration bears the burden of demonstrating the arbitration agreement is invalid or does not include the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Finally, Ninth Circuit case law precludes the Court from compelling arbitration outside of this District. However, the Court should either dismiss the claims of the SD Motorwerks Plaintiffs pursuant to Rule 12(b)(6) or enforce the binding, enforceable arbitration agreement by transferring this case to the Eastern District of Virginia, Alexandria Division in order to allow the court there to compel arbitration in the contractually agreed upon jurisdiction. *See Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967, 969 (9th Cir. 1941); *see also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) ("where a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6)."). Dismissal or transfer will prevent the SD Motorwerks Plaintiffs from evading the agreed-upon contractual forum selection clause.[4]

---

[4] Should the Court decline to dismiss the SD Motorwerks Plaintiffs' claims or transfer the case, it should exercise its discretion to stay these proceedings while the parties proceed with arbitration in the required forum.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CARFAX, INC.'S NOTICE AND
MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### 1.     The Parties' Have a Valid Arbitration Agreement

The SD Motorwerks Plaintiffs have entered into three contracts with Carfax, beginning in April 2015.  First, EuroMotorwerks (now SD Motorwerks) entered into a contractual relationship with Carfax on or about April 6, 2015 to subscribe to Carfax's Advantage Program.  *See* Ex. 1 (Advantage Agreement); *see also* Decl. of M. Genovese at ¶ 4.  This agreement was signed by Plaintiff Richard Hagan, and later assumed by SD Motorwerks when EuroMotorwerks changed its name.  Under the Advantage Program, automobile dealers pay a flat monthly fee for unlimited access to VHRs.  The VHRs at issue in this litigation were generated by SD Motorwerks using the Advantage account created pursuant to the April 6, 2015 contract.

Second, on March 8, 2017, Euromotorwerks entered into an agreement with Carfax for Carfax's Enhanced Used Car Listings and Retargeting programs.  *See* Ex. 2 (Retargeting Agreement); *see also* Decl. of M. Genovese at ¶ 5.  Third, on October 10, 2018, Hagen signed another agreement with Carfax for Enhanced Used Car Listings.  *See* Ex. 3 (UCL Agreement); *see also* Decl. of M. Genovese at ¶ 6.

All three of these agreements, including the Advantage Agreement, state unambiguously that the signing party (in the case of the Advantage Agreement, Richard Hagan), agrees that he or she "understand[s] that" the Application is "subject to the CARFAX Services Terms and Conditions (available online at http://carfaxfordealers.com/service-terms-and-conditions/ or by calling 855-845-5733)."   The signatory represents that he or she is duly authorized to execute the Application on behalf of Customer and bind Customer to the terms of both the Application and the CARFAX Services Terms and Conditions.  *See* Ex. 1 (Advantage Agreement); Ex. 4 (Carfax Service Terms and Conditions).

Section 52(a) of the Terms and Conditions, to which Plaintiffs expressly agreed to be bound, states:

> a. **MANDATORY BINDING INDIVIDUAL ARBITRATION INSTEAD OF COURT; CLASS ACTION WAIVER.**  With respect to any claim, controversy, dispute, action, cause of action, issue, or request for relief arising out of or relating in any way to CARFAX products or services, or from any advertising for any such products or services, including any question regarding the existence, validity, or termination of the Agreement and/or these

DEFENDANT CARFAX, INC.'S NOTICE AND MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

CARFAX Services Terms and Conditions, as well as any issue regarding the interpretation of this Section 52 (a "Dispute"), Customer and CARFAX agree as follows:

i. Customer and CARFAX both agree that any Dispute will be resolved by binding arbitration, rather than in court, except that Customer may assert claims in small claims court if the claims qualify and CARFAX may pursue a collection action against Customer in court.  Customer and CARFAX agree to give up any right to litigate a Dispute in a court or before a jury or to participate in a class action or representative action with respect to a Dispute. This also includes any claims that arose before Customer accepted any agreement or these CARFAX Services Terms and Conditions, regardless of whether prior versions of the CARFAX Services Terms and Conditions required arbitration. The Federal Arbitration Act (9 U.S.C. § 1 et seq.) and federal arbitration law apply to this Section 52(a).

ii. **Customer and CARFAX agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, representative, consolidated or mass action.** Customer shall not join or consolidate claims or arbitrate or otherwise participate in any claim as a class representative, class member or in a private attorney general capacity. If this provision is found to be unenforceable, then the entirety of this Section 52(a) shall be null and void.

