TROUTMAN PEPPER HAMILTON SANDERS LLP
Monique M. Fuentes, Bar No. 205501
monique.fuentes@troutman.com
Ross Smith, Bar No. 204018
ross.smith@troutman.com
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
CARFAX, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO, LLC, a Montana LLC dba SAN DIEGO MOTORWERKS; CHIDIEBERE AMADI, an individual, RICHARD JOHN HAGEN dba EUROMOTORWERKS; RICHARD JOHN HAGEN, an individual; and CARRIE SORRENTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MANHEIM RIVERSIDE aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC; MANHEIM NEVADA aka COX AUTO INC. aka MANHEIM INVESTMENTS INC. aka COX AUTO AUCTIONS, LLC CARFAX, INC.; NEXTGEAR CAPITAL; DANNY BRAUN, an individual; CESAR ESPINOSA, an individual; STEVE HARMON, an individual; JERRY SIDERMAN, an individual; BMW OF NORTH AMERICA, LLC; CENTER AUTOMOTIVE, INC dba CENTER BMW; and DOES 1 through 200,<br><br>Defendants. | Case No. 21-cv-1205-H-JLB<br><br>**DEFENDANT CARFAX, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Judge: Hon. Marilyn Huff<br><br>Date: December 13, 2021<br>Time: 10:30 a.m.<br>Ctrm: TBD<br><br>Trial Date: Not Set<br>Action Filed: July 1, 2021 |

Defendant Carfax, Inc. ("Carfax") submits the following Reply to Plaintiff's Opposition to Defendant's Motion to Compel Arbitration:

## I. INTRODUCTION

The agreements between Carfax and the SD Motorwerks Plaintiffs are valid and enforceable under California law. Despite their assertions to the contrary, EuroMotorwerks is a named Plaintiff in this action. And Plaintiffs fail to show that the agreements lacked mutual assent, were adhesive, or were unconscionable. Additionally, Plaintiffs' Opposition to Carfax's Motion to Dismiss (Dkt. 37) made clear that the Court must dismiss Plaintiffs' first, second, third, and sixth causes of action. Accordingly, Plaintiff's lengthy discussion of the CLRA and Magnuson-Moss Warranty Act are irrelevant to the question of whether the Court should compel arbitration. Finally, arbitration will allow Plaintiffs all available statutory rights.

## II. ARGUMENT

### A. The Mandatory Arbitration, Choice of Law, and Forum Selection Clauses Are Valid and Enforceable

The SD Motorwerks Plaintiffs previously agreed to mandatory arbitration, choice of law, and forum selection provisions with respect to all of the claims asserted in the Complaint. They now try to evade their express agreement by claiming (1) that EuroMotorwerks is not a plaintiff; (2) the agreement lacked mutual assent, and (3) that the contract was one of adhesion and unconsionable and therefore should not be enforced. None of these arguments has merit.

#### 1. EuroMotorwerks is a Named Plaintiff

Plaintiffs' claim that EuroMotorwerks is not a party to the case and therefore any information about it is "irrelevant" is belied by the Complaint itself: i) the caption lists one of the Plaintiffs as "Richard John Hagen dba EuroMotorwerks"; and ii) ("Plaintiff RICHARD JOHN HAGEN dba EUROMOTORWERKS . . . is a business that is now inactive."). Compl. ¶ 3. Moreover, the Complaint alleges that EuroMotorwerks was the entity that purchased Subject Vehicle No. 3. Compl. ¶ 79. Plaintiffs do not dispute that EuroMotorwerks was the predecessor entity to SD Motorwerks (the dba of Dipito, LLC). As explained in Carfax's Motion, EuroMotorwerks notified Carfax in 2019 that it was changing its name to SD Motorwerks. Decl.

of M. Genovese at ¶ 8. SD Motorwerks assumed the EuroMotorwerks contract, agreeing to be bound by it, paying the required monthly fee and assuming the benefits of the contract, namely, accessing a Carfax Advantage account and generating a large number of VHRs using the account. Indeed, all of the VHRs at issue in the Complaint were generated using that account, which SD Motorwerks has made no effort to cancel. SD Motorwerks cannot now claim that it cannot be bound by the contract it assumed, paid for, and from which it derived significant benefit.

### 2. The Agreement Did Not Lack Mutual Assent

In California, mutual assent to enter into a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Harris v. TAP Worldwide, LLC* (2016) 248 Cal. App. 4th 373, 381. Mutual assent is "to be ascertained solely from the contract that is reduced to writing, if possible." Cal. Civ. Code § 1639; *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) (citation omitted). The contract language controls if it is clear and explicit. Cal. Civ. Code § 1638; *Martinez*, 51 Cal. App. 5th at 967.

