UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIPITO LLC, a Montana Limited Liability Company d/b/a San Diego Motorwerks; CHIDIEBERE AMADI, an individual; RICHARD JOHN HAGEN, an individual; CARRIE SORRENTO, an individual,<br><br>                                  Plaintiffs,<br><br>v.<br><br>JERRY SIDERMAN, an individual; BMW FINANCIAL SERVICES NA, LLC; CENTER AUTOMOTIVE, LLC, d/b/a Center BMW; and DOES 1 through 200, inclusive,<br><br>                                  Defendants. | Case No.: 3:21-cv-01205-H-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART BMW FINANCIAL SERVICES NA, LLC'S MOTION TO DISMISS**<br><br>[Doc. No. 51.] |

      This is the Court's second substantive order in this litigation. In a previous order issued on December 14, 2021 (the "December Order"), the Court transferred Plaintiffs' claims against two groups of Defendants (the "Manheim" Defendants and Carfax) pursuant to forum-selection agreements between Plaintiffs and those Defendants. (Doc. No. 49.) The Court then dismissed Plaintiff Chidiebere Amadi's ("Amadi") claims against the Manheim Defendants and Carfax and all Plaintiffs' claims against BMW Financial Services NA, LLC ("BMW") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

1

upon which relief may be granted. (Id. at 23-24.) The Court granted Plaintiffs leave to amend their complaint on most of the claims dismissed by the Court. (Id. at 33.)

On January 31, 2022, Plaintiffs filed their First Amended Complaint ("FAC"). (Doc. No. 50.) Plaintiffs now pursue five causes of action against BMW, Jerry Siderman ("Siderman"), Center Automotive, Inc. ("Center"), and unnamed Does. (Id.) On February 11, 2022, BMW filed its motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. (Doc. No. 51.) Plaintiffs filed their opposition on March 31, 2022. (Doc. No. 52.) BMW filed its reply in support of its motion on April 11, 2022. (Doc. No. 53.) The Court held a hearing on BMW's motion on April 18, 2022. Michael A. Alfred appeared on behalf of the Plaintiffs and Rebecca Anne Caley appeared on behalf of BMW.

## BACKGROUND[1]

Plaintiffs are partly comprised of two individuals and an enterprise[2] that purchase and resell vehicles: Dipito, LLC ("SD Motorwerks"), Richard John Hagen, and Carrie Sorrento. (FAC ¶¶ 1, 3-4.) Sorrento is "co-trustee" and operator of SD Motorwerks. (Id. ¶¶ 1, 44.) Hagen is an employee of SD Motorwerks and Sorrento's spouse. (Id. ¶ 44.) Amadi, the remaining plaintiff, is an individual that purchased the allegedly defective "Subject Vehicle" from SD Motorwerks. (Id. ¶ 28.) Plaintiffs were residents of San Diego, California at all relevant times. (Id. ¶¶ 1-4.)

The Subject Vehicle is a 2016 BMW M6 CPE. (Id. ¶ 8.) Siderman began leasing the Subject Vehicle from Center on August 1, 2016. (Id.) Siderman financed his lease through BMW. (Id. ¶ 23.) The Subject Vehicle sustained significant damage while in Siderman's possession. (Id. ¶ 20, 23-24.) Siderman allegedly "filed a few different insurance claims for these damages" and obtained "off the books" repairs. (Id. ¶ 20.) On

---

[1] The Court extensively reviewed the parties and factual allegations in this case in the December Order. Here, the Court only summarizes allegations in the FAC as necessary.

[2] As of the FAC, the entity "Euromotorwerks" is no longer a plaintiff in this case.

one occasion, a BMW service center in Escondido, California inspected the Subject Vehicle and recommended repairs to it; Siderman declined those repairs. (Id. ¶ 29.)