iii. If Customer has a Dispute and elects to seek arbitration or file in small claims court, Customer must first send to CARFAX, by certified mail, a written notice of the Dispute that (a) describes the nature and basis of the Dispute; (b) sets forth the specific relief sought and (c) includes a physical address and email address where Customer may be reached ("Notice"). The Notice must be addressed to: General Counsel, CARFAX, Inc., 5860 Trinity Parkway, Suite 600, Centreville, VA 20120 ("Notice Address"). If CARFAX and Customer do not reach an agreement to resolve the Dispute within 60 days after the Notice is received, Customer or CARFAX may commence an arbitration proceeding or file in small claims court.

iv. The arbitration will be governed by the AAA's then current Commercial Arbitration Rules, as modified by these CARFAX Services Terms and Conditions, and will be administered by the AAA. In the event of any conflict between these CARFAX Services Terms and Conditions and the AAA Commercial Arbitration Rules, the terms of these CARFAX Services Terms and Conditions will apply. If the value of the claims is less than or equal to $50,000, the Dispute will be heard by a sole arbitrator, appointed in accordance with the AAA Commercial Arbitration Rules. If the value of the claims is greater than $50,000, the Dispute will be heard by a panel of three arbitrators, with each party appointing an arbitrator and the party-appointed arbitrators selecting a third arbitrator to serve as the chairperson. Any hearing shall take place in Washington, D.C.

v. The arbitrator(s) shall apply the law specified in Section 52(b) of

these CARFAX Services Terms and Conditions. The arbitrator(s) can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief), and must follow the terms of these CARFAX Services Terms and Conditions as a court would. Except for any relief required by statute, the arbitrator(s) may not award relief in excess of or contrary to what the Agreement provides or order consolidation or arbitration on a class wide or representative basis.

vi. Any arbitration will be confidential. Neither Customer, CARFAX, the AAA nor the arbitrator(s) may disclose the existence, content (including any oral or written submissions) or results of any arbitration, except as may be required by law or for purposes of enforcing or challenging the arbitration award.

vii. Judgment on any arbitration award may be entered in any court having proper jurisdiction. Customer and CARFAX agree that arbitration is final and binding and subject to only very limited review by a court. Customer and CARFAX waive the right to any form of appeal, review or recourse to any court or other judicial authority.

Given the contractual Advantage Agreement between the SD Motorwerks Plaintiffs and Carfax, and the unambiguous arbitration agreement agreed to by both parties, it is clear that a valid arbitration agreement exists and must be enforced.

### 2.    Plaintiffs' Claims Fall Within the Scope of The Arbitration Agreement

Because the arbitration agreement delegates questions about arbitrability to an arbitrator, the Court need not reach this issue.  The arbitration agreement in this case delegates questions of arbitrability to the arbitrator by (1) expressly stating that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and federal arbitration law apply, (2) defining a "Dispute" to include any question regarding "the existence, validity, or termination of the Agreement and/or these CARFAX Services Terms and Conditions, as well as any issue regarding the interpretation of this Section 52," and (3) incorporating the AAA Commercial Arbitration Rules.  Specifically, Rule 7(a) of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Commercial Arbitration Rules at R-7(a) (https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf). Courts have consistently held that an agreement to arbitrate under the AAA rules evidences an "unmistakable intent" to delegate issues of arbitrability to an arbitrator.  *Qualcomm*, 466 F.3d at

DEFENDANT CARFAX, INC.'S NOTICE AND MOTION TO COMPEL ARBITRATION
21-CV-1205-H-JLB

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1373; *Clarium*, No C 08-5157SBA, 2009 U.S. Dist. LEXIS 14805, at *13.

However, even if this were not the case, it is clear that the claims of the SD Motorwerks Plaintiffs fall within the scope of the arbitration agreement, which covers "any claim, controversy, dispute, action, cause of action, issue, or request for relief arising out of or relating in any way to CARFAX products or services, or from any advertising for any such products or services, including any question regarding the existence, validity, or termination of the Agreement and/or these CARFAX Services Terms and Conditions, as well as any issue regarding the interpretation of this Section 52." Ex. 4. Plaintiffs' claims, as alleged in the Complaint, all relate to Carfax VHRs generated by the SD Motorwerks Plaintiffs pursuant to the Advantage Agreement, and therefore the claims arise from or relate to Carfax products or services. This is also evident from Section 12 of the Terms and Conditions, which includes disclaimers and provides for limited liability regarding the information contained in VHRs, the exact issue raised by Plaintiffs here. Accordingly, the claims of the SD Motorwerks Plaintiffs are all subject to arbitration.

**IV.  CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court grant Carfax's Motion to Compel Arbitration as to the SD Motorwerks Plaintiffs.

Dated: November 8, 2021                    TROUTMAN PEPPER HAMILTON
                                           SANDERS LLP


                                           By:/s/ Monique M. Fuentes
                                           _____
                                               Monique M. Fuentes
                                               Ross Smith
                                               Attorneys for Defendant
                                               CARFAX, INC.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545