That a contractual clause is located in a separate document does not negate mutual assent or a valid contract. In *Wolschlager v. Fidelity National Title Ins. Co.*, 111 Cal. App. 4th 784 (2003), the plaintiff purchased an insurance policy "on the basis of a preliminary report he received and approved." *Id.* at 787. The report did not itself state that the policy had an arbitration clause, but the policy did contain such a provision. *Id.* The court upheld the arbitration clause, holding that the report sufficiently incorporated the arbitration clause by reference. The court reasoned that "'[i]t is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document.'" *Id.* at 790. For another document to be sufficiently incorporated, the reference(s) to the other document must be "clear and unequivocal," the reference "must be called to the attention of the other party and he must consent thereto," and the terms of the incorporated document "must be known or easily available to the contracting parties." *Id.* (citation omitted). The court found that the report specifically identified the document and told the recipient where to find it. Per the court, "There is no authority requiring the defendant to specify that the incorporated document contains an arbitration

clause in order to make the incorporation valid. All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document." *Id.* Further, even if the plaintiff "did not know about the arbitration clause, the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it. Nothing further was needed to bind the plaintiff." *Id.*

Plaintiffs do not state any alleged facts in support of their argument that the agreement lacked mutual assent. They do quote caselaw that states an "offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." However, they fail to explain why the relevant provisions were "inconspicuous" (they were not) or why the contract lacked an obvious contractual nature (it did not). As established in *Wolschlager*, a contractual agreement may incorporate another document by reference so long as the reference(s) to the other document are clear and unequivocal, the reference are called to the attention of the other party who consents thereto, and the terms of the incorporated document must be known or easily available to the contracting parties. Further, an agreement need not expressly state that an incorporated document contains an arbitration clause. *Wolschlager*, 111 Cal. App. 4th at 791.

Here, Plaintiffs admit that the Advantage agreement signed by Richard Hagen states "I understand that this Application is subject to the CARFAX Services Terms and Conditions (available online at http://carfaxfordealers.com/service-terms-and-conditions/ or by calling 855-845-5733). I represent that I am duly authorized to execute this Application on behalf of Customer and bind Customer to the terms of this Application and the CARFAX Services Terms and Conditions." Opp. to Motion to Dismiss at ¶ 22; *see also* Motion Ex. 1. Accordingly, the Terms and Conditions were clearly and unequivocally referenced in the agreement and called to the attention of Mr. Hagen. Mr. Hagen, by signing, represented that he understood he was binding them to the agreement, including the Terms and Conditions. Further, the clearly and unequivocally incorporated Terms and Conditions were easily accessible online or by phone. *Id.*

Applying the objective standard (i.e., the reasonable meaning of the parties' words and acts), it is clear that the parties mutually assented to the agreement, including the Terms and

Conditions as a whole, as well as the individual arbitration, choice of law, and forum selection clauses. Because the contractual language is clear and explicit, it controls. Cal. Civ. Code § 1638; *Martinez*, 51 Cal. App. 5th at 967.

### 3. The Agreement Is Not An Unconscionable Adhesion Contract

Carfax disagrees that the agreement at issue was adhesive. But even assuming, *arguendo*, that it was, contracts of adhesion are "indispensable facts of modern life that are generally enforced." *Baltazar v. Forever 21, Inc.*, 62 Cal. 1237, 1244 (2016). Where a party seeks to invalidate an agreement on the basis that it is unconscionable, they bear the burden of establishing that the agreement is unconscionable. *Jialu Wu v. iTalk Glob. Communs., Inc.*, No. CV 20-7150, 2020 U.S. Dist. LEXIS 250121, at *19 (C.D. Cal. Oct. 21, 2020). A "contract is not unconscionable merely because the transaction involved a standardized legal form and the complaining party has less bargaining strength." *Connick v. Teachers Ins. & Annuity Ass'n of Am.*, 784 F.2d 1018, 1021 (9th Cir. 1986).