In November or December of 2019, Siderman returned the Subject Vehicle to BMW. (Id. ¶ 23.) BMW then sold the car to SD Motorwerks via auction on January 28, 2020. (Id.) The auctioneer required that buyers and sellers follow the arbitration rules of the National Auto Auction Association ("NAAA"). (Id. ¶ 48.) These rules require a vehicle seller to "disclose permanent structural damage, any structural alterations, structural repairs or replacements" as outlined in the NAAA's Arbitration Policy. (Ex. M to FAC at 11.)

Plaintiffs allege that BMW violated these rules when it failed to disclose "hidden damage" to the Subject Vehicle when it knew or should have known of those damages. (Id. ¶ 18.) These damages were purportedly not disclosed in vehicle condition that SD Motorwerks relied on when it purchased the vehicle. (Id. ¶ 24.) Plaintiffs assert that BMW "take[s] cars at the end of their leases . . . [and] fails to inspect [them] for hidden damage." (Id. ¶ 19.) BMW is purportedly "burying [its] head[] in the sand" so that it is able to lease more cars to its customers. (Id.)

Amadi purchased the Subject Vehicle from SD Motorwerks on February 4, 2020. (Id. ¶ 28.) Over the next six months, Amadi serviced Subject Vehicle at BMW locations on 11 occasions and spent at least several thousand dollars on repairs. (Id. ¶¶ 30-40.) At each service appointment, Amadi or service personnel reported issues with the car. (Id.) Several months later, Hagen, as an employee of SD Motorwerks, obtained updated vehicle condition reports; these reports purportedly contained new information showing extensive structural damage to the vehicle. (Id. ¶¶ 44-45, 51.)

## DISCUSSION

I.  **Legal Standard**

BMW moves to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

Additionally claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

## II.  Amadi's Claim of Third-Party Beneficiary Status

Plaintiffs acknowledge that Amadi did not purchase the Subject Vehicle from BMW. (FAC ¶¶ 17, 28.) But they assert that Amadi is a third-party beneficiary who may enforce the contract between SD Motorwerks and BMW. (Doc. No. 52 at 5-6.) They plead that Amadi "was the motivating reason for SD Motorwerks in purchasing the subject vehicle" and that SD Motorwerks purchased it for the benefit of Amadi. (Id. ¶¶ 17, 28.)

An intended third-party beneficiary of a contract has a right of action that continues until the contract has been legally rescinded. Cal. Civ. Code § 1559; Spinks v. Equity Residential Briarwood Apartments, 90 Cal. Rptr. 3d 453, 470 (Cal. Ct. App. 2009). "The fact that . . . the contract, if carried out to its terms, would inure to the third party's benefit, is insufficient to entitle him or her to demand enforcement." Jones v. Aetna Casualty & Surety Co., 33 Cal. Rptr. 2d 291, 296 (Cal. Ct. App. 1994). "The contracting parties must have intended to confer a benefit on the third party." Neverkovec v. Fredericks, 87 Cal. Rptr. 2d 856, 865 (Cal. Ct. App. 1999) (citations omitted). "Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." Jones, 33 Cal. Rptr. 2d at 296. Importantly, "[t]raditional third party beneficiary principles do not require that the person to be benefited be named in the contract." Harper v. Wausau Ins. Co., 66 Cal. Rptr. 2d 64, 68 (Cal. Ct. App. 1997). However, the party seeking to invoke his status as a third-party beneficiary "bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member." Neverkovec, 87 Cal. Rptr. 2d at 865.

Plaintiffs offer allegations concerning their intent. (FAC ¶¶ 17, 28.) But they do not allege that BMW intended—or knew or had reason to know—that Amadi would be the recipient. Plaintiffs concede that Amadi was not listed on the auction contract. (Id. ¶ 17.) Accordingly, Plaintiffs offer no basis on which the Court may conclude that BMW intended for Amadi to benefit from the auction of the Subject Vehicle.