To show unconscionability, a plaintiff must show that the agreement was both procedurally and substantively unconscionable. *Appel v. Concierge Auctions, LLC*, No. 17-cv-02263, 2018 U.S. Dist. LEXIS 63046, at *19 (S.D. Cal. Apr. 13, 2018). Procedural unconscionability concerns the "manner in which the contract was negotiated and the respective circumstances at that time, focusing on the level of oppression and surprise involved in the agreement." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 955 (N.D. Cal. 2015). Oppression "addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.' *Id.* "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* Where a contract is adhesive, this may be sufficient to establish some degree of procedural unconscionability, but this does not mean the contract cannot be enforced, but rather that a court will consider the "substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.*

Substantive unconscionability has been defined as whether the terms of the agreement are so one-sided as to "shock the conscience." *Id.* at 959 (citations omitted). Not all one-sided contract provisions are unconscionabale. *Id.* Unconscionability "requires a substantial degree of

unfairness beyond 'a simple old-fashioned bad bargain.'" *Id.* (citation omitted). An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Id.* (citations omitted).

Plaintiffs make no showing of adhesion or procedural or substantive unconscionability. They argue only that Mr. Hagen is a lay person with "no legal training" with "no recollection of ever reading the CARFAX Service Terms and Conditions." Opp. at 8. They further claim that he had no "real opportunity" to negotiate any of the Terms and Conditions and that neither Hagen nor Sorrento "has any recollection of the mandatory arbitration and choice of law provisions." *Id.* They then state in conclusory fashion (citing to a declaration that does not exist) that plaintiffs would suffer "substantial injustice by being forced to Arbitrate or transfer venue to Virginia." *Id.*

Plaintiffs do not effectively allege an imbalance of power between the Plaintiffs and Carfax. Plaintiff SD Motorwerks is not an inexperienced or unsavvy consumer – it is a business entity with extensive experience in large financial transactions, vehicle purchases, and contracting. *See Appel*, 2018 U.S. Dist. LEXIS at *22-23 ("Plaintiffs fail to demonstrate they were the weaker party considering their level of business sophistication and past experiences with similar . . . transactions). Plaintiffs do not assert that they attempted to negotiate and were refused. They do not allege they were given a "take it or leave it" ultimatum. Similarly, they do not explain how the agreement oppressed them, or what about it surprised them. Again, the Terms and Conditions were referenced just above the signature line – there can be no dispute that the signatories understood they were agreeing to the Terms and Conditions (whether or not they read them). *See Jialu Wu*, 2020 U.S. Dist. LEXIS 250121 at *20 ("[t]hese contentions do not support procedural unconscionability because Plaintiff easily could have, and would have, known of the arbitration provision if [Plaintiff] had read the Agreement . . ."). And Plaintiffs point to nothing in the agreement or the arbitration, choice of law, or forum selection provisions themselves that is so one-sided as to "shock the conscience." *Loewen*, 129 F. Supp. 3d at 959.

Plaintiffs' argument that Mr. Hagen is not legally astute and that he and Ms. Sorrento did not remember reading the relevant provisions is without merit. The agreement makes clear that the Terms and Conditions are incorporated into the agreement and that signing binds the

dealership (*i.e.*, the signature is the verification that the signatory has read and agrees to the terms). The fact that a party to a contract is not "legally astute," even if this were true, does not absolve him or her from reviewing the contract, nor is it grounds to deem a contract unenforceable. The SD Motorwerks Plaintiffs entered into three contracts with the same language. They had multiple opportunities to review the agreements, consult an attorney if they felt it necessary, and/or ask questions if they needed to. Further, it is a cardinal rule of contract law that "a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement." *Desert Outdoor Adver. v. Superior Court*, 196 Cal. App. 4th 866, 872-73 (2011) (citations omitted). Similarly, courts routinely hold that a failure to recall accepting an agreement's terms is an insufficient basis to invalidate an agreement. *See Wolf v. Tsg Wealth Mgmt.*, No. 21-00100, 2021 U.S. Dist. LEXIS 163084, at *7 (C.D. Cal. Apr. 8, 2021).

For these reasons, Plaintiffs have not shown adhesion or unconscionability.

### 4. Plaintiffs Fail to Show Substantial Injustice

California strongly favors enforcement of choice-of-law provisions and "has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate." *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 917 (2001) (citations omitted). Under California law, a party claiming adhesion can avoid enforcement of a choice-of-law provision where enforcement would result in substantial injustice. *Id.* The Ninth Circuit held a company's location in another state is a sufficient nexus to a contract to enforce a choice-of-law provision. *Tompkins v. 23andMe, Inc.*, 834 F.3d 1019, 1032 (9th Cir. 2016) (company's principal place of business was "sufficient nexus to the contract.").