Thus, Plaintiffs' argument rests on their ability to show that BMW intended for the auction to benefit a class of which Amadi is a member, i.e., eventual purchasers of auctioned vehicles. Plaintiffs pled few relevant allegations: BMW is a reseller of vehicles (id. ¶ 5) and BMW placed the Subject Vehicle into auction (id. ¶ 18). The only agreement that Plaintiffs allege that BMW entered was the auctioneer's NAAA Arbitration Policy. (See id. ¶ 48, Ex. M to FAC.) But the Arbitration Policy is of little value to determining whether BMW had the expectation that it was selling the Subject Vehicle for the benefit of the dealer-buyer's ultimate customer. For example, the Arbitration Policy does not address whether the buyer at auction is required to be a reseller.

As currently pled, the FAC does not provide sufficient allegations on which the Court could find that Amadi carried his burden of showing that "the promise he seeks to enforce was actually made to him personally or to a class of which he is a member." Neverkovec, 87 Cal. Rptr. 2d at 865. However, Amadi may be able to plead sufficient facts after amendment. For example, there may be extrinsic evidence of exchanges between Plaintiffs and BMW prior to the auction that would indicate SD Motorwerks disclosed it was a dealer or that it was purchasing the car for resale. Further, there may be a contract between BMW and SD Motorwerks that would provide valuable context. These are just examples of potentially relevant facts; it is incumbent on Plaintiffs to investigate if they have any additional facts that support a showing of BMW's intent.

### III.    California's Consumer Legal Remedies Act (Count I)

In the December Order, the Court dismissed SD Motorwerks' claim under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA") on the basis that SD Motorwerks is not a consumer under the CLRA. (Dec. Order at 28.) As the Court explained in the December Order, the CLRA provides "consumers" with a remedy for "unfair methods of competition and unfair or deceptive acts or practices[.]" Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 753 (Cal. Ct. App. 2003). A consumer is defined by the CLRA to be "an individual who seeks or acquires, by

purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d).

The Court previously concluded SD Motorwerks is not a consumer under the CLRA. (Doc. No. 49 at 28.)  This remains the case even after Plaintiffs' amendment.  Plaintiffs' allegations show that SD Motorwerks is a business that purchased the Subject Vehicle for the purpose of resale, not for personal, family, or household purposes. (FAC ¶¶ 1, 17, 28.) Further, neither Sorrento nor Hagan purchased the Subject Vehicle in their individual capacities.[3]  Since they did not purchase the Subject Vehicle, they cannot recover under the CLRA as consumers. Cal. Civ. Code § 1761(d).  Plaintiffs do not raise any argument that would save SD Motorwerks' claim under the CLRA.  (See Doc. No. 52.)

Next, the Court turns to Plaintiff Amadi's claim under the CLRA.  The Court previously noted that although Amadi can qualify as a "consumer" under the CLRA, he cannot recover under the CLRA against BMW if he did not purchase the Subject Vehicle from BMW.  Dec. Order at 28-29 (citing Schauer v. Mandarin Gems of Cal, Inc., 125 Cal. App. 4th 949, 961 (Cal. Ct. App. 2005); Morris v. Farmers Ins. Exch., 2006 WL 3823522, at *6 (Cal. Ct. App. 2006)).  Plaintiffs' allegations confirm that Amadi purchased the Subject Vehicle from SD Motorwerks, not BMW. (FAC ¶ 28.)  Amadi may not recover under the CLRA even if the Court considered him to be a third-party beneficiary.  See