Here, Plaintiffs argue only that they would suffer "substantial injustice by being forced to Arbitrate or transfer venue to Virginia . . . a state that is not substantially connected to any of the allegations of the complaint." Opp. at 8. This conclusory statement is insufficient. Choice-of-law and forum selection clauses are generally upheld, even where they require a party to litigate in another state. And it is untrue that Virginia has no connection to the Complaint – Carfax is located in Virginia and Plaintiffs allege that Carfax participated in a "scheme" from Virginia.

For these reasons, Plaintiffs have not met their burden of showing substantial injustice.

### B. Arbitration Will Allow Plaintiffs All Available Statutory Rights

The SD Motorwerks Plaintiffs argue that their claims under the CLRA, the Magnuson-Moss Warranty Act, §17200 of the UCL, and RICO are not suitable for arbitration because "Plaintiff will not be able to vindicate his statutory rights" in arbitration. Opp. at 8. This argument misrepresents the law, ignores the plain language of the arbitration agreement (which allows the arbitrator(s) to award the same damages and relief as a court, including injunctive and declaratory relief), and ignores the fact that Plaintiffs have already conceded in their prior briefing in this case that their claims against Carfax under the CLRA and Magnuson-Moss Warranty Act must be dismissed as to the SD Motorwerks Plaintiffs.[1] *See* Dkt. 37.

Plaintiffs' argue that arbitration "would deny Plaintiffs' statutory rights to seek damages under the statutory causes of action alleged in the complaint." Opp. at 8-9. Plaintiffs do not identify with any specificity the statutory rights they believe to be at issue. However, with respect to the CLRA, Plaintiffs note that the statute allows for the recovery of various types of damages, injunctive relief, restitution, and attorney's fees. With respect to the Magnuson-Moss Warranty Act, Plaintiffs contend that the statute contains "no provision for jurisdiction to be delegated to Mediators or Arbitrators." Opp. at 9. Plaintiffs note that under the Act, consumers may be entitled to recover costs and expenses, including attorney's fees, as well as obtain injunctive relief. Plaintiff argues that "any such equitable relief sought as a benefit to the public is not arbitrable" and that "any equitable remedies must be heard and decided by the district court." Plaintiffs similarly argue that the UCL authorizes equitable remedies "such as injunctions and restitution" and allege, with no support, that these remedies "must be ordered by a court and not by an arbitrator." Opp. at 10. Finally, Plaintiffs argue, in direct contravention of Supreme Court precedent, that RICO claims are not suitable for arbitration. Opp. at 10-11.

As a preliminary matter, the arbitration agreement expressly states: "The arbitrator(s) can award on an individual basis the same damages and relief as a court (including injunctive and

---

[1] While Plaintiffs' have admitted that the CLRA and Magnuson-Moss claims as to the SD Motorwerks Plaintiffs must be dismissed, Carfax addresses their arguments with respect to those claims here for the sake of completeness.

declaratory relief). . ." T&C, § 52(a)(v).  There is nothing in the Terms and Conditions (nor do Plaintiffs point to anything) that would preclude injunctive or other equitable relief.

In addition, Plaintiffs' vague arguments regarding statutory rights ignore long-standing precedent that holds the opposite of what Plaintiffs argue here.  It is a cardinal rule that an arbitration provision in a contract is valid and enforceable, except on grounds that exist at law or in equity for the revocation of the contract.  *Pinnacle Musuem Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal. 4th 223, 234-235.  In fact, the Federal Arbitration Act ("FAA") preempts state laws that require a judicial forum for claims the parties agreed to resolve by arbitration.  *Id.* at 235.

Plaintiffs cite to case law that is no longer applicable, including *Broughton v. Cigna HealthPlans of Calif.*, 21 Cal. 4th 1066 (1999) and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (2003) to support the argument that "equitable relief sought as a benefit to the public is not arbitrable."  Opp. at 9.  But the so-called "Broughton-Cruz rule" was overruled by the Ninth Circuit in 2013.  *See Ferguson v. Corinthian Colls.*, 733 F.3d 928, 934 (9th Cir. 2013) (citation omitted).  The Ninth Circuit held that the rule was preempted by the FAA, which preempts contrary state law, including the "power of the states to require a judicial forum for the resolution of claims which they contracting parties agreed to resolve by arbitration."  *Ferguson*, 733 F.3d at 932.  The Ninth Circuit stated that, accordingly, it is "prohibited from applying any state statute that invalidates an arbitration agreement" and cannot "apply any other state law that 'prohibits outright the arbitration of a particular type of claim.'"  *Id.*  The Ninth Circuit concluded that the "FAA preempts California's Broughton-Cruz rule that claims for public injunctive relief cannot be arbitrated."  *Id.* at 938.