---

[3] Plaintiffs plead conflicting allegations concerning the purchaser of the Subject Vehicle. On a few occasions, Plaintiffs allege that "SD Motorwerks, Hagen, and Sorrento purchased the Subject Vehicle[.]"  (FAC ¶¶ 60-61, 85-86.)  But they also allege that SD Motowerks was the purchaser of the Subject Vehicle (id. ¶¶ 17, 28, 59, 84) and that Hagen and Sorrento are an employee and owner of SD Motorwerks, respectively (id. ¶¶ 1, 44).  Plaintiffs' exhibits also reflect that SD Motorwerks was the legal purchaser of the Subject Vehicle at auction.  Ex. A to FAC (purchase confirmation from auctioneer reflecting "SD Motorwerks" as the purchaser), Ex. D to FAC (payment confirmation showing payment from "SD Motorwerks" to the auctioneer for the Subject Vehicle).  The Court is not obligated to accept Plaintiffs' allegations if they are directly contradicted by Plaintiffs' own exhibits. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  The Court concludes that the weight of Plaintiffs' allegations and evidence show that SD Motorwerks was the purchaser, not Sorrento or Hagen in their individual capacities.

Schauer, 125 Cal. App. 4th at 956, 960 (concluding that as a third-party beneficiary, plaintiff could sue for breach of contract, but lacked standing to sue under the CLRA). Accordingly, the Court dismisses all Plaintiffs' CLRA claim against BMW with prejudice.

### IV. Plaintiffs' Breach of Warranty Claims (Counts II and III)

Plaintiffs bring claims for breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Ca. Civil Code §§ 1790 et seq., and the federal Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq. (FAC ¶¶ 74-94.) The Court previously concluded that Plaintiffs' implied warranty claims on behalf of SD Motorwerks were deficient because SD Motorwerks did not use, purchase, or lease the Subject Vehicle for "personal, family, or household purposes" as required by California's warranty law. Dec. Order at 25-26 (citing Cal. Civ. Code § 1791). Plaintiffs did not cure this deficiency on amendment. As discussed, SD Motorwerks purchased the Subject Vehicle for commercial—not personal—purposes and resold the vehicle to Amadi. (FAC ¶¶ 28, 59.) Thus, SD Motorwerks is not eligible for relief under the Song-Beverly Act and by extension the MMWA. Cal. Civ. Code §§ 1791(a), 1791.1 (Song-Beverly Act only provides an implied warranty of merchantability for "consumer goods," which by definition are "used, bought, or leased for use primarily for personal, family, or household purposes"); Birdsong v. Apple, Inc., 590 F.3d 955, 958 n.2 (9th Cir. 2009) (courts apply state warranty law to MMWA claims). Further, there are no allegations in the FAC that Sorrento or Hagan "used, bought, or leased" the Subject Vehicle. Plaintiffs only allege that SD Motorwerks and Amadi purchased the Subject Vehicle. (FAC ¶¶ 28, 59.) Plaintiffs do not assert any argument in their opposition that would save the implied warranty claims pled by SD Motorwerks, Sorrento, and Hagan against BMW. (See Doc. No. 52.) Thus, the Court dismisses these claims with prejudice.

Amadi's warranty claims are more complicated. Amadi, like the other Plaintiffs, brings claims for implied breach of warranty under the Song-Beverly Act and the MMWA. However, Plaintiffs also plead that the Subject Vehicle is covered by BMW through a written warranty. (FAC ¶ 17.) In Plaintiffs opposition, they argue that "[a]s a consumer,

Amadi received the express warranties remaining on the subject vehicle [and] . . . Amadi repeatedly took the subject vehicle back to the BMW dealer for warranty repairs." (Doc. No. 52 at 5.) Accordingly, the Court will consider whether Amadi stated a claim for implied or express warranty.