The other cases cited by Plaintiff are cases from other jurisdictions that do not apply here, including *National Supermarkets Association v. American Express Travel Related Services Co. (In re American Express Merchants' Litigation)*, 634 F.3d 187 (2d Cir. 2011), *Kristian v. Comcast*, 446 F.3d 25 (1st Cir. 2006), and *NAACP of Camden East v. Foulke Management Corp.*, 421 N.J. Super. 404 (2011).  These cases involve class action and other type of waivers contained in arbitration agreements that are not at issue here, as this is not a class action, nor does this case

involve an arbitration agreement that limits the types of recovery that can be made in arbitration.[2]

Indeed, the Ninth Circuit has expressly rejected *Supermarket*s.  *See Morris v. Ernst & Young LLP*, No. C-12-04964 RMW, 2013 U.S. Dist. LEXIS 95714, at *17-19 (N.D. Cal. July 9, 2013).

Finally, Plaintiffs' argument is belied by numerous cases holding that claims under the CLRA, Magnuson-Moss Warranty Act, §17200 of the UCL, and RICO can be arbitrated.  *See, e.g., Ferguson*, 733 F.3d 928 (allowing arbitration of CLRA and §17200 claims); *Zeto v. BMW of N. Am., LLC*, No. 20-cv-1380-GPC-KSC, 2020 U.S. Dist. LEXIS 213947, at *15 (S.D. Cal. Nov. 16, 2020) (compelling arbitration of Magnuson-Moss Warranty Act claim, as well as claims under the Song-Beverly Act, the California Business and Professions Code, and other claims); *Shearson / Am. Express v. McMahon*, 482 U.S. 220 (1987) (allowing arbitration of RICO claim).

For these reasons, Plaintiffs have not shown that any of their statutory rights cannot be addressed in arbitration.

### C.  Arbitration Will Allow Plaintiffs All Available Statutory Rights

Plaintiffs' final argument is that Plaintiffs have individual statutory rights that do not preclude a subsequent lawsuit.  Plaintiffs do not identify what statutory rights they believe are at issue.  Nor do Plaintiffs cite to any applicable case law.  Instead, Plaintiffs cite to the overturned *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) and its "progeny" for the proposition that a discharged employee who arbitrated grievances pursuant to a collective bargaining agreement could also bring a Title VII suit to assert the employee's statutory rights.

Yet again, Plaintiffs miss the mark.  This is obviously not a Title VII or discrimination case.  Moreover, *Alexander v. Gardner-Denver* was overturned by the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), which held that the FAA requires

---

[2] The arbitration agreement does prohibit the Plaintiffs from acting in a private attorney general capacity.  T&C, § 52(a)(ii).  However, the Ninth Circuit has held that this does not violate California's *McGill* rule because the arbitration agreement also authorizes injunctive relief in arbitration and, in California, litigants may request public injunctive relief without becoming private attorneys general (indeed, the passage of Proposition 64 eliminated the right to sue as a private attorney general in California).  *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1151 (9th Cir. 2021) (upholding arbitration provision that allowed injunctive relief but prohibited plaintiff from acting as a private attorney general, and noting that claims under the CLRA and UCL could be arbitrated under such a provision).

enforcement of an arbitration clause to compel arbitration of statutory claims under the Age Discrimination in Employment Act. The Court explained that "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. . . Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. The Court went on to state that if such an intention exists, "it will be discoverable in the text of the [statute], its legislative history, or an "inherent conflict" between arbitration and the [statute's] underlying purpose." *Id.*; *see also Mathews v. Denver Newspaper Agency LLP*, Civil Action No. 07-cv-02097-WDM-KLM, 2008 U.S. Dist. LEXIS 119417, at *12 (D. Colo. Feb. 1, 2008) (". . . the policy concerns expressed in *Gardner-Denver* about the adequacy of arbitration in vindicating statutory rights have largely been abandoned as a rationale for not giving preclusive effect to an arbitral award.").

Here, Plaintiffs, like the Plaintiff in *Gilmer*, have not met the burden of showing that Congress, in enacting a statute, intended to preclude arbitration of any of its claims. *Id.* at 35.

### III.  CONCLUSION

For all of the foregoing reasons, Carfax respectfully requests that the Court grants its Motion to Compel Arbitration as to the SD Motorwerks Plaintiffs.

Dated: November 29, 2021

TROUTMAN PEPPER HAMILTON SANDERS LLP


By:/s/ Monique M. Fuentes
    Monique M. Fuentes
    Ross Smith
    Attorneys for Defendant
    CARFAX, INC.