The Court begins with BMW's argument that Amadi cannot state a claim because there is no privity of contract between Amadi and BMW. (Doc. No. 53 at 4.) The Court agrees. The FAC states that Amadi purchased the Subject Vehicle from SD Motorwerks. (FAC ¶¶ 17, 28.) "[P]rivity of contract is required in an action for breach of either express or implied warranty[;] there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." All W. Elec., Inc. v. M-B-W, Inc., 75 Cal. Rptr. 2d 509, 514 (Cal. Ct. App. 1998). However, there is an exception to the privity requirement for implied warranty claims for third-party beneficiaries. See, e.g., Peterson v. Mazda Motor of Am., Inc., 2014 WL 12817797, at *4; Mosqueda v. Am. Honda Motor Co., Inc., 443 F. Supp. 3d 1115, 1128 (C.D. Cal. 2020). Since the Court does not consider Plaintiffs to have carried their burden of showing that Amadi was a third-party beneficiary to the sale, the Court dismisses Amadi's breach of warranty claims as to BMW. However, as discussed, the Court will grant Amadi another chance to adequately plead his third-party beneficiary status.

The Court next considers whether Amadi may state a claim for breach of implied warranty even if he is a third-party beneficiary. California law requires that, unless properly disclaimed, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Under Cal. Civ. Code § 1791(a), a consumer good must be a "new product or part thereof." In the December Order, the Court dismissed Amadi's implied warranty claims on the basis that he could not show that the Subject Vehicle was a "new product" under the statute. Dec. Order at 27-28.

In Plaintiffs' opposition, they argue that even if the vehicle is a used product, it is still subject to an implied warranty because there is an applicable express warranty. (Doc.

No. 52 at 4.) Cal. Civ. Code § 1795.5 states that "[n]otwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter[.]" Thus, the Court must determine whether an express warranty exists and if it applies.

Plaintiffs' allegations concerning the express warranty are minimal. Plaintiffs allege that the Subject Vehicle "is and was covered by a written warranty by BMW." (FAC ¶ 17.) But the FAC does not inform the Court whether Amadi is a recipient of the express warranty or provide the warranty to the Court. In Plaintiffs' opposition, they argue that "[a]s a consumer, Amadi received the express warranties remaining on the subject vehicle." (Doc. No. 52 at 5.) Plaintiffs should be mindful that "the operative complaint (rather than the opposition briefs) must contain sufficient factual allegations to state a claim." Foster v. Dep't of Veterans Affairs Office of Pers. Mgmt., 2013 WL 1878908, at *6 (N.D. Cal. 2013). Further, Plaintiffs seem to argue that the Court can find that they adequately pled a claim that BMW violated an express warranty (Doc. No. 52 at 4-5), but they do not bring any cause of action for violation of an express warranty (see FAC ¶¶ 74-94). To the extent they seek to argue that BMW violated an express warranty it owes to Amadi, those claims must be pled in the complaint.

V.   **Plaintiffs' Remaining Fraud Claims (Counts IV and V)**

Plaintiffs allege that BMW violated California's Unfair Competition Law ("UCL"). The UCL prohibits any "fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A "fraudulent" business act or practice within the meaning of the UCL is one that is likely to deceive members of the public. Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1169 (9th Cir. 2012). The challenged conduct "is judged by the effect it would have on a reasonable consumer." Id. But "[u]nlike common law fraud, a [UCL] violation can be shown even without allegations of actual deception, reasonable reliance and damage." Daugherty v. Am. Honda Motor

Co., 144 Cal. App. 4th (Cal. Ct. App. 2006). "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (Cal. Ct. App. 2007).

Plaintiffs also allege that BMW committed negligent misrepresentation. (FAC ¶¶ 105-25.) To show negligent misrepresentation, Plaintiffs must prove: "misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage." Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc., 10 Cal. Rptr. 3d 582, 590 (Cal. Ct. App. 2004). "California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, . . . where information is conveyed in a commercial setting for a business purpose." Friedman v. Merck & Co., 131 Cal. Rptr. 2d 885, 901 (Cal. Ct. App. 2003).

The Court begins with BMW's argument that Amadi cannot state a claim for violation of the UCL and negligent misrepresentation because Amadi did not plead that BMW made any representations to him. (Doc. No. 53 at 5-6.) The Court agrees. Plaintiffs allege that "[BMW] inspected the vehicle at lease end and failed to discover and failed to report known damage." (FAC ¶¶ 100, 115.) They do not allege that BMW ever made representations to Amadi about the Subject Vehicle. Further, even if Amadi is a third-party beneficiary of the sale contract, that status may not be a sufficient basis for him to state a claim sounding in fraud unless he can show that he was an express third-party beneficiary of the sale agreement. Compare Schauer, 23 Cal. Rptr. 3d at 241 and The MEGA Life & Health Ins. Co. v. Superior Court, 92 Cal. Rptr 3d 399 (Cal. Ct. App. 2009) with Vepo Design Corp. v. Am. Econ. Ins. Co., 2020 WL 7382310, at *3.

Next, the Court addresses whether SD Motorwerks has properly pled claims for violations of the UCL and negligent misrepresentation. The Court concludes that Plaintiffs stated these claims with sufficient particularity to survive BMW's motion to dismiss. Plaintiffs allege that BMW placed the Subject Vehicle into auction under the NAAA

Arbitration Policy rules. (FAC ¶ 48.) The Arbitration Policy requires that the Seller disclose "permanent structural damage . . . as outlined in this policy prior to selling a vehicle at auction regardless of sales channel or light condition." (Ex. M to FAC at 11.) This includes "[a]ny/all existing permanent (non-repairable aka kinked or broken) structural damage" and [i]mproper and/or substandard prior repairs[.]" (Id.) Plaintiffs allege that BMW violated these rules and its duty of disclosure by not informing SD Motorwerks of these defects and damages at the time of the sale. (FAC ¶ 49.)

Plaintiffs have alleged that they found numerous defects with the Subject Vehicle after its purchase, for example: (i) Amadi took the Subject Vehicle in for repairs on 11 occasions after purchase (id. ¶¶ 30-40); (ii) a vehicle inspector reported significant damage to the right side of the Subject Vehicle including structural damage (id. ¶ 42); (iii) a post-sale vehicle inspection report from the auctioneer showed structural damage that had not been disclosed at the time of auction (id. ¶ 45); and (iv) a post-sale vehicle inspection report from Carfax also showed greater damage than an earlier report (id. ¶ 51). Plaintiffs alleged that BMW—as lessor, title owner, and seller—knew or should have known of these defects prior to placing the Subject Vehicle in auction. (Id. ¶¶ 18-19, 48-49.) Further, even if BMW believed the Subject Vehicle to be without structural damage, Plaintiffs allege that there was no reasonable ground for BMW to believe that was true, because it failed to inspect the vehicle at all. (Id. ¶ 19.) Finally, BMW argues that SD Motorwerks' negligent misrepresentation claim fails because it cannot allege damages. (Doc. No. 51 at 10.) As BMW sees it, if Amadi paid SD Motorwerks for the Subject Vehicle, then SD Motorwerks has not incurred damages. (Id.) But SD Motorwerks has pled damages. (FAC ¶¶ 70-71, 124.) SD Motorwerks identified at least $9,918.80 in repairs that were made to the Subject Vehicle after it was purchased from BMW. (Id. ¶ 37.) The view that SD Motorwerks did not incur damages because Amadi paid for the vehicle presumes that SD Motorwerks' agreement with Amadi does not require SD Motorwerks to pay for some or all of the damages. Plaintiffs have not provided any basis to reach that conclusion, so the Court will not do so at this stage. Plaintiffs' allegations are sufficient for SD Motorwerks to state a

claim, even under the heightened fraud pleading standard, that BMW violated the UCL and committed negligent misrepresentation.

In constrast, Plaintiffs Sorrento and Hagen have failed to state a claim for violations of the UCL and negligent misrepresentation. Plaintiffs' FAC indicates that SD Motorwerks is the entity that purchased the Subject Vehicle at auction. (Id. ¶ 28.) Thus, BMW, as seller, made representations to SD Motorwerks, as buyer, about the condition of the Subject Vehicle under the NAAA's Arbitration Policy. Plaintiffs do not identify any misrepresentations or other statements that BMW made to Sorrento or Hagen as individuals. Accordingly, Sorrento and Hagen's claims for negligent misrepresentation and violations of the UCL against BMW are dismissed with prejudice.

## VI.  Leave to Amend

Plaintiffs request leave to amend their FAC if the Court finds their allegations insufficient to state a claim for relief. (Doc. No. 52 at 6-7.) Where a motion to dismiss is granted for failure to state a claim, the Court must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); see Telesaurus v. Indus. Tel. Ass'n, Inc., 623 F.3d 998, 1003 (9th Cir. 2010). Leave to amend should be freely granted. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992). However, the court may deny leave to amend on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" Schaffer Family Inv'rs, LLC v. Sonnier, 120 F. Supp. 3d 1028, 1038 (C.D. Cal. 2015) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Further, the Court's discretion to deny leave is "particularly broad" where a plaintiff has previously amended. Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013).

The Court granted Plaintiffs leave to amend after the prior round of motions to dismiss. Plaintiffs fixed the deficiencies from their initial complaint that concerned SD Motorwerks' claims against BMW for negligent misrepresentation and violations of the

13

UCL. However, several deficiencies remain. In regard to Sorrento and Hagen, Plaintiffs have not pled any facts to support their claims as individuals. Further, Plaintiffs' FAC states that SD Motorwerks, not Sorrento or Hagen in their individual capacities, was the purchaser of the Subject Vehicle. (FAC ¶ 28.) Further amendment of the claims by Sorrento or Hagen would be futile as Plaintiffs could not allege facts consistent with the existing FAC that would be sufficient for them to state a claim. Telesaurus, 623 F.3d at 1003. Likewise, Plaintiffs cannot amend any of their claims on the CLRA or the SD Motorwerks' claims under the Song-Beverly Act and MMWA to state claims for relief that are consistent with the allegations in their FAC.

However, despite these deficiencies, the Court views Plaintiffs' FAC and opposition brief to suggest that they may be able to cure the deficiencies in their complaint related to Amadi's status as a third-party beneficiary and the existence of an express written warranty between BMW and Amadi. These additional allegations, if supported, could be consistent with Plaintiffs' previous factual allegations. At this stage, there are no indications of undue delay or bad faith. Further, additional amendment will not unduly prejudice BMW. The parties have generally acted expeditiously in this case. Accordingly, the Court will grant Plaintiff Amadi limited leave to amend the complaint with regard to his claims under Counts II-V of the FAC, his third-party beneficiary status, and any causes of action for violations of an express written warranty between Amadi and BMW to the extent that such amendment is supported by fact.

# CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part BMW's motion to dismiss as follows:

1. the Motion is granted on Count I (violation of the CLRA) as to all Plaintiffs and that claim is dismissed with prejudice;

2. the Motion is granted on Counts II (violation of the Song-Beverly Act) and III (violation of the MMWA) as to Hagen, Sorrento, and SD Motorwerks and those claims are dismissed with prejudice;

3. the Motion is granted on Counts II (violation of the Song-Beverly Act) and III (violation of the MMWA) as to Amadi and those claims are dismissed without prejudice;

4. the Motion is granted on Counts IV (violation of the UCL) and V (negligent misrepresentation) as to Hagen and Sorrento and those claims are dismissed with prejudice;

5. the Motion is granted on Counts IV (violation of the UCL) and V (negligent misrepresentation) as to Amadi and those claims are dismissed without prejudice;

6. the Motion is denied on Counts IV (violation of the UCL) and V (negligent misrepresentation) as to SD Motorwerks.

The Court grants Plaintiffs leave to amend their complaint consistent with this Order. Plaintiffs must file their second amended complaint **on or before May 18, 2022.**

**IT IS SO ORDERED.**

DATED:   April 18, 2022

